# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| ) | |
| IN RE:  SUBWAY FOOTLONG ) | Case No. 2:13-md-02439-LA |
| SANDWICH MARKETING AND ) | |
| SALES PRACTICES LITIGATION ) | Judge Lynn Adelman |
| ) | |

# PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Nguyen Buren, Charles Noah Pendrak, John Farley, Jason Leslie, Barry Gross, Richard Springer, Andrew Roseman, Vincent Gotter, Zana Zeqiri, and Ayanna Nobles (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, hereby consolidate the following actions transferred into this multidistrict proceeding:

*Buren v. Doctor's Associates Inc.*, No. 1:13-cv-498 (N.D. Ill.);

*Gross v. Doctor's Associates Inc.*, No. 1:13-cv-601 (N.D. Ill.);

*Pendrak, et al. v. Subway Sandwich Shops, Inc., et al.*, No. 3:13-cv-918 (D.N.J.);

*Leslie v. Doctor's Associates Inc., et al.*, No. 3:13-cv-465-FLW-DEA (D.N.J.);

*Springer v. Doctor's Associates Inc.*, No. 2:13-cv-143 (E.D. Cal.);

*Roseman v. Subway Sandwich Shops, Inc., et al.*, No. 2:13-cv-793 JCJ (E.D. Pa.);

*Gotter v. Doctor's Associates Inc.*, No. 5:13-cv-5033 JLH (W.D. Ark.);

*Zeqiri v. Doctor's Associates Inc.*, No. 13-cv-675 (E.D. Wis.); and

*Nobles v. Doctor's Associates Inc.*, No. 13-1767 MEJ (N.D. Cal.).

In connection with this consolidation, Plaintiffs, individually and on behalf of all others similarly situated, amend all previously filed Complaints in this action by substituting the following allegations of this Joint Consolidated Class Action Complaint:

## Nature of the Case

1.    Plaintiffs bring this action individually and on behalf of a proposed class (the "Class"), as more fully defined below, of similarly situated consumers throughout the United States to redress the pervasive pattern of fraudulent, deceptive and otherwise improper advertising, sales and marketing practices that Defendant Doctor's Associates, Inc. ("DAI") ("Defendant") engaged in and continues to engage in regarding the length of purported "Footlong" submarine sandwiches ("subs"), which are a core product sold by Defendant's SUBWAY® restaurants. In reality, Defendant's "Footlong" subs are not one foot, or 12 inches, in length.

2.    As more fully alleged herein, Defendant's schemes or artifices to defraud Plaintiffs and other members of the proposed Class consist of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet websites and postings, point of purchase advertisements and national print advertisements, all of which are intended to trick unsuspecting consumers, including Plaintiffs and other members of the proposed Class, into believing that they are receiving more food for their money than they actually are receiving.

3.    SUBWAY® is a registered trademark of Defendant, and Defendant franchises SUBWAY® restaurants throughout the world. Defendant's SUBWAY® brand franchise is the world's largest submarine sandwich chain, with more than 38,000 locations around the world, including approximately 24,000 locations in the United States.

4.    Defendant and its franchisees heavily market SUBWAY® "Footlong" subs as actually being 12 inches—a "foot"—long. This is made clear in Defendant's marketing

2

campaigns, which often refer to the measurement unit of one foot, or refer to measurements generally, when advertising the "Footlong" subs. However, the "Footlong" subs that SUBWAY® sells to its customers are materially shorter than the advertised 12 inches. As a result, consumers are receiving less than they are paying for.

5.     Defendant's comprehensive nationwide advertising campaign for SUBWAY® "Footlong" subs has been extensive, and Defendant has spent a significant amount of money to convey deceptive messages to consumers throughout the United States. Defendant utilizes a wide array of media to convey its deceptive claims about SUBWAY® "Footlong" subs, including television, magazines, and the Internet. Indeed, SUBWAY® "Footlong" subs have been heavily endorsed by celebrities and athletes. Through this massive marketing campaign, Defendant has conveyed one message about these subs, inherent in the name: "Footlong" subs are actually a foot (*i.e.* 12 inches) long. Each person who has purchased SUBWAY® "Footlong" subs, including the Plaintiffs, has been exposed to Defendant's misleading advertising message and purchased those subs as a result of that advertising.

6.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers throughout the United States to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception that they have created in the minds of consumers, and obtain equitable and injunctive relief for purchasers of SUBWAY® "Footlong" subs.

7.     Plaintiffs allege violations of the consumer fraud statutes of all fifty (50) states and the District of Columbia, and seek equitable and injunctive relief only, not monetary damages.

3

## Jurisdiction and Venue

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).  The proposed Class involves more than 100 individuals.  A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

9.     Venue and personal jurisdiction are proper in this Court pursuant to recognized principles of due process and in accordance with 28 U.S.C. § 1407, as each of the actions in which this Joint Consolidated Class Action Complaint has been filed are part of a multi-district preceding No. 2439, which was consolidated in this Court as "In Re: Subway Footlong Sandwich Marketing and Sales Practices Litigation."

10.     Venue is also proper in this district under 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## The Plaintiffs

11.     Plaintiff Nguyen Buren is, and at all times relevant to this action has been, a resident and citizen of Illinois.  Plaintiff Buren was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Illinois.  After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff purchased a "Footlong" sub to eat on January 20, 2013 at the SUBWAY® restaurant located at 1427 West Montrose Avenue, Chicago, Illinois, and other "Footlong" subs at that location and other SUBWAY® restaurants in Illinois on various other dates during the class period.  The sub purchased by Plaintiff Buren on January 20, 2013 was less than eleven (11) inches in length, which is

4

materially (*i.e.* approximately 10%) shorter than 12 inches, or one foot, in length, as shown below:



12.     Plaintiff Barry Gross is, and at all times relevant to this action has been, a resident and citizen of Illinois.   Plaintiff Gross was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Illinois.  After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Gross purchased a "Footlong" sub to eat on January 23, 2013 at the SUBWAY® restaurant located at 1951 Cherry Lane, Meadow Shopping Center, Northbrook, Illinois 60062, and other "Footlong" subs at that location and other SUBWAY® restaurants in Illinois on various other dates during the class period.   The sub purchased by Plaintiff Gross on January 23, 2013 was approximately eleven (11) inches in length, which is materially (*i.e.* approximately 10%) shorter than 12 inches, or one foot, in length, as shown below:

5



13.     Plaintiff Charles Noah Pendrak is, and at all times relevant to this action has been, a resident and citizen of New Jersey. Plaintiff Pendrak was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in New Jersey. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Pendrak purchased a "Footlong" sub to eat on January 9, 2013, December 3, 2012, and December 5, 2012 at the SUBWAY® restaurant located in Middle Township, Cape May County, New Jersey, and purchased other "Footlong" subs at SUBWAY® restaurants located in New Jersey on various other dates during the class period. The subs purchased by Plaintiff Pendrak were materially shorter than 12 inches, or one foot, in length.

14.     Plaintiff John Farley is, and at all times relevant to this action has been, a resident and citizen of New Jersey. Plaintiff Farley was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in New Jersey. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Farley purchased a "Footlong" sub to eat on December 16, 2012 at the SUBWAY® restaurant located in Marlton,

6

New Jersey, and purchased other "Footlong" subs at SUBWAY® restaurants located in New Jersey on various other dates during the class period. The subs purchased by Plaintiff Fairley were materially shorter than 12 inches, or one foot, in length.

15. Plaintiff Jason Leslie is, and at all times relevant to this action has been, a resident and citizen of New Jersey. He has been a Subway customer for at least seven (7) years. During that time, Plaintiff Leslie was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in New Jersey. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Leslie purchased "Footlong" subs at SUBWAY® restaurants in various Monmouth County, New Jersey locations, including, but not limited to, Freehold, Marlboro, Howell, and Middletown Townships, as well as SUBWAY® restaurants located in the New Jersey counties of Middlesex and Ocean. The subs purchased by Plaintiff Leslie were materially shorter than 12 inches, or one foot, in length, as shown by a measurement of one of the subs below:



7

16. Plaintiff Andrew Roseman is, and at all times relevant to this action has been, a resident and citizen of New Jersey, but works in Philadelphia, Pennsylvania. Plaintiff Roseman was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Pennsylvania and New Jersey. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Roseman purchased "Footlong" subs to eat on April 12, 2012 and May 14, 2012 at a SUBWAY® restaurant located in Philadelphia, and purchased other "Footlong" subs at SUBWAY® restaurants located in Pennsylvania on various other dates during the class period. The subs purchased by Plaintiff Roseman were materially shorter than 12 inches, or one foot, in length, similar to a "Footlong" sub he purchased on April 13, 2013, shown below:



17. Plaintiff Richard Springer is, and at all times relevant to this action has been, a resident and citizen of California. Plaintiff Springer was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in

8

California. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Springer purchased a "Footlong" sub to eat on January 16, 2013 at the SUBWAY® restaurant located at 1857 El Camino Real, Burlingame, California 94010, and other "Footlong" subs at that location and other SUBWAY® restaurants in California on various other dates during the class period. The sub purchased by Plaintiff Springer on January 16, 2013 was approximately eleven (11) inches in length, which is materially (*i.e.* approximately 10%) shorter than 12 inches, or one foot, in length, as shown below:



18. Plaintiff Ayanna Nobles is, and at all times relevant to this action has been, a resident and citizen of California. Plaintiff Nobles was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in California. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Nobles purchased a "Footlong" sub to eat at a SUBWAY® restaurant located at 4496 Broadway, Oakland, California, and other "Footlong" subs at that location and other SUBWAY®

9

restaurants in California on various other dates during the class period. The sub purchased by Plaintiff Nobles was approximately eleven (11) inches in length, which is materially (*i.e.* approximately 10%) shorter than 12 inches, or one foot, in length.

19. Plaintiff Vincent Gotter is, and at all times relevant to this action has been, a resident and citizen of Arkansas. Plaintiff Gotter was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Arkansas. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Gotter purchased a "Footlong" sub to eat on January 24, 2013 at the SUBWAY® restaurant located in Springdale, Arkansas, and other "Footlong" subs at that location and other SUBWAY® restaurants in Arkansas on various other dates during the class period. The sub purchased by Plaintiff Gotter on January 24, 2013 was less than eleven (11) inches in length, which is materially (*i.e.* approximately 10%) shorter than 12 inches, or one foot, in length, as shown below:



Case 2:13-md-02439-LA   Filed 12/31/13   Page 10 of 28   Document 18

20.     Plaintiff Zana Zeqiri is, and at all times relevant to this action has been, a resident and citizen of Wisconsin.  Plaintiff Zeqiri was repeatedly exposed to and saw Defendant's advertisements and representations regarding the SUBWAY® "Footlong" subs in Wisconsin. After seeing Defendant's advertising regarding the "Footlong" subs, Plaintiff Zeqiri purchased "Footlong" subs to eat at the following SUBWAY® restaurant locations

   a.     8201 South Howell Ave., Oak Creek, Wisconsin, 53154,

   b.     222 North Chicago Ave., South Milwaukee, Wisconsin, 53172,

   c.     5861 South Packard Ave., Cudahy, Wisconsin, 53110,

   d.     5300 South 76th Street, Greendale, Wisconsin, 53129, and

   e.     various other SUBWAY® locations, including locations in Illinois and Texas.

The subs purchased by Plaintiff Zeqiri were materially shorter than 12 inches, or one foot, in length.

21.     Plaintiffs purchased the "Footlong" subs in reliance on the misrepresentations and omissions of the Defendant.  Plaintiffs suffered an injury in fact as a result of the deceptive and unfair conduct described herein, because the "Footlong" subs that they purchased were materially less than 12 inches, or one foot, in length, represented by Defendant.

22.     Plaintiffs are repeat purchasers of SUBWAY® "Footlong" subs and exhibit strong brand loyalty.  Plaintiffs intend to continue to purchase SUBWAY® "Footlong" subs because the huge number of SUBWAY® restaurants often make it the most convenient place to eat, and because Plaintiffs believe the subs to be healthier and tastier than other fast food options.

11

Therefore, equitable and injunctive relief is necessary to prevent future injury to Plaintiffs and the Class.

## The Defendant

23.     Defendant is a private corporation incorporated in the State of Florida, and has its principal place of business in Milford, Connecticut.  Defendant, therefore, is a citizen of Florida and Connecticut.

24.     Defendant, as the franchisor of SUBWAY® restaurants, is in the business of promoting, marketing, distributing and selling SUBWAY® "Footlong" subs throughout the United States, including to millions of consumers nationwide, through approximately 24,000 SUBWAY® brand restaurants nationwide.  Although SUBWAY® restaurants are owned and/or operated by franchisees, Defendant creates, maintains and enforces strict uniform standards and practices for all aspects of its SUBWAY® restaurants, including the length of "Footlong" subs.

25.     Upon information and belief, Defendant has the right of complete or substantial control over all SUBWAY® restaurants in that it could implement and direct the policies and procedures of those restaurants as well as dictate the restaurants' appearance, equipment, menu, hours of operation, employees' appearance and demeanor, and marketing and advertising. Defendant represents that its centralized Operations department of its business "enforces standards and provides training and operational assistance to franchisees and field staff." (*See* Subway Student and Educator Resource Guide ("Resource Guide"), attached hereto as Exhibit A, p. 3).

26.     Further, Defendant and its franchisees hold themselves out to the general public as one company—SUBWAY®—as evidenced by the fact that the advertising materials, signs,

12

and store appearance all are uniform and identify Defendant's franchisees' restaurants as SUBWAY®. For example, Defendant represents that its centralized Marketing department "presents the public face of SUBWAY®. It includes departments like Research & Development, which develops and test markets the food that we serve, and FAF (Franchisee Advertising Fund) – responsible for the creation and placement of commercials and print ads." (Resource Guide, Exhibit A, p. 3).

27. Defendant's actions were intended to and did lead Plaintiffs and members of the proposed Class to believe that all SUBWAY® restaurants had uniform standards and practices, and that all menu items would be the same at each SUBWAY® restaurant. Plaintiffs and members of the Class justifiably relied on Defendant's and its franchisees' representations that the food would be identical in all material respects at each SUBWAY® restaurant.

## <u>Allegations of Misconduct</u>

28. Defendant engages in an extensive, nationwide advertising and marketing campaign of its SUBWAY® "Footlong" subs, consisting of print, television, Internet-based media and in-store advertisements. Defendant proudly boasts of the ubiquity of its marketing efforts, representing that "[t]he majority of advertising happens on national TV during prime time, sports and late programming on major broadcast networks and cable networks. Additional advertising occurs via local markets on TV, radio and print. SUBWAY® restaurants is also navigating the world of online social media to bring our message closer to consumers." (Resource Guide, Exhibit A, p. 3).

29. Defendant's advertisements relating to SUBWAY® "Footlong" subs are intended to convey to consumers that the subs are actually one foot, or 12 inches, in length.

13

30. Indeed, in its marketing and advertising materials, Defendant repeatedly references the length of the "Footlong" subs by having its actors (or artists' renderings) hold their hands approximately one foot apart, and including a graphic between the actors' hands indicating that the hands are "1 FT." (short for one foot) apart, as follows:



31. Moreover, some of Defendant's advertisements do not specifically reference one foot, or 12 inches, but they are designed to show that the "Footlong" name is associated with a measurement, by, for instance, using arrows to indicate size, as follows:

14



32.     Defendant also markets, advertises and offers 6 inch (designated by Defendant as 6") subs for purchase at its SUBWAY® restaurants.   These 6 inch subs are created by Defendant's employees by simply cutting the bread used for "Footlong" subs in half, and then preparing the 6" subs to its customers' specifications.   Accordingly, because Defendant's "Footlong" subs are less than 12 inches in length, SUBWAY® 6 inch subs are also shorter than advertised.

33.     Defendant designed, created and enforces uniform standards and practices that each of its and its franchisees' employees must follow relative to making SUBWAY® menu items for customers, including SUBWAY® "Footlong" subs.   Employees are required to undergo training programs regarding these uniform standards and practices, and are not permitted to deviate therefrom.

34.     Additionally, Defendant's franchisees are required to get their bread from a centralized supply source, which stretches the dough out to a pre-set length according to Defendant's specifications, and freezes it before delivering the frozen dough to SUBWAY® restaurants.   This pre-set length specified by Defendant is the primary factor in how long SUBWAY® "Footlong" subs will be.

15

35.     At the time that Plaintiffs purchased their SUBWAY® "Footlong" subs, Defendant was misrepresenting the length of its "Footlong" subs through the advertising and marketing mediums set forth above, including marketing and advertising materials at the specific stores at which Plaintiffs made their purchases.

36.     Defendant's standards and practices relative to the creation of SUBWAY® "Footlong" subs result in the subs routinely being materially shorter than one foot, or 12 inches, in length.

37.     Immediately after contacting counsel, certain Plaintiffs enlisted the services of investigator Leonard Niedermayer, on January 22, 2013, to purchase several "Footlong" subs from 19 different SUBWAY® stores throughout Pennsylvania and New Jersey. At each store randomly visited, Mr. Niedermayer purchased a "Footlong" sub, opened it, measured it and photographed the sub being measured along with a receipt of purchase. In every instance, the SUBWAY® "Footlong" sub measured less than 12 inches. All 19 subs ranged in size from 11 inches to 11 ¾ inches.

38.     Defendant implicitly admitted that its "Footlong" subs are not actually one foot, or 12 inches, in length when in its initial press release to the public in response to the lawsuits filed by Plaintiffs, Defendant stated:

> With regards to the size of the bread and calling it a footlong, SUBWAY FOOTLONG is a registered trademark as a descriptive name for the sub sold in Subway® Restaurants and not intended as a measurement of length.

(*See* Defendant's Press Release, Exhibit B).

39.     However, Defendant's statement was untrue, as its purported "Footlong" trademark was found not to be a trademark at all, but rather a measurement of length in a previous lawsuit Defendant unsuccessfully litigated against another sandwich retailer who was

16

using the same "Footlong" name for its subs. (*See Doctor's Associates, Inc. v. Sheetz, Inc.*, Case No. 1:09-cv-00088-CMH-IDD (E.D. Va., 2009), Exhibit C).

40.     Indeed, Defendant has knowingly and intentionally tolerated and permitted a common policy to exist which allowed "Footlong" subs to be sold to consumers that are materially shorter than promised.

41.     This is not the first time Defendant has engaged in misrepresentations regarding the length of SUBWAY® subs.   In 2007, it was reported that SUBWAY® "Giant Sub" sandwiches, which were advertised as being 3 feet long, were materially shorter than advertised (*i.e.* 2 feet 8½ inches long, and the box that they came in was only 2 feet 10¾ inches long). Because of the complaints about Defendant's advertising at the time, Defendant had knowledge that the precise length of SUBWAY® subs is material to its customers, and that its customers rely on Defendant's representations regarding the length of the subs when purchasing them.

42.     As discussed below, Defendant's statements regarding SUBWAY® "Footlong" subs, in conjunction with the impression regarding the length of those subs Defendant intended to convey by naming and promoting them as "Footlong" subs, were false, deceptive and misleading.  Plaintiffs and the proposed Class members purchased SUBWAY® "Footlong" subs in reliance on the foregoing uniform misrepresentations and omissions of the Defendant.

43.     As a result of SUBWAY® "Footlong" subs not being as long as advertised, Plaintiffs and the proposed Class members received less food then they were promised by Defendant, and received less than they bargained for.

17

## **Class Action Allegations**

44.     Plaintiffs bring this lawsuit, both individually and as a class action on behalf of similarly situated purchasers of the SUBWAY® "Footlong" and "6-inch" subs, pursuant Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  The proposed Class is defined as:

> All persons in the United States who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.

In the alternative, Plaintiffs seek approval of the following subclasses:

> (a)     All Illinois consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.
>
> (b)     All New Jersey consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.
>
> (c)     All California consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.
>
> (d)     All Pennsylvania consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.
>
> (e)     All Wisconsin consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.
>
> (f)     All Arkansas consumers who purchased a six inch or Footlong sandwich at a Subway® restaurant after January 1, 2007.

The Class and all subclasses defined above are collectively referred to herein as the "Class."  Excluded from the proposed Class are Defendant, its respective officers, directors and employees, any entity that has a controlling interest in Defendant, and all of its respective employees, affiliates, legal representatives, heirs, successors, or assignees.  Any claims for personal injury, actual, incidental, or consequential damages, are expressly excluded from this action.  Plaintiffs reserve the right to amend the Class definition as necessary.

18

45. Upon information and belief, the Class comprises millions of consumers throughout the nation, and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiffs believe that there are millions of Class members based upon the fact that SUBWAY® is one of the largest, if not the largest, restaurant chains in the world, with over 38,000 restaurants worldwide, and "Footlong" subs are the core product sold by SUBWAY®.

46. There are questions of law and fact common to the Class, which predominate over any individual issues, including:

a. whether Defendant represented that SUBWAY® "Footlong" subs were one foot, or 12 inches, in length;

b. Whether the use of the name "Footlong" was intended to signify a length of measurement;

c. Whether the marketing and advertising materials for the "Footlong" subs were created, designed, and/or prepared by Defendant;

d. Whether the marketing and advertising materials for the "Footlong" subs were approved by Defendant;

e. Whether the marketing and advertising materials for the "Footlong" subs indicated that the subs could be less than a foot, or 12 inches, in length;

f. Whether Defendant's SUBWAY® "Footlong" subs were one foot, or 12 inches, in length;

g. Whether Defendant ever warned consumers through disclaimers, signage or by any other means, that the "Footlong" subs are, or could be, less than one foot, or 12 inches, in length;

h. whether Defendant failed to disclose that SUBWAY® "Footlong" subs were less than 12 inches in length;

19

i.      whether Defendant's claims regarding the SUBWAY® "Footlong" subs are deceptive or misleading;

i.      whether Defendant's claims regarding the SUBWAY® "Footlong" subs are deceptive or misleading;

j.      whether Defendant engaged in false, deceptive and/or misleading advertising;

k.      whether Defendant's conduct as alleged herein violates the consumer fraud statutes of the various States and the District of Columbia;

l.      whether Defendant's conduct as alleged herein violates public policy;

m.      whether Plaintiffs and Class members are entitled to equitable and injunctive relief.

47.    Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the proposed Class. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation.

48.    Defendant has acted and refuses to act on grounds generally applicable to the proposed Class, as Defendant makes uniform representations to each proposed Class member. Each proposed Class member has been exposed to Defendant's representations, as the name of the "Footlong" sub itself is misleading. Therefore, final equitable and injunctive relief with respect to the proposed Class as a whole is appropriate.

49.    Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the proposed Class and the general public will continue to be misled.

20

## COUNT I
### (Violation of the Consumer Fraud and Deceptive Trade Practices Acts
### of the Various States and District of Columbia)

50.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 49 with the same force and effect as though fully set forth herein.

51.     Plaintiffs bring Count I individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

    a.    the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*

    b.    the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

    c.    the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

    d.    the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

    e.    the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

    f.    the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

    g.    the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

    h.    the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

    i.    the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

    j.    the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

    k.    the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

    l.    the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

21

m.      the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq*.;

n.      the Idaho Consumer Protection Act, I.C. § 48-601, *et seq*.;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq*.;

p.      the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq*.

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq*.;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*.;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq*.;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq*.;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq*.;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq*.;

x.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq*.;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*.

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq*.;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.

22

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

oo.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq*.;

pp.     the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq*.;

qq.     the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.;

rr.     the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.;

ss.     the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq*.;

tt.     the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq*.;

uu.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

23

vv.  the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*.;

ww.  the Washington Consumer Protection Act, RCWA 19.86.010, *et seq*.;

xx.  the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq*.;

yy.  the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq*.; and

zz.  the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq*.

52.  Defendant's foregoing misrepresentations and omissions regarding the length of SUBWAY® "Footlong" subs, as set forth in Paragraph Nos. 28-39, are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

53.  Defendant intended to be deceptive and/or unfair to Plaintiffs and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above.

54.  Defendant's practice of creating, approving and distributing advertising for SUBWAY® "Footlong" subs that contained false and misleading representations regarding the length of those subs for the purpose of selling them to Plaintiffs and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

55.  Defendant intended to be deceptive and unfair to Plaintiffs and the proposed Class by unlawfully representing that each SUBWAY® "Footlong" sub is 12 inches, or one foot, in length.  Defendant's intent is evidenced by, *inter alia*, its heavy reliance on units of

24

measurement, such as the "1 FT." graphic displayed in its advertising for the "Footlong" subs, as well as the fact that Defendant named its subs "Footlong."

56.     Defendant intended that Plaintiffs and the proposed Class members rely on Defendant's misrepresentations as to the length of the SUBWAY® "Footlong" subs when purchasing them, and Defendant omitted to disclose to or notify Plaintiffs and the proposed Class that the SUBWAY® "Footlong" subs were materially less than one foot, or 12 inches, in length.

57.     Plaintiffs and the proposed Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the SUBWAY® "Footlong" subs after seeing Defendants' advertising.  Defendants made no attempt to inform consumers that SUBWAY® "Footlong" subs are not uniformly 12 inches, or one foot, in length.

58.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the SUBWAY® "Footlong" subs to Plaintiffs and the proposed Class members.

59.     The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

60.     As a direct and proximate result of the foregoing, the Plaintiffs and Class members have been damaged in that they have received less than they bargained for.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and Thomas A. Zimmerman, Jr. and Stephen P. DeNittis as Co-Lead Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendant, and ordering Defendant to provide equitable relief to ensure that its "Footlong" subs are 12 inches in length, and to advise the public that the length of "Footlong" subs may vary;

D.   Enjoining Defendant's illegal conduct alleged herein;

E.   Awarding Plaintiffs and the Class attorney's fees and costs as allowed or required by law; and

F.   Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by a 12-person jury.

26

Respectfully submitted,

*Co-Lead Counsel*

  s/  Thomas A. Zimmerman, Jr.              s/ Stephen P. DeNittis

Thomas A. Zimmerman, Jr.                   Stephen P. DeNittis
Adam M. Tamburelli                          DeNittis Osefchen, P.C.
Frank J. Stretz                                 5 Greentree Centre, Suite 410
Zimmerman Law Offices, P.C.           Route 73 South & Lincoln Drive
77 West Washington Street, Suite 1220   Marlton, New Jersey 08053
Chicago, Illinois 60602                   (856) 797-9951
(312) 440-0020

*Plaintiffs' Executive Committee*

| | |
|---|---|
| Todd M. Friedman | Daniel A. Edelman |
| Nicholas J. Bontrager | Cathleen M. Combs |
| Law Offices of Todd M. Friedman | James O. Latturner |
| 369 S. Doheny Drive, #415 | Francis R. Greene |
| Beverly Hills, CA 90211 | Edelman, Combs, Latturner & Goodwin, LLC |
| (877) 206-4741 | 120 S. LaSalle Street, Suite 1800 |
| | Chicago, IL 60603 |
| | (312) 739-4200 |
| | |
| Michael S. Agruss | Guri Ademi (SBN 1021729) |
| Agruss Law Firm, LLC | Shpetim Ademi (SBN 1026793) |
| 22 W. Washington Street, Suite 1500 | David J Syrios (SBN 1045779) |
| Chicago, IL 60602 | John D. Blythin (SBN 1046105) |
| (312) 224-4695 | Ademi & O'Reilly, LLP |
| | 3620 East Layton Avenue |
| | Cudahy, WI 53110 |
| | (414) 482-8000 |
| | |
| Juan E. Monteverde | Marshall Dale Evans |
| Faruqi & Faruqi, LLP | Evans Law Firm, P.A. |
| 369 Lexington Avenue, 10th Floor | 2333 N. Green Acres Road |
| New York, NY 10017 | P.O. Box 1986 |
| (212) 983-9330 | Fayetteville, AR 72702 |
| | (479) 521-9998 |

27

Reginald Terrell
The Terrell Law Group
223 25th Street
Richmond, CA 94804
(510) 237-9700

E. Kent Hirsch
Hirsch Law Firm, P.A.
107 West Emma Ave.
Springdale, AR 72764
(479) 751-0251

Gerald A. Marks
Louis D. Tambaro
Kristen A. Curatolo
Marks & Klein, LLP
63 Riverside Avenue
Red Bank, NJ 07701
(732) 747-7100

28