## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION ) ) ) ) ) ) | No. 3:13-md-2439 |
| This Document Relates to All Cases | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri ("Plaintiffs" or "Class Representatives") hereby move this Court for preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement")[1] they have entered into with Defendant Doctor's Associates Inc. ("DAI"), a copy of which is attached as Exhibit A. The Settlement Agreement is the product of extensive arms-length negotiations between the Parties. As explained below, it is a fair, reasonable, and adequate settlement of the claims asserted by the Class, which consists of all individuals in the United States who have purchased a Six Inch or Footlong sandwich from a Subway® restaurant since 2003. Indeed, the proposed Settlement provides the Class with most of the injunctive relief sought in the Consolidated Amended Complaint, Doc. No. 18. Because the Settlement satisfies the criteria for preliminary approval of a class action settlement, Plaintiffs respectfully request that the Court enter the preliminary approval order attached to the Settlement Agreement as Exhibit A.

### BACKGROUND

DAI is the franchisor of Subway® restaurants in the United States. Declaration of Stephen DeNittis ("DeNittis Decl.") ¶ 1. (attached hereto as ExhibitB). DAI enters into franchise

---

[1]This brief uses the same capitalized terms as the Settlement Agreement.

1

agreements with individuals that, in exchange for the payment of a continuing royalty and an agreement to abide by the franchise agreement's terms, allows them to use DAI's marks and its confidential method for operating a Subway® restaurant. Subway® franchisees operate over 27,000 Subway® restaurants in the United States. DeNittis Decl. ¶5.

In January 2013, an Australian teenager posted a picture on Facebook of a Footlong Subway® sandwich he claims to have purchased that was only 11 inches long.[2] DeNittis Decl. ¶6. The post went viral and became the subject of considerable media attention. DeNittis Decl. ¶7. Around this time, Class Counsel began investigating potential claims against DAI for violating the consumer protection laws of each state. DeNittis Decl. ¶8. Class Counsel's investigation was thorough and included, among other things, reviewing Subway® advertising materials, speaking with franchisees, and hiring a consultant to purchase and measure Footlong sandwiches from a number of Subway® restaurants. DeNittis Decl. ¶9. This investigation allowed Class Counsel to develop an understanding of the nature of DAI's representations and conduct, and the Class' potential causes of actions and remedies. DeNittis Decl. ¶10.

Between January 22, 2013 and June 12, 2103, Plaintiffs and their respective counsel filed their original complaints in eight different federal district courts and state courts. *See Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.,* No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri*

---

[2] http://www.huffingtonpost.com/2013/01/19/subway-response-footlong-controversy-measurment_n_2511316.html.

*v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*"). Each complaint alleged that DAI had engaged in unfair and deceptive marketing practices regarding the length of Footlong Subway® sandwiches. Certain of the complaints contained similar allegations regarding Six Inch Subway® sandwiches and/or named Subway Sandwich Shops, Inc. as a defendant. Each was pleaded as a class action and sought monetary damages, attorney's fees, and injunctive relief. Many of the complaints sought punitive damages, statutory damages, and/or restitution. DeNittis Decl. ¶11.

On February 15, 2013, after removing to federal court the cases filed in state court, DAI requested that the Judicial Panel on Multidistrict Litigation ("Panel") transfer the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman,* and *Springer* matters to a single district for coordinated or consolidated pre-trial proceedings. *See* MDL No. 2439, Doc. No. 1. DAI later notified the Panel of the *Nobles* matter and asked that it receive similar treatment. *Id.*, Doc. No. 18. DeNittis Decl. ¶13.

While waiting for the Panel to rule, the Parties agreed to explore mediating this dispute before retired United States Magistrate Judge Morton Denlow. DeNittis Decl. ¶14. The Parties also agreed to engage in targeted informal discovery before conducting that mediation. DeNittis Decl. ¶15. This informal discovery included exchanging documents and answering interrogatory-like questions. DeNittis Decl. ¶16. Class Counsel also continued with their own investigation, which included interviewing former employees of the third-party bakeries that manufacture the dough used in the breads. DeNittis Decl. ¶17.The Parties then held an in-person mediation session before retired Magistrate Judge Denlow, but no settlement was reached. In preparing for and conducting the mediation, Class Counsel learned what DAI's likely defenses were going to be. The information allowed them to better assess the strength of their case going forward. DeNittis Decl. ¶18. Following the mediation, Class Counsel concluded that it would

3

likely be difficult to obtain certification of a monetary damages class under Rule 23(b)(3) and decided to focus their efforts on the Class's injunctive relief claims, which would likely be of the most value and benefit to the Class. DeNittis Decl. ¶19.

In June 2013, the Panel granted DAI's motion and transferred the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman, Nobles,* and *Springer* matters to this Court. MDL No. 2439, Doc. No. 22, 25. Shortly after the transfer, the Court appointed Thomas Zimmerman from the Zimmerman Law Offices, P.C., and Stephen DeNittis from DeNittis Osefchen, P.C. as co-lead counsel, made the *Zeqiri* matter part of the consolidated litigation, and set a deadline for Plaintiffs to file a Consolidated Amended Complaint. Doc. No. 10.

Plaintiffs filed their Consolidated Amended Complaint on December 31, 2013. Doc. No. 18. In it, Plaintiffs decided not to pursue their monetary damages claims. *See id.* at ¶¶ 6-7, p. 25. Instead, they sought injunctive relief only and the certification of a class pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at ¶¶ 6-7, 44 & p. 25. The Consolidated Amended Complaint also dropped Subway Sandwich Shops, Inc. as a defendant because Class Counsel's investigation has shown that it had no involvement in the events at issue. DeNittis Decl. ¶¶21. Plaintiffs also filed a motion for class certification at that time, Doc. No. 19, which the Court denied without prejudice after DAI stipulated that it would not seek to moot the Class's claims by making offers of judgment. Doc. Nos. 24-25.

Throughout the summer and fall of 2013, the Parties continued to engage in settlement discussions with the assistance of retired Magistrate Judge Denlow. DeNittis Decl. ¶25. Although hard-fought, these discussions resulted in an agreement in principle on the relief for the Class, which the Parties memorialized by March 2014. DeNittis Decl. ¶26. The Parties then proceeded, again with the help of retired Magistrate Judge Denlow, to negotiate the amount of

4

attorney's fees and Class Representative Service Awards that Plaintiffs could seek. After a number of contentious exchanges over the course of several months, the Parties determined that they had reached an impasse. The Parties informed the Court of the impasse. DeNittis Decl. ¶¶27-28. The Court decided, with the Parties' consent, that it would conduct an in-person mediation on the attorney's fees and Class Representative Service Award issues. Doc. Nos. 36-38. With the Court's assistance, the Parties reached an agreement on attorney's fees and Class Representative Service Awards in February 2015. Doc. No. 40. DeNittis Decl. ¶30.

## THE SETTLEMENT'S TERMS

The parties have since negotiated the terms of the formal Settlement Agreement for which approval is now sought. As defined in the Settlement Agreement, the Settlement Class is:

> all persons in the United States who purchased a Footlong or Six Inch sandwich at a Subway® restaurant any time between January 1, 2003 and the date of preliminary approval. Excluded from this class are Defendant, the Related Parties, governmental entities, and all judges assigned to hear any aspect of this case, as well as their immediate families.

Settlement Agreement Ex. A. The Settlement is straightforward. It requires DAI to make or keep in place a number of practice changes for at least four years that benefit the Class and remedy the alleged problem Plaintiffs identified in the Consolidated Amended Complaint. These changes, in total, are meant to ensure that, as best practicable accepting the realities of baking bread, sandwiches sold at Subway® restaurants are 12 inches in length. These practice changes are:

- Instituting or maintaining a requirement that franchisees use a tool for measuring bread in each Subway® restaurant to help ensure that the bread sold to customers is either 6 or 12 inches long;

- Instituting or maintaining a requirement that, at each regular compliance inspection, conducted by DAI or its agents of each Subway® restaurant, generally monthly, to include a sampling of the baked bread to ensure it is at least 12 inches long. The

5

sampling will include measuring at least 10 baked breads in total, and breads using both the Italian and 9-Grain Wheat loaves will be included in the sample;[3]

- Instituting or maintaining a requirement that bread ovens and proofers be inspected during the evaluations for each Subway® restaurant, generally conducted monthly, to ensure that they are in proper working order and within operating specifications;

- Increasing the penalty for non-compliance for Subway® restaurants found using bread that is not at least 12 inches long and/or bread ovens/proofers that are not within operating specifications, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

- All DAI franchisee protocols, training materials, and communications (including University of Subway® course materials, the Franchise Disclosure Document, and the Operations Manual) which had previously allowed for a small tolerance in the size of a Footlong sandwich will require that a Footlong sandwich must be at least 12 inches in length. These same materials will also say that a six inch sandwich must be at least six inches in length;

- DAI will institute or maintain additional quality control measures regarding bread length. These measures include providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections, and requiring the use of hygrometers in the store inspection process to ensure that bread proofers are operating at the correct temperature and humidity levels. Development Agent offices will be responsible for obtaining any additional or replacement hygrometers in order ensure that they are available and used in the store inspection process. DAI will also enhance the standards relating to the supervision of third party dough manufacturers, including replacing the company retained to test the quality and uniformity of the bread dough produced by those manufacturers that is shipped to Subway® stores;

- DAI will institute or maintain a requirement that franchisees add a notice in each Subway® restaurant regarding the inherent variability in the dimensions of fresh bread. The notice will state: "Due to natural variations in the bread baking process, the size and shape of bread may vary," and will be located on the bread cling or similar location generally visible to customers ordering their sandwiches;

- DAI will add the notice discussed in the preceding paragraph to its website in the Menu and Nutrition section at a location agreed to by the Parties; and

- DAI will institute or maintain a requirement that, at each regular compliance inspection, generally conducted monthly, DAI or its agent check for compliance with the requirements of this Paragraph. DAI will institute a penalty for non-compliance,

---

[3] Although Subway® restaurants sell additional varieties of breads, Footlong sandwiches are all made using either an Italian or 9-Grain Wheat loaf as a base.

> which, in addition to other violations, could result in termination of a noncompliant franchisee's franchise agreement.

Settlement Agreement Ex. A. As part of the Settlement, Plaintiffs may seek up to $1,000 each in incentive awards and Class Counsel may seek up to $525,000 in attorney's fees and expenses, so long as the total amount sought by Plaintiffs and Class Counsel is $525,000 or less. Settlement Agreement Ex. A. The Settlement also provides for a notice program that is appropriate under the circumstances of this case and an opportunity for each class member to object. Finally, once approved, the Settlement releases only the injunctive relief claims that Class Members have, while releasing both the injunctive relief and monetary damage claims of Plaintiffs. To be clear, except for the 9 Plaintiffs, each Class Member will retain his or her right to seek individual or classwide monetary relief from DAI.

## ARGUMENT

## I.     THE COURT SHOULD ENTER THE PROPOSED ORDER PRELIMINARILY APPROVING THE SETTLEMENT.

Review and preliminary approval of a proposed class action settlement occurs in two steps. The first step is that, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a), and at least one of the subsections of Rule 23(b)." *Manual for Complex Litig., Fourth*, §21.632 (2004). Next, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the fairness hearing." *Id.* If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621, n.3 (7th Cir. 1982).

7

Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980). If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the Court should schedule a final fairness hearing and order the parties to provide the appropriate notice. *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Some courts have described the preliminary approval analysis as requiring consideration of the following five factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed." *Koerner v. Copenhaver*, No. 12-1091, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014). As explained below, the proposed settlement is the product of an arm's length negotiation and falls well within the "range of possible approval."[4]

## A. The Settlement is entitled to a presumption of fairness.

There is a strong judicial policy, especially in complex and class cases, favoring resolution of litigation before trial. *In re Gen. Motors Pick-Up Truck Fuel Tank Prod. Liab.Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). As one court has explained:

---

[4] It is important to note, at this time the parties are requesting only preliminary approval. Once notice is published the parties will be before the Court wherein the Court will analyze more rigorously the fairness of the proposed settlement at a Final Approval hearing.

> [W]hen parties negotiate a settlement they have far greater control of
> their destiny than when a matter is submitted to a jury. Moreover, the
> time and expense that precedes the taking of such a risk can be
> staggering. This is especially true in complex commercial litigation.

*Weiss v. Mercedes-Benz*, 899 F.Supp. 1297, 1300-01 (D.N.J. 1995), *aff'd without op.*, 66 F.3d

314 (3d Cir. 1995). Thus, courts have long afforded a presumption of fairness to settlements

which are the product of arm's length negotiations conducted by experienced counsel who are

fully familiar with class action litigation. *GM Trucks*, 55 F.3d at 785 ("This preliminary

determination establishes an initial presumption of fairness when the court finds that: (1) the

negotiations occurred at arm's length ... (3) the proponents of the settlement are experienced in

similar litigation ... "); *see also Freeman v. Berge*, 2003 U.S. App. LEXIS 12809, *12 (7th Cir.

June 20, 2003) (trial court did not abuse its discretion in relying "on the opinion of class counsel"

in approving settlement); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)

("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.

Lawyers know their strengths and they know where the bones are buried"); 4 Alba Conte &

Herbert Newberg, *Newberg on Class Actions*, §11.41 at 90 (2002); *Manual for Complex Litig.*,

*Third*, §30.42 (1995); *see also Koerner*, 2014 WL 5544051, at *5 (C.D. Ill. Nov. 3, 2014)

(explaining that opinion of counsel weighs in favor of settlement when settlement is reached as

part of arm's length negotiation).

 Here, settlement discussions took place for almost 18 months before the Parties reached a

complete agreement. DeNittis Decl. ¶¶14-30. The settlement negotiations were extensive and

adversarial in nature—the Parties were able to reach the settlement only after working repeatedly

with a retired federal magistrate judge and this Court. DeNittis Decl. ¶¶14-30; *In re Initial Pub.

Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (noting that involvement of

retired judge and neutral mediator supports applying fairness presumption); *In re CIGNA Corp.*,

No. CIV.A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (assistance of retired federal district court judge demonstrated that negotiations were conducted at arm's length); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00CV1884AVC, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007).

Next, Class Counsel thoroughly explored the issues in this Litigation. DeNittis Decl. ¶¶6-10. As discussed above, Class Counsel conducted an investigation and analysis of Plaintiffs' claims and engaged in targeted informal discovery with DAI. *Id.*, ¶¶6-10. Class Counsel's review of that discovery and its own investigation enabled them to gain an understanding of the evidence related to the central questions in the case, and prepared them for well-informed settlement negotiations. Finally, Class Counsel and DAI's counsel are experienced in complex and class action litigation. DeNittis Decl. ¶¶35-37. Accordingly, the Proposed Settlement is entitled to a "strong initial presumption of fairness." *In re PaineWebber P'shps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y 1997).

> **B.** **The proposed Settlement is reasonable because it provides the Class with much of the relief sought while avoiding the substantial risks of continued litigation.**

In general, determining whether a class settlement is reasonable requires the Court to weigh the costs and risks of continuing to litigate against the settlement offer (and the potential for a greater recovery by the class if the case is litigated to conclusion). *See, e.g., Freeman,* 2003 U.S. App. LEXIS 12809 at *11; *Walker & Sons*, 768 F.2d at 889. Although Class Counsel continues to believe that Plaintiffs' claims, including the Released Claims, are meritorious, Plaintiffs and the Class face real risks if the Litigation continues. DeNittis Decl. ¶¶40-42. Among other things, DAI will argue that Plaintiffs cannot assert class claims under any statute for which they do not personally have standing. *See, e.g., In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CR 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013)

10

(dismissing claims under laws of state where no named plaintiff alleges that he purchased a product); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) ("At least one named plaintiff must have standing with respect to each claim the class representatives seek to bring."). Next, absent a settlement, DAI will argue that many of the consumer protection statutes at issue do not allow a private plaintiff to seek injunctive relief. *See, e.g., McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 801 (N.D. Ill. 2013) (injunctive relief is not a permissible remedy for a private plaintiff under Illinois Consumer Fraud Act); *Weinberg v. Sprint Corp.*, 173 N.J. 233 (N.J. 2002) (only Attorney General can bring actions for purely injunctive relief under New Jersey Consumer Fraud Act); *Goleman v. York Int'l Corp.*, No. CIV.A. 11-1328, 2011 WL 3330423, at *10 (E.D. Pa. Aug. 3, 2011) (Pennsylvania's Unfair Trade Practices and Consumer Protection Law does not authorize private plaintiffs to seek injunctive relief); Wis. Stat. § 100.18(11)(a)-(b) (only authorizing state department of consumer protection to seek injunctive relief); *Baptist Health v. Murphy*, 2010 Ark. 358 (Ark. 2010) (Arkansas Deceptive Trade Practices Act does not authorize injunctive relief). Third, Plaintiffs will have to demonstrate that DAI's purported misrepresentations were material. *See, e.g., Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 174 (1984) ("a representation, omission or practice must be a material one for a deception to occur."). However, during their investigation, Class Counsel learned that proving materiality will not be easy: many consumers understand that bread may bake differently each time or simply do not care if the bread used to make their Footlong sandwich is 11.75 inches long instead of 12 inches long. DeNittis Decl. ¶¶40; *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 828-30 (N.D. Cal. 2013) (finding honey advertisement that did not disclose that the honey lacked pollen was not deceptive because it was not plausible "that the absence of pollen . . . materially affects consumer acceptance and pricing

11

of the product."). These are just some of the risks that Plaintiffs faced if they continued to litigate.

Next, continued litigation would be complex, lengthy, and expensive. If forced to litigate further, DAI would file dispositive motions and oppose class certification. Due to the sheer size of the Subway® franchise system, discovery also would have been time consuming and expensive for both sides. Moreover, a central issue in this case—materiality—is one that often is ill-suited for resolution before trial.

Conversely, the Settlement provides Plaintiffs and the Class with the relief that they seek. It requires DAI to make practice changes that, in light of the practical realities of large scale dough production and the baking of bread by franchisees at over 25,000 locations, are designed to help ensure that Subway® sandwiches being sold only with bread that is 12 inches long. In addition, the Settlement requires DAI to have a disclaimer about bread length on its website and for franchisees to put a disclaimer in each Subway® restaurant. In short, the Settlement remedies the problem Plaintiffs identified. To the extent that Plaintiffs could obtain more extensive injunctive relief by litigating this case to conclusion, the additional incremental benefits of this relief are outweighed by the time, effort, and expense of litigating for it and the risks that DAI would successfully defeat Plaintiffs' claims in full.

In these circumstances, the facts support the Court's preliminarily finding that the proposed Settlement is fair, reasonable, and adequate.

### C. The proposed Settlement Class satisfies Rule 23(a)-(b)'s requirements.

In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class –*i.e.*, all Rule

12

23(a) factors and at least one subsection of Rule 23(b) must be satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The proposed class satisfies Rule 23(a)(1)'s numerosity requirement. During the Class Period, Subway® restaurants sold millions of sandwiches. Joinder is therefore impractical and Rule 23(a)(1)'s numerosity requirement is met. *See, e.g., In re Gen. Motors Corp. Dex-Cool Products Liab. Litig.*, 241 F.R.D. 305, 311 (S.D. Ill. 2007) (class including hundreds of thousands, if not millions, of people satisfies Rule 23(a)(1)); *Bernal v. Keybank, N.A.*, No. 06-C-8, 2007 WL 2050405, at *1 (E.D. Wis. July 11, 2007) (class made of up thousands of individuals who received mass mailing satisfied Rule 23's numerosity requirement).

Next, the threshold for commonality under Rule 23(a)(2) is not high. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted). Here, there are multiple questions of law and fact, including whether Subway® television and internet advertisements misrepresented the length of Subway® sandwiches; whether the manufacturing processes used at each third-party dough manufacturers caused the sandwiches to be too short; and whether DAI's policies and procedures, which all franchisees are supposed to follow, resulted in the franchisees selling sandwiches that were too short. *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010) (holding commonality requirement was satisfied where there was common factual questions including that consumers each paid for product after receiving "same or

13

substantially similar representations" and common legal questions of whether the representations were misleading or material).

Third, Plaintiffs' claims are "typical" of other Class Members' claims because they were subjected to the same advertisements and bought sandwiches with bread that was supposed to be made using a uniform set of procedures. Fed. R. Civ. P. 23(a)(3). Thus, the named Plaintiffs' claims arise from the same course of conduct as the other Class Members' claims. Additionally, Plaintiffs and all other Class Members' claims are premised on the same legal theories. Accordingly, the typicality requirement is satisfied. *See In re Host Am. Corp. Sec. Litig.,* Master File No. 05-CV-1250 (VLB), 2007 WL 3048865, at *5 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

Fourth, Rule 23(a)(4) requires Plaintiffs to demonstrate that: (1) there is no conflict of interest between Plaintiffs and the other Class Members; and (2) Class Counsel are qualified, experienced, and capable of conducting the Litigation. *See, e.g., In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *3 (S.D.N.Y. Sept. 27, 2006). Here, Plaintiffs do not have any claims antagonistic to or in conflict with those of the other Class Members: Plaintiffs and the Class are pursuing the same legal theories relating to the same course of conduct by DAI. In addition, Plaintiffs have retained counsel to represent them and the Class who regularly engage in consumer class litigation and other complex litigation similar to the present Litigation. DeNittis Decl.35-37. Moreover, Plaintiffs and Class Counsel have vigorously and competently represented the Class Members' interests in this matter.

Finally, Rule 23(b)(2) requires that the Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

14

is appropriate respecting the class as a whole." Plaintiffs' claims involve DAI's representations to the general public about the length of Subway® sandwiches, and they seek injunctive relief to ensure that DAI's advertisements are accurate. *See* Consol. Am. Compl.Doc. No. 18.. The Settlement Agreement provides for future conduct relief meant to ensure that DAI's advertisements contain accurate statements about bread length. Thus, Rule 23(b)(2) is met. *See, e.g., Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 PAE, 2015 WL 728026, at *7 (S.D.N.Y. Feb. 19, 2015); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2013 WL 6499698, at *4 (S.D. Cal. Dec. 11, 2013) (Rule 23(b)(2) met where injunctive relief in settlement applies to the class as a whole).

## D. The proposed notice is appropriate.

The Settlement Agreement proposes that notice will occur by DAI's issuing a press release, approved by the Court, notifying the general public of the Settlement. The press release will contain a link to the Settlement Website. That publicly available website will provide the Class with basic information about the Settlement and will include a copy of the Long-Form Notice and the pertinent filings in this case. Under the circumstances, this notice program is proper.

When a Rule 23(b)(2) class is certified, no notice to the class is necessary. *See* Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2558 (2011); *see also, e.g., Lewis v. City of Chicago*, 702 F.3d 958, 962–63 (7th Cir. 2012) ("Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class."). Rule 23(e), however, says that the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Recognizing the tension between these two provisions, courts have employed a "functional interpretation of Rule 23(e)" and held that notice of settlement is not required under certain circumstances. *Green v. American Express Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001)

15

(calling this the "functional interpretation of Rule 23(e)"); *Selby v. Principal Mutual Life Ins. Co.*, 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003); *Jermyn v. Best Buy Stores, L.P.*, 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012); *Foti v. NCO Fin. Sys., Inc.*, No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511, at *14 (S.D.N.Y. Feb. 19, 2008); *Miller v. Hygrade Food Prods. Corp.*, 01-3953, 2002 WL 1060698 (E.D. Pa. May 23, 2002) (observing that "the majority of courts have determined that the Rule does not contain an absolute notice requirement" and declining to require notice where "there is no evidence of collusion and only negligible evidence of prejudice"); *Lilly v. Conagra Foods, Inc.*, No. CV 12-225-RGK (SHx) Doc. No. 113, 134 (C.D. Cal. 2014); *see also* 2 McLaughlin on Class Actions § 6:20 ("[a]lthough the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or compromise be provided to class members in all class actions, many courts have adopted a 'functional interpretation of the Rule that permits courts to approve certain settlements without any notice to class members—even in classes certified under Rule 23(b)(3). This approach is sound."); Newberg on Class Actions §§ 11:66, 11:72 (5th ed.). Situations where notice is not necessary include: (1) when the terms of the settlement provide near complete relief to the plaintiffs, (2) when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class, (3) when there is no evidence of any collusion between the parties, and (4) when the cost of notice would risk eviscerating the settlement agreement. *Green*, 200 F.R.D. at 212.

Here, traditional forms of publication or individual notice are neither necessary nor feasible. First, DAI has no way of identifying each individual who has purchased a sandwich from a Subway® restaurant during the class period. Next, Class members are giving up only injunctive relief claims and cannot opt-out. Moreover, the proposed injunctive relief provides

16

Class Members with most of the relief that they seek. The Settlement also is not collusive in any way. Rather, it took almost 18 months and the assistance of the Court and a retired magistrate judge to negotiate. Conversely, requiring extensive, traditional publication notice would be expensive and out of line with the rest of the Settlement. A large portion of the entire population of the United States is likely to have eaten at a Subway® restaurant at least once since 2003. Thus, any class notice would be through multiple publication notices in major print publications and on social media websites. DAI has said that it would rather litigate than settle if forced to incur the kind of cost necessary for such a notice. Finally, there was considerable press in a variety of media about the length of Subway® sandwiches around the time these lawsuits were filed in 2013, so the public and press are already aware of this case. Considering these facts, the proposed notice is appropriate under the circumstances.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order:

1. Preliminarily approving the Settlement as set forth in the Settlement Agreement;

2. Approving the notice plan;

3. Approving Rust Consulting as the Settlement Administrator;

4. Certifying the Class for settlement purposes:

5. Appointing Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri as Class Representatives;

6. Appointing as Class Counsel The Zimmerman Law Offices, P.C; DeNittis Osefchen, P.C.; Law Offices of Todd M. Friedman; Edelman, Combs, Latturner & Goodwin, LLC;

17

Agruss Law Firm, LLC; Ademi & O'Reilly, LLP; Evans Law Firm, P.A.; Hirsch Law Firm, P.A.; Marks & Klein, LLP and appointing The Zimmerman Law Offices, P.C. and DeNittis Osefchen, P.C. law firms as Lead Class Counsel; and

7. Scheduling a Final Fairness Hearing in this matter.

Plaintiffs have submitted a proposed preliminary approval order with their Motion for the Court's review and consideration. Plaintiffs stand ready to provide any additional materials that the Court may require to consider and preliminarily approve this Settlement.

Respectfully submitted,

All Plaintiffs, individually, and on behalf of all others similarly situated,

By: _s/Stephen P. DeNittis_
Stephen P. DeNittis
DeNittis Osefchen, P.C.
5 Greentree Centre, Suite 410
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053
(856) 797-9951 telephone

Thomas A. Zimmerman, Jr. (IL #6231944)
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Interim Co-Lead Counsel for the Plaintiffs and Class

18

# Exhibit A

|  |  |
|---|---|
| IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION | No. 3:13-md-2439 |

## SETTLEMENT AGREEMENT AND RELEASE

This Agreement is made this 10th day of September 2015 by and between

Plaintiffs and Defendant, as defined below.

I.   DEFINITIONS

These definitions apply to this Agreement.

A.   "Agreement" means this Settlement Agreement and Release.

B.   "Class" means a class consisting of all persons in the United States who

purchased a Footlong or Six Inch sandwich at a Subway® restaurant any time between

January 1, 2003 and the date of preliminary approval. Excluded from this class are

Defendant, the Related Parties, governmental entities, and all judges assigned to hear any

aspect of this case, as well as their immediate families.

C.   "Class Counsel" means:

Zimmerman Law Offices, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602

DeNittis Osefchen, P.C.
5 Greentree Centre, Suite 410
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053

Law Offices of Todd M. Friedman
369S. Doheny Drive, #415
Beverly Hills, California 90211

1

Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603

Agruss Law Firm, LLC
4619 N. Ravenswood Ave., Suite 303A
Chicago, IL 60640

Ademi & O'Reilly, LLP
3620 East Layton Avenue
Cudahy, WI 53110

Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017

Evans Law Firm, P.A.
2333 N. Green Acres Road
P.O. Box 1986
Fayetteville, Arkansas 72702

The Terrell Law Group
223 25th Street
Richmond, California 94804

Hirsch Law Firm, P.A.
107 West Emma Ave.
Springdale, Arkansas 72764

Marks & Klein, LLP
63 Riverside Ave.
Red Bank, New Jersey 07701

D.     "Class Member(s)" means any person who is a member of the Class.

E.     "Class Period" means and refers to the time period January 1, 2003 to the date of preliminary approval.

F.     "Class Representative Service Awards" means the amounts, as will be determined by the Court, to be awarded to the Plaintiffs in connection with their activities as class representatives.

2

G.　"Court" means the United States District Court for the Eastern District of Wisconsin.

H.　"Days," whether or not capitalized, means calendar days unless otherwise expressly indicated.　If a deadline falls on a weekend or Court holiday, the deadline will be extended to the next Court business day.

I.　"Defendant" or "DAI" means Doctor's Associates Inc.

J.　"Effective Date" means the fifth business day after which all of the following events have occurred:

> (i) All Parties, Defendant's counsel, and Class Counsel have executed this Agreement;
>
> (ii) The Court has entered, without material change, the Judgment; and
>
> (iii) The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired, relief from a failure to file same is not available, and the mandate is filed with the Court.

K.　"Final Settlement Hearing" means the hearing at which the Court will conduct an inquiry into the fairness of the Settlement and decide whether to approve the Settlement and Class Counsel's application for attorney's fees, costs and expenses and for Class Representative Service Awards, and determine whether to enter the Judgment.

3

L. "Judgment" means the Court's order approving the Settlement and dismissing the Litigation with prejudice substantially in the form of a proposed judgment agreed upon by the Parties that is submitted to the Court with the Motion for Final Approval.

M. "Lead Class Counsel" means:

Zimmerman Law Offices, P.C.
77 West Washington Street, Suite1220
Chicago, Illinois 60602

DeNittis Osefchen, P.C.
5 Greentree Centre, Suite 410
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053

N. "Litigation" means *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, MDL Case No. 3:13-md-2439-LA; *Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*"), and any other cases pending in MDL No. 2439 as of the date of preliminary approval.

O. "Notice" means the form of notice that is approved by the Court.

P. "Notice Date" means the date the form of notice approved by the Court is made available to the public.

4

Q.     "Objection Deadline" means 75 days after the Notice Date, or such other date as the Court establishes in the Preliminary Approval Order. The Notice will state the Objection Deadline as a month, day, and year.

R.     "Parties" means Plaintiffs and Defendant.

S.     "Plaintiffs" means Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri.

T.     "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

U.     "Preliminary Approval Order" means the order the Parties expect to be entered by the Court granting preliminary approval of the Settlement, in substantially the same form as Exhibit A hereto.

V.     "Related Parties" means Defendant's current, former, and future predecessors, successors, assigns, partners, privies, owners, officers, directors, managers, administrators, franchisees, employees, agents, attorneys, affiliates, parents, subsidiaries, related companies, third-party quality control and testing contractors, Subway Sandwich Shops, Inc., Subway® Development Agents, the Subway Franchisee Advertising Fund Trust, Franchise World Headquarters, LLC, the Independent Purchasing Cooperative, Aryzta, Southwest Bakery, Millard Bakery, and any predecessors, successors, owners, affiliates, directors, shareholders, employees and agents of all of the same.

W.     "Released Claims" means the claims released by the Class Members in Paragraphs 47-49 of this Agreement.

X.     "Released Parties" means Defendant and all Related Parties.

5

Y.     "Settlement" means the settlement that the Parties are entering into by executing this Agreement.

## II.    RECITALS

This Settlement Agreement is based on the following facts:

1.     The complaints in the Litigation, which were filed between January 2013 and June 2013 in eight different federal district courts and state courts, each alleged that DAI had engaged in unfair and deceptive marketing practices regarding the length of both Six Inch and Footlong Subway® sandwiches. Certain of the complaints contained similar allegations against Subway Sandwich Shops, Inc. Each case was pleaded as a class action and sought monetary damages, attorney's fees, and injunctive relief. Many of the complaints also sought punitive damages, statutory damages, and/or restitution. Defendant denies Plaintiffs' allegations, including Plaintiffs' assertions that Defendant engaged in unfair or deceptive practices or any wrongful, unlawful, or improper conduct.

2.     On February 15, 2013, Defendant sought to have the Judicial Panel on Multidistrict Litigation ("Panel") transfer the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman,* and *Springer* matters to a single district for coordinated or consolidated pre-trial proceedings. While that motion was pending, Defendant notified the Panel of the *Nobles* matter and asked that it receive similar treatment.

3.     Beginning in 2013, after initiation of the first lawsuit in this case, DAI modified certain of its practices related to bread baking. These modifications were substantially a result of this Litigation. The policy and practice changes include those listed in Paragraph 22.

6

4.      While the MDL motion was pending, the Parties agreed to explore mediating the litigation before retired United States Magistrate Judge Morton Denlow. The Parties also agreed to engage in informal discovery before conducting that mediation. This informal discovery included exchanging documents and answering interrogatory-like questions. The Parties then held an in-person mediation session before Magistrate Judge Denlow, but no Settlement was reached.

5.      On June 10, 2013, the Panel granted Defendant's motion and transferred the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman, and Springer* matters to United States District Court Judge Lynn Adelman of the United States District Court for the Eastern District of Wisconsin. On June 25, 2013, the Panel transferred the *Nobles* case to Judge Adelman.

6.      On June 12, 2013, Zana Zeqiri filed the *Zeqiri* matter in the United States District Court for the Eastern District of Wisconsin.

7.      The Court held a status conference on July 12, 2013. During that conference, the Court appointed Thomas Zimmerman from the Zimmerman Law Offices, P.C., and Stephen DeNittis from DeNittis Osefchen, P.C. as co-lead counsel, made the *Zeqiri* matter part of the consolidated litigation, and set a deadline for Plaintiffs to file a Consolidated Amended Complaint.

8.      Plaintiffs filed their Consolidated Amended Complaint on December 31, 2013. In it, Plaintiffs abandoned their monetary damages claims. Instead, they sought injunctive relief only and the certification of a class pursuant to Fed. R. Civ. P. 23(b)(2). The Consolidated Amended Complaint also dropped Subway Sandwich Shops, Inc. as a party.

7

9. Plaintiffs also filed a motion for class certification on December 31, 2013, which the Court denied without prejudice on January 16, 2014 after Defendant stipulated that it would not seek to moot Plaintiffs' class claims by making offers of judgment.

10. Throughout the summer and fall of 2013, the Parties continued to engage in settlement discussions with the assistance of Magistrate Judge Denlow. Although contentious and hard-fought, these discussions resulted in an agreement in principle on the relief for the Class, which the Parties memorialized by March 2014.

11. The Parties then proceeded, with the help of Magistrate Judge Denlow, to negotiate the amount of attorney's fees and Class Representative Service Awards that Plaintiffs could seek. After a number of contentious exchanges over the course of several months, the Parties determined that they had reached an impasse. The Parties informed the Court of the impasse. The Court decided, with the Parties' consent, that it would conduct an in-person mediation on the attorney's fee and Class Representative Service Award issues.

12. On February 12, 2015, the Court held an in-person mediation session at which the Parties reached an agreement on attorney's fees and Class Representative Service Awards.

13. The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to the Released Claims of the Class. The Parties intend for this Agreement to bind Plaintiffs, Defendant, and all Class Members.

14. Defendant denies the claims in the Litigation, denies any fault, wrongdoing, unfair or deceptive practices, or liability whatsoever arising out of or relating to its business practices, and affirmatively states that its practices have at all

8.

times been lawful and proper. Defendant is mindful, however, that defending the Litigation further would require it to expend significant time and money; distract key management personnel; and otherwise interfere with its ability to operate its businesses effectively and efficiently. Defendant has therefore decided that it is in its best interests to resolve the Litigation on the terms set forth in this Agreement, and thereby avoid the further expense, inconvenience, and interference with business operations that continuing the Litigation would entail.

15.     Based on Class Counsel's comprehensive analysis of the law and facts at issue in the Litigation, and taking into account the risks, uncertainties, delay, and expense involved in the Litigation, Plaintiffs and Class Counsel have concluded that it is in the best interests of the Class to compromise and settle the Litigation fully and finally in the manner and upon the terms and conditions set forth in this Agreement, and that this Agreement is fair, adequate, and reasonable and thus in the best interests of the Class.

16.     The Parties stipulate and intend that the Court will conditionally certify the Class strictly and solely for settlement purposes only, and that this Agreement will encompass and end all pending, threatened, or possible litigation for injunctive relief by the Class, arising out of or related to claims that were brought, or could have been brought, in the Litigation.

17.     The Parties specifically agree that Defendant's execution of this Agreement is not, and will not be construed as, an admission by Defendant or deemed to be evidence in the Litigation or elsewhere: (i) of the validity of any Plaintiff's claims or assertions or of any liability to any Plaintiff; (ii) that Defendant violated any state or federal law, rule, or regulation, or the common law in any respect or otherwise engaged

9

in any wrongful or improper conduct; (iii) that Defendant engaged in unfair or deceptive practices regarding Subway® sandwiches; or (iv) that, but for the Defendant's stipulation herein of the Class strictly and solely for settlement purposes, certification of the Class or other class treatment is or could be appropriate in the Litigation.

18.     The Parties now enter into this Agreement to document the Settlement.

III.     SETTLEMENT TERMS

19.     The Parties agree to do all things necessary and appropriate to obtain Final Approval of this Agreement and of the Judgment, which will approve the terms contained in this Agreement as being fair, reasonable and adequate to all Class Members, and dismiss the Litigation with prejudice.

Class Certification

20.     Defendant does not object to the certification of the Class strictly and solely for settlement purposes only. Certification of the Class will be effective only with respect to the Settlement of the Litigation. If this Agreement is terminated pursuant to its terms, the Judgment is not entered, or the Effective Date does not occur for any reason, then certification of the Class, which is strictly and solely for settlement purposes only, will be vacated and of no further force or effect, and the Litigation will proceed as it existed before execution of this Agreement.

Settlement Benefits

21.     The Settlement will not include any monetary benefits for Class Members.

10

22. Substantially as a result of this litigation, DAI agrees to make, or, for those practice changes it has already made substantially as a result of this Litigation, keep in place, the following practice changes[1]:

    i.      Instituting or maintaining a requirement that franchisees use a tool for measuring bread in each Subway® restaurant to help ensure that the bread sold to customers is either 6 or 12 inches long;

    ii.     Instituting or maintaining a requirement that, at each regular compliance inspection, conducted by DAI or its agents of each Subway® restaurant, generally monthly, to include a sampling of the baked bread to ensure it is at least 12 inches long. The sampling will include measuring at least 10 baked breads in total, and breads using both the Italian and 9-Grain Wheat loaves will be included in the sample;[2]

    iii.    Instituting or maintaining a requirement that bread ovens and proofers be inspected during the evaluations for each Subway® restaurant, generally conducted monthly, to ensure that they are in proper working order and within operating specifications;

    iv.    Increasing the penalty for non-compliance for Subway® restaurants found using bread that is not at least 12 inches long

---

[1] DAI is the Subway® franchisor and does not generally own or operate Subway® restaurants. However, it establishes various quality control and other operational requirements to which its franchisees are required to adhere. DAI or its agents conduct regular inspections of Subway® restaurants, generally monthly, to help ensure compliance with those requirements.

[2] Although Subway® restaurants sell additional varieties of breads, Footlong sandwiches are all made using either an Italian or 9-Grain Wheat loaf as a base.

and/or bread ovens/proofers that are not within operating specifications, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

v.    All DAI franchisee protocols, training materials, and communications (including University of Subway® course materials, the Franchise Disclosure Document, and the Operations Manual) which had previously allowed for a small tolerance in the size of a Footlong sandwich will require that a Footlong sandwich must be at least 12 inches in length. These same materials will also say that a Six Inch sandwich must be at least six inches in length;

vi.    DAI will institute or maintain additional quality control measures regarding bread length. These measures include providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections, and requiring the use of hygrometers in the store inspection process to ensure that bread proofers are operating at the correct temperature and humidity levels. Development Agent offices will be responsible for obtaining any additional or replacement hygrometers in order ensure that they are available and used in the store inspection process. DAI will also enhance the standards relating to the supervision of third party dough manufacturers, including replacing the company retained to test the

12

quality and uniformity of the bread dough produced by those
manufacturers that is shipped to Subway® stores;

vii.    DAI will institute or maintain a requirement that franchisees add a
notice in each Subway® restaurant regarding the inherent
variability in the dimensions of fresh bread. The notice will state:
"Due to natural variations in the bread baking process, the size and
shape of bread may vary," and will be located on the bread cling or
similar location generally visible to customers ordering their
sandwiches;

viii.   DAI will add the notice discussed in the preceding paragraph to its
website in the Menu and Nutrition section at a location agreed to
by the Parties; and

ix.     DAI will institute or maintain a requirement that, at each regular
compliance inspection, generally conducted monthly, DAI or its
agent check for compliance with the requirements of this
Paragraph.  DAI will institute a penalty for non-compliance,
which, in addition to other violations, could result in termination of
a noncompliant franchisee's franchise agreement.

23.    In making these practice changes, Plaintiffs and Class Counsel recognize
that, because of the inherent variability in food production and the bread baking process,
DAI will never be able to guarantee that each loaf of bread will always be exactly 12
inches or greater in length after baking.  Nevertheless, the use of the measuring tool and

13

the additional quality control standards will help ensure that bread sold to consumers by DAI's franchisees is usually the proper length, and that DAI has taken commercially reasonable steps to, as best possible recognizing the inherent variability in food production and the bread baking process, ensure that bread sold in Subway® stores is the proper length.

24.     Defendant agrees to keep the changes listed above in place for at least four years after the Effective Date, and for changes that have not already been made, implement those changes within 60 days of the Effective Date.

25.     Except as provided in Paragraphs 22, 31, 39-42, Defendant will have no other liability or financial responsibility of any kind in connection with the Settlement.

Preliminary Approval of Settlement

26.     Promptly after the execution of this Agreement, Plaintiffs will file this Agreement, including all attached exhibits, a joint motion for preliminary approval, and all supporting papers with the Court. Plaintiffs will request that the Court enter the proposed Preliminary Approval Order.

27.     The proposed Preliminary Approval Order that Plaintiffs will propose to the Court is attached hereto as Exhibit A. The motion for preliminary approval will request that the Court: (i) approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (ii) provisionally certify the Class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (e) for settlement purposes only; (iii) approve the Notice program described in this Agreement and approve the form and content of the Notice that will be submitted with the motion for preliminary approval; (iv) approve the procedures set forth in paragraphs 33-35 below for Class Members to object to the Settlement; (v)

14

stay the Litigation pending Final Approval of the Settlement; and (vi) schedule a Final

Settlement Hearing for a time and date mutually convenient for the Court, Lead Class

Counsel and counsel for Defendants.

28.     Within ten days after the filing of the joint motion for preliminary

approval, Defendant will provide notice of the Settlement, consistent with the

requirements of 28 U.S.C. § 1715(b), to the Attorney General of the United States, and

the State Officials identified in Exhibit B.  If, at any time before the Effective Date, any

of the federal and state officials identified above or in Exhibit B seek to impose

additional terms or liability on Defendant or Related Parties for the matters resolved by

this Settlement, Defendant may, at its option, elect to void the Settlement by written

notice to Class Counsel.  Pursuant to 28 U.S.C.§ 1715(d), the Court will not issue the

Final Approval Order until at least 90 days after the Attorney General and the State

Officials receive the § 1715(b) notice.

Discovery

29.     Class Counsel and Defendant already have engaged in significant informal

discovery.  The Parties agree that Plaintiffs are entitled to conduct, if necessary in the

opinion of Lead Class Counsel, additional informal discovery on a) representations made

by Defendant during settlement communications and b) practice changes implemented by

Defendant since the initiation of this Litigation.

Settlement Administrator

30.     Defendant will retain a Settlement Administrator. The Settlement

Administrator will create and host the Settlement Website and issue the Press Release

Notice. Lead Class Counsel and counsel for Defendant will jointly oversee the Settlement

Administrator.

31.     All Notice and Administration Expenses charged by the Settlement Administrator will be paid by Defendant in a timely manner after receipt and approval by Lead Class Counsel and counsel for Defendant of an invoice.

32.     The duties of the Settlement Administrator are to establish and maintain the Settlement Website, which will provide information and documents to Class Members, and to issue the Press Release Notice.

Providing Notice to Class Members

33.     Because the Settlement provides the Class with essentially all of the injunctive relief sought in the Consolidated Amended Complaint, does not extinguish any Class Member's damage claims (other than those of the Plaintiffs), and does not allow Class Members to exclude themselves, the Parties believe that providing notice other than as explicitly described in this Agreement is neither required nor necessary in these circumstances. The Parties further recognize that the Litigation already has been the subject of significant publicity and that a traditional notice program would be so costly to Defendant that it would imperil the Settlement. The Parties therefore agree that within 15 days of the Court's preliminary approval of the Settlement, the Settlement Administrator will issue a national press release which is approved by the Court, stating that this case has been preliminarily approved, identifying the objection deadline, and the final approval hearing date. It will also contain a link to the Settlement Website ("Press Release Notice"). The Settlement Administrator will distribute the Press Release Notice by PR Newswire to approximately 5,000 newspapers, television stations, radio stations and magazines and approximately 5,400 websites and online databases, including all major search engines. The Settlement Website, Lead Class Counsel's websites, and the

16

press release section of Defendant's website will also contain the Press Release Notice on them. The Parties will jointly propose to the Court the Press Release Notice that is attached hereto as Exhibit C.

34.    Within 15 days of the Court's preliminary approval of the Settlement, the Settlement Website and Lead Class Counsel's websites will also contain a Long-Form Notice on them. The Long Form Notice will contain information about the case and the procedure for Class Members to object to the Settlement, to Class Counsel's application for attorney's fees, costs and expenses, and/or to the application for Class Representative Service Awards. The Parties will jointly propose to the Court the Long-Form Notice that is attached hereto as Exhibit D.

35.    Objections to the Settlement or to the application for fees, costs, expenses, and Class Representative Service Awards must be mailed to the Clerk of the Court. For an objection to be considered by the Court, the objection must be postmarked no later than the Objection Deadline, and be addressed to the Clerk of the Court. For an objection to be considered by the Court, the objection must also set forth:

       a.  the name of the Litigation;

       b.  the objector's full name, address and telephone number;

       c.  an explanation of the basis upon which the objector claims to be a Class Member or otherwise asserts standing to object;

       d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

17

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

f. any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

g. the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

h. a list of all persons, including if applicable the objector himself or herself, who will be called to testify at the Final Approval Hearing in support of the objection; and

i. the objector's or the objector's attorney's signature.

36. If the Court determines that a notice program, other than the one described in Paragraphs 33-35 is required, Defendant may, at its option, elect to void the Settlement by written notice to Class Counsel.

Final Approval Order and Judgment

37. The Plaintiffs' Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Settlement Hearing will occur. Plaintiffs shall file their application for attorney's fees, costs and expenses and for Class Representative Service Awards no later than ten (10) days prior to the Objection Deadline, and Plaintiffs shall file their Motion for Final Approval of the Settlement no later than ten (10) days prior to the Final Settlement Hearing. At the Final Settlement Hearing the Court will hear argument on Plaintiffs' motion for final approval of the Settlement, and on Class Counsel's application for attorney's fees, costs, and

18

expenses and for Class Representative Service Awards. In the Court's discretion, the Court also will hear argument at the Final Settlement Hearing from any Class Members (or their counsel), provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 35 above.

38. The Court at the Final Settlement Hearing will determine whether to grant final approval of the Settlement and enter a final approval order, along with accompanying Judgment, and whether to approve Class Counsel's request for attorney's fees, costs, expenses and Class Representative Service Awards. A proposed Judgment will be attached to the motion and will be in a form agreed upon by Lead Class Counsel and counsel for Defendant. The Judgment will, among other things:

      a.  Determine that the Settlement is fair, adequate and reasonable;

      b.  Finally certify the Settlement Class for settlement purposes only;

      c.  Determine that notice, as agreed to by the Parties and preliminarily approved by the Court, was satisfactory;

      d.  Dismiss the Litigation with prejudice and without costs;

      e.  Bar and enjoin Plaintiffs and all Class Members from asserting any of the Released Claims, as set forth in Paragraphs 47-49, including during any appeal from the final approval order and Judgment;

      f.  Release Defendant and the Related Parties from the Released Claims, as set forth in Paragraphs 47-49; and

      g.  Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, all Class Members,

19

and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

Payment of Attorney's Fees, Costs, and Incentive Awards

39.     Lead Class Counsel will apply to the Court for an award of Class Counsel's attorney's fees and costs of up to $525,000. This application to the Court settles any and all claims for attorney's fees, costs, and expenses regarding the Litigation or the Settlement. Plaintiffs agree that any attorney's fee, cost, and expenses award remains within the sole discretion of the Court, and whatever determination is made in that regard does not give rise to any grounds for rescinding or renegotiating this Settlement. Thus, if the Court grants final approval and enters the Judgment but disallows all or any part of the application for attorney's fees, costs, and expenses, any such disallowance or reduction will not operate to terminate or cancel this Agreement or the Settlement, which will remain in full force and effect.

40.     Lead Class Counsel will ask the Court to approve Class Representative Service Awards of up to $1,000 per Plaintiff. Plaintiffs agree that any Class Representative Service Award remains within the sole discretion of the Court, and whatever determination is made in that regard does not give rise to any grounds for rescinding or renegotiating this Settlement or this Agreement. Thus, if the Court grants final approval and enters the Judgment but disallows all or any part of the application for Class Representative Service Awards, such disallowance or reduction will not operate to terminate or cancel this Agreement or the Settlement, which will remain in full force and effect.

41.     Class Counsel and Plaintiffs acknowledge and agree that the total amount requested for Attorney's Fees, costs, expenses, and Class Representative Service Awards

20

will not exceed $525,000. Defendant agrees to take no position on the request for payment of the Attorney's Fees, costs, expenses and Class Representative Service Awards as long as the request is for $1,000 or less per Plaintiff and the amount of Attorney's Fees, Costs, and Class Representative Service Awards requested totals no more than $525,000.

42.     Within ten business days of the Effective Date, Defendant will pay all Court-approved attorney's fees, costs, and expenses and Class Representative Service Awards to Lead Class Counsel. Once the fees, costs, expenses, and Class Representative Service Awards have been delivered to Lead Class Counsel, Lead Class Counsel will be solely responsible for determining in their sole discretion the allocation of attorney's fees, costs and expenses among Class Counsel, for distributing those fee/cost awards to Class Counsel, and for distributing the Class Representative Service Awards to the Plaintiffs.

43.     The Parties negotiated and reached this agreement regarding Paragraphs 39-42 only after reaching agreement on all other material terms of this Settlement.

Termination of Settlement

44.     This Settlement may be terminated by either Defendant or Lead Class Counsel by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen days after any of the following occurrences:

    a.  the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

    b.  an appellate court reverses the final approval order and Judgment, and the Settlement is not reinstated without material change by the Court on remand;

21

c. any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, final approval order, Judgment, or the Settlement in a way that Defendant or Lead Class Counsel seeking to terminate the Settlement reasonably considers material; or

d. the Effective Date does not occur.

45. Any Party also will have the right to terminate the Settlement at any time following the occurrence of any other ground for termination provided for elsewhere in this Agreement.

46. In the event of a termination of the Settlement pursuant to Paragraphs 28, 30, 44-45, the Parties retain all of their pre-Settlement litigation rights and defenses, including Plaintiffs' right to seek class certification and Defendant's right to oppose class certification.

Scope of Release

47. Plaintiffs and the Class hereby fully and unconditionally release and discharge the Released Parties from any and all claims, demands, rights, causes of action, judgments, executions, liabilities, and costs or expenses of any kind, including attorney's fees and court costs, in law or equity, known or unknown, suspected or unsuspected, fixed or contingent for injunctive relief that arise out of or relate to the length, size, shape, mass, weight, width, dimensions, or proportions of Subway® sandwiches that were brought or that could have been brought in the actions comprising *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, and that are based on alleged conduct relative to the length, size, shape, mass, weight, width, dimensions, or proportions of Subway® Footlong or Six Inch sandwiches that occurred on or before the

22

Final Settlement Date. For the avoidance of doubt, this release is limited to claims for injunctive relief only arising under the common law or by statute, and any non-monetary remedies, attorney's fees, or punitive damages associated with obtaining such injunctive relief. This is intended to be a full and general release of all known and unknown claims for injunctive relief that any member of the Settlement Class may have against DAI related to the length, size, shape, mass, weight, width, dimensions, or proportions of Subway® Footlong or Six Inch sandwiches that any members of the Settlement Class may have incurred. This release discharges the injunctive relief claims of all those who claim through any Class Member or who assert claims on behalf of Class Members. In addition, Plaintiffs agree that for them only, this release also releases and discharges all claims for monetary damages against the Released Parties that arise out of or relate to the length, size, shape, mass, weight, width, dimensions, or proportions of Subway® Footlong or Six Inch sandwiches that occurred on or before the Final Settlement Date.

48.     This Release does not bar Class Members from seeking monetary damages, or instituting any lawsuit to recover monetary damages, including attorney's fees or punitive damages sought in connection with a claim for monetary damages, either individually or as a putative class against any of the Released Parties. The release provided by Class Members does not extend to actions brought to enforce this Settlement.

49.     The Class specifically waives any and all rights or benefits as they relate to injunctive relief which any of them may have with respect to the Litigation, arising now or in the future under Section 1542 of the California Civil Code, which section provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known

23

by him or her must have materially affected his or her settlement with the debtor." The Class acknowledges that some or all of them may hereafter discover facts different from or in addition to those which the Class now knows, believes, or suspects to be true with respect to the Litigation. Nevertheless, it is the intention of the Class fully, finally, and forever to settle and release all of the injunctive relief claims released in this Agreement. The Class assumes the risk of the possible discovery of such additional or different facts and agrees that the release given herein shall be and remain effective in all respects as to the released matters, regardless of the discovery of such additional or different facts. The Named Plaintiffs additionally waive all rights that they have under Section 1542 of the California Civil Code as it relates to their individual claims for monetary damages against the Released Parties that arise out of or relate to the length, size, shape, mass, weight, width, dimensions, or proportions of Subway® Footlong or Six Inch sandwiches that occurred on or before the Final Settlement Date.

Additional Terms

50.     The Parties voluntarily agree to enter into a stay of all litigation activities concerning any matters asserted in the Litigation or any of the Released Claims. The stay of all litigation activities will remain in effect until one of the following events occurs: (i) the Effective Date as defined in Definition J above; or (ii) one of the Parties voids this Agreement pursuant to Paragraphs 28, 30, 44-45.

51.     Neither this Agreement nor any document prepared in connection with the Settlement may be cited or used in any way in any proceeding as an admission by Defendant, Released Parties, or Plaintiffs, including any admission as to the propriety of class treatment, except that any and all provisions of the Agreement may be admitted into

24

evidence and otherwise used in a proceeding to enforce any or all terms of the Agreement, or in defense of any claims released or barred by this Agreement.

52. The Plaintiffs and Defendant represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind Plaintiffs and Defendant to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

53. Neither Defendant nor Plaintiffs, nor any of them, will be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

54. The Parties agree that Class Counsel have a duty under Federal Rule of Civil Procedure Rule 23(g)(4) to represent fairly and adequately the interests of the Settlement Class. To meet these requirements, the Parties may take steps reasonably necessary to obtain approval of the Settlement. The Parties may speak to relevant regulators, including Attorneys General, regarding the Settlement. The Parties and their counsel may respond to media inquiries but may not disparage the Parties, their counsel, or the terms of the Settlement. Class Counsel may have direct communications about the Settlement with Class Members, who will become bound by this and the other terms of the Settlement upon entry of the Judgment. Defendant may discuss the Settlement with any of its affiliates and make other disclosures as required by franchise or other applicable law. Any other public communications regarding the terms of the Settlement,

including but not limited to advertising, press releases, television, radio, print, internet, social media, or any other medium will be submitted to and approved by the Court before dissemination.

55.     Unless otherwise specifically provided in this Agreement, all notices, demands or other communications given hereunder will be in writing and will be deemed to have been duly given as of the third business day after mailing, addressed as follows:

> To the Plaintiffs and the Class Members:
>
> Thomas A. Zimmerman, Jr., Esq.
> Zimmerman Law Offices, P.C.
> 77 West Washington Street, Suite1220
> Chicago, Illinois 60602
>
> Stephen P. DeNittis, Esq.
> DeNittis Osefchen, P.C.
> 5 Greentree Centre, Suite 410
> Route 73 South & Lincoln Drive
> Marlton, New Jersey 08053
>
> To Defendant Doctor's Associates Inc.:
>
> Bethany L. Appleby, Esq.
> John M. Doroghazi, Esq.
> WIGGIN AND DANA LLP
> One Century Tower
> P.O. Box 1832
> New Haven, CT 06508

56.     After this Agreement is fully executed by all Parties and their attorneys of record, this Agreement and its attached Exhibits will constitute the entire agreement relating to Settlement of the Litigation, and it will then be deemed and agreed that no oral representations, warranties, or inducements have been made to any party concerning this

26

Agreement or its Exhibits other than the representations, warranties, and covenants expressly stated in this Agreement and its Exhibits.

57.     Class Counsel unconditionally warrant and represent that they are authorized by Plaintiffs, for whom they are attorneys of record, and the attorneys of record for Defendant unconditionally warrant and represent that they are authorized by Defendant, to take all appropriate action required or permitted to be taken by their respective clients under this Agreement to effectuate its terms and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.

58.     No opinion concerning the tax consequences of the Settlement to Plaintiffs or Class Counsel is being given or will be given by the Defendant or its counsel, nor does Defendant make any representation or warranty in this regard by virtue of this Agreement. Each Plaintiff and Class Counsel's tax obligations, and the determination thereof, are the sole responsibility of the Plaintiffs or Class Counsel respectively, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Plaintiff or Class Counsel.

59.     This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement will exchange among themselves signed counterparts. Facsimile or electronically scanned signatures will be accepted. Each Party will keep its original signatures and, upon request, send it to its

27

counsel. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

60.     This Agreement is to be governed by and interpreted under the laws of the State of Connecticut.

61.     The exhibits attached hereto and thereby incorporated into this Agreement are as follows:

A.     [Form] Order for Preliminary Approval

B.     List of State and Federal Officials

C.     [Form] Press Release Notice

D.     [Form] Long-Form Notice.

IV.     EXECUTION

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.


**NAMED PLAINTIFFS**


| | |
|---|---|
| Nguyen Thuen, Class Representative | 9-24-15 Date |

| | |
|---|---|
| John Farley, Class Representative | Date |

| | |
|---|---|
| Vincent Gotter, Class Representative | Date |

28

counsel. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

60. This Agreement is to be governed by and interpreted under the laws of the State of Connecticut.

61. The exhibits attached hereto and thereby incorporated into this Agreement are as follows:

A. [Form] Order for Preliminary Approval

B. List of State and Federal Officials

C. [Form] Press Release Notice

D. [Form] Long-Form Notice.

IV. EXECUTION

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

**NAMED PLAINTIFFS**

_____        _____
Nguyen Buren, Class Representative                    Date

_____        _____
John Farley, Class Representative                    9/18/2015
                                                     Date

_____        _____
Vincent Gotter, Class Representative                 Date

28

counsel. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

60. This Agreement is to be governed by and interpreted under the laws of the State of Connecticut.

61. The exhibits attached hereto and thereby incorporated into this Agreement are as follows:

A. [Form] Order for Preliminary Approval

B. List of State and Federal Officials

C. [Form] Press Release Notice

D. [Form] Long-Form Notice.

IV. EXECUTION

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

**NAMED PLAINTIFFS**

_____          _____
Nguyen Buren, Class Representative          Date


_____          _____
John Farley, Class Representative          Date


_____          _____
Vincent Gotter, Class Representative          Date

28

_Barry Gross_ _9 - 22 - 15_

Barry Gross, Class Representative                    Date

_____          _____
Jason Leslie, Class Representative          Date


_____          _____
Ayanna Nobles, Class Representative         Date


_____          _____
Charles Noah Pendrak, Class Representative   Date


_____          _____
Andrew Roseman, Class Representative        Date


_____          _____
Richard Springer, Class Representative       Date


_____          _____
Zana Zeqiri, Class Representative           Date

**PLAINTIFFS' COUNSEL**


_____          _____
Zimmerman Law Offices, P.C.                 Date
Co-Lead Class Counsel

29

Barry Gross, Class Representative _____ Date _____

Jason Leslie, Class Representative _____ 9-10-2015 Date _____

~~Ayanna Nobles, Class Representative~~ _____ **Date** _____

Charles Noah Pendrak, Class Representative _____ Date _____

Andrew Roseman, Class Representative _____ Date _____

Richard Springer, Class Representative _____ Date _____

Zana Zeqiri, Class Representative _____ Date _____

**PLAINTIFFS' COUNSEL**

Zimmerman Law Offices, P.C.
**Co-Lead Class Counsel** _____ Date _____

29

Barry Gross, Class Representative

Date

Jason Leslie, Class Representative

Date

Ayanna Nobles, Class Representative

Date

Charles Noah Pendrak, Class Representative

9/17/15

Date

Andrew Roseman, Class Representative

Date

Richard Springer, Class Representative

Date

Zana Zeqiri, Class Representative

Date

**PLAINTIFFS' COUNSEL**

Zimmerman Law Offices, P.C.
Co-Lead Class Counsel

Date

29

_____          _____
Barry Gross, Class Representative                              Date

_____          _____
Jason Leslie, Class Representative                             Date

_____          _____
Ayanna Nobles, Class Representative                           Date

_____          _____
Charles Noah Pendrak, Class Representative                    Date

_____          9-16-15
Andrew Roseman, Class Representative                          Date

_____          _____
Richard Springer, Class Representative                        Date

_____          _____
Zana Zeqiri, Class Representative                             Date

**PLAINTIFFS' COUNSEL**

_____          _____
Zimmerman Law Offices, P.C.                                   Date
**Co-Lead Class Counsel**

29

_____      _____
Barry Gross, Class Representative      Date

_____      _____
Jason Leslie, Class Representative      Date

_____      _____
Ayanna Nobles, Class Representative      Date

_____      _____
Charles Noah Pendrak, Class Representative      Date

_____      _____
Andrew Roseman, Class Representative      Date

_____      9/15/2015
Richard Springer, Class Representative      Date

_____      _____
Zana Zeqiri, Class Representative      Date

**PLAINTIFFS' COUNSEL**

_____      _____
Zimmerman Law Offices, P.C.      Date
Co-Lead Class Counsel

29

Barry Gross, Class Representative

Date

Jason Leslie, Class Representative

Date

Ayanna Nobles, Class Representative

Date

Charles Noah Pendrak, Class Representative

Date

Andrew Roseman, Class Representative

Date

Richard Springer, Class Representative

Date

Zana Zeqiri, Class Representative

Sept. 11, 2015
Date

**PLAINTIFFS' COUNSEL**

Zimmerman Law Offices, P.C.
Co-Lead Class Counsel

Date

29

_____     _____
Barry Gross, Class Representative          Date

_____     _____
Jason Leslie, Class Representative          Date

_____     _____
Ayanna Nobles, Class Representative          Date

_____     _____
Charles Noah Pendrak, Class Representative          Date

_____     _____
Andrew Roseman, Class Representative          Date

_____     _____
Richard Springer, Class Representative          Date

_____     _____
Zana Zeqiri, Class Representative          Date

**PLAINTIFFS' COUNSEL**

_____     9-24-15
Zimmerman Law Offices, P.C.          Date
Co-Lead Class Counsel

29

_____  
DeNittis Osefchen, P.C.  
Co-Lead Class Counsel

9/22/2015  
Date

_____  
Law Offices of Todd M. Friedman  
Counsel for Plaintiffs

_____  
Date

_____  
Edelman, Combs, Latturner & Goodwin, LLC  
Counsel for Plaintiffs

_____  
Date

_____  
Agruss Law Firm, LLC  
Counsel for Plaintiffs

9-10-15  
Date

_____  
Ademi & O'Reilly, LLP  
Counsel for Plaintiffs

_____  
Date

_____  
Faruqi & Faruqi, LLP  
Counsel for Plaintiffs

_____  
Date

_____  
Evans Law Firm, P.A.  
Counsel for Plaintiffs

_____  
Date

_____  
The Terrell Law Group  
Counsel for Plaintiffs

_____  
Date

30

DeNittis Osefchen, P.C.                          Date
Co-Lead Class Counsel


Law Offices of Todd M. Friedman            9/15/15
Counsel for Plaintiffs                           Date


Edelman, Combs, Latturner & Goodwin, LLC    Date
Counsel for Plaintiffs


Agruss Law Firm, LLC                         Date
Counsel for Plaintiffs


Ademi & O'Reilly, LLP                        Date
Counsel for Plaintiffs


Faruqi & Faruqi, LLP                         Date
Counsel for Plaintiffs


Evans Law Firm, P.A.                         Date
Counsel for Plaintiffs


The Terrell Law Group                        Date
Counsel for Plaintiffs

30

DeNittis Osefchen, P.C.
Co-Lead Class Counsel

Date

Law Offices of Todd M. Friedman
Counsel for Plaintiffs

Date

Edelman, Combs, Latturner & Goodwin, LLC
Counsel for Plaintiffs

9-22-15
Date

Agruss Law Firm, LLC
Counsel for Plaintiffs

Date

Ademi & O'Reilly, LLP
Counsel for Plaintiffs

Date

Faruqi & Faruqi, LLP
Counsel for Plaintiffs

Date

Evans Law Firm, P.A.
Counsel for Plaintiffs

Date

The Terrell Law Group
Counsel for Plaintiffs

Date

30

---
DeNittis Osefchen, P.C.     Date
Co-Lead Class Counsel

---
Law Offices of Todd M. Friedman  Date
Counsel for Plaintiffs

---
Edelman, Combs, Latturner & Goodwin, LLC Date
Counsel for Plaintiffs

---
Agruss Law Firm, LLC    Date
Counsel for Plaintiffs

---
Ademi & O'Reilly, LLP    Date
Counsel for Plaintiffs

---
         9/10/15
Faruqi & Faruqi, LLP    Date
Counsel for Plaintiffs

---
Evans Law Firm, P.A.    Date
Counsel for Plaintiffs

---
The Terrell Law Group    Date
Counsel for Plaintiffs

30

_____          _____
DeNittis Osefchen, P.C.                                  Date
Co-Lead Class Counsel


_____          _____
Law Offices of Todd M. Friedman                          Date
Counsel for Plaintiffs


_____          _____
Edelman, Combs, Latturner & Goodwin, LLC                 Date
Counsel for Plaintiffs


_____          _____
Agruss Law Firm, LLC                                     Date
Counsel for Plaintiffs


_____          _____
Ademi & O'Reilly, LLP                                    Date
Counsel for Plaintiffs


_____          _____
Faruqi & Faruqi, LLP                                     Date
Counsel for Plaintiffs


_____          9-20-2015
Evans Law Firm, P.A.                                     Date
Counsel for Plaintiffs


_____          _____
The Terrell Law Group                                    Date
Counsel for Plaintiffs

30

_____          _____
DeNittis Osefchen, P.C.                    Date
Co-Lead Class Counsel


_____          _____
Law Offices of Todd M. Friedman            Date
Counsel for Plaintiffs


_____          _____
Edelman, Combs, Latturner & Goodwin, LLC   Date
Counsel for Plaintiffs


_____          _____
Agruss Law Firm, LLC                       Date
Counsel for Plaintiffs


_____          9/11/2015
Ademi & O'Reilly, LLP                      Date
Counsel for Plaintiffs


_____          _____
Faruqi & Faruqi, LLP                       Date
Counsel for Plaintiffs


_____          _____
Evans Law Firm, P.A.                       Date
Counsel for Plaintiffs


_____          _____
The Terrell Law Group                      Date
Counsel for Plaintiffs

30

_[signature]_          9 - 20 - 15
_____     _____
Hirsh Law Firm, P.A.                   Date
Counsel for Plaintiffs


_____     _____
Marks & Klein, LLP                      Date
Counsel for Plaintiffs

**DEFENDANT:**

Doctor's Associates Inc.               _____
                                     Date

By:_____

Title:_____


_____     _____
Bethany L. Appleby                      Date
Counsel for Doctor's Associates Inc.

5063/500/3342363.1

31

Hirsh Law Firm, P.A.
Counsel for Plaintiffs

_____
Date

_____

Marks & Klein, LLP
Counsel for Plaintiffs

9/10/2015
Date

**DEFENDANT:**

Doctor's Associates Inc.

_____
Date

By:_____

Title:_____

_____

Bethany L. Appleby
Counsel for Doctor's Associates Inc.

_____
Date

5063/500/3342363.1

31

| Hirsh Law Firm, P.A. | Date |
| Counsel for Plaintiffs | |

| Marks & Klein, LLP | Date |
| Counsel for Plaintiffs | |

**DEFENDANT:**

Doctor's Associates Inc.

By: _Suzanne Greco_

Title: _President_

_____ 9|29|15
Date

_____
Bethany L. Appleby                    9/24/15
Counsel for Doctor's Associates Inc.        Date

5063/500/3342363.1

31

## Exhibit A to Settlement Agreement

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

IN RE: SUBWAY FOOTLONG SANDWICH )
MARKETING AND SALES PRACTICES LITIGATION )        No. 3:13-md-2439
)

## [PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
## SETTLEMENT AGREEMENT AND CERTIFYING THE SETTLEMENT CLASS

The parties to the above-captioned action have agreed to settle the Litigation (the

"Settlement") pursuant to the terms and conditions set forth in an executed Settlement

Agreement and Release (the "Settlement Agreement"). The parties reached the Settlement

through arms-length negotiations with the assistance of retired United States Magistrate Judge

Morton Denlow and, on the issue of attorney's fees and Class Representative Service Awards,

the Court. Under the Settlement Agreement, subject to the terms and conditions therein and

subject to Court approval, Plaintiffs and the proposed settlement Class would fully, finally, and

forever resolve, discharge and release their injunctive relief claims in exchange for Defendant's

agreement to make certain practice changes and the payment of no more than $525,000 in total

for attorney's fees, expenses, costs, and Class Representative Service Awards. In addition,

Defendant will separately pay all costs and fees associated with creating a Settlement Website

that is provided for in the Settlement Agreement.

Plaintiffs have filed an Unopposed Motion for Preliminary Approval of Settlement. Upon considering Plaintiffs' motion and all exhibits thereto, the Settlement Agreement, the record in these proceedings, the representations, argument and recommendations of counsel, and the requirements of law, the Court finds that: (1) this Court has jurisdiction over the subject matter and parties to these proceedings; (2) for purposes of settlement only, the proposed Class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) and should be certified for settlement purposes only; (3) the Plaintiffs and the law firms identified below should be appointed Class Representatives and Class Counsel; (4) the Settlement is the result of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, was reached with the assistance of experienced, highly-qualified mediators, and is not the result of collusion; (5) the Settlement is within the range of reasonableness and should be preliminarily approved; (6) the Notice Program included in the Settlement Agreement is reasonably calculated under the circumstances to apprise the Class of the pendency of the Litigation, class certification, the terms of the Settlement, Class Counsel's application for an award of attorneys' fees and expenses and request for Class Representative Service Awards for Plaintiffs, and their rights to object to the Settlement; (7) good cause exists to schedule and conduct a Final Approval Hearing, pursuant to Federal Rule of Civil Procedure 23(e), to assist the Court in determining whether to grant Final Approval to the Settlement and enter Judgment, and whether to grant Class Counsel's application for an award of attorneys' fees and expenses and request for Class Representative Service Awards for Plaintiffs; and (8) the other related matters pertinent to the Preliminary Approval of the Settlement should also be approved.

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1.     As used in this Order, capitalized terms shall have the definitions and meanings accorded to them in the Settlement Agreement.

2.     The Court has jurisdiction over the subject matter and Parties to this proceeding pursuant to 28 U.S.C. § 1332.

3.     Venue is proper in this District.

Provisional Class Certification and Appointment of Class Representatives and Class Counsel

4.     In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

5.     The Court finds, for settlement purposes, that the Federal Rule of Civil Procedure 23(a) factors are present and that certification of the proposed Class is appropriate under Rule 23(b)(2). The Court, therefore, certifies the following Class for settlement purposes:

> all persons in the United States who purchased a Six inch or Footlong sandwich at a Subway® restaurant any time between January 1, 2003 and the date of this Order. Excluded from this class are Defendant, the Related Parties, governmental entities, and all judges assigned to hear any aspect of this case, as well as their immediate families.

6.     Specifically, the Court finds, for settlement purposes only, that the Class satisfies the following subdivisions of Federal Rule of Civil Procedure 23:

(a)     Numerosity: The Subway® franchise system is one of the largest restaurant chains in the United States. During the Class Period, a sizable portion of the American population has purchased a sandwich at a Subway® restaurant. Joinder is therefore impractical and Rule 23(a)(1)'s numerosity requirement is met.

(b)     Commonality: The threshold for commonality under Rule 23(a)(2) is not high. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted). Here, the commonality requirement is satisfied. There are multiple questions of law and fact, centering on Defendant's class-wide policies and practices, that are common to the Class, that are alleged to have injured all Class Members in the same way, and that would generate common answers central to the viability of the claims were this case to proceed to trial.

(c) Typicality: The Plaintiffs' claims also are typical of the Class because they concern the same policies and practices of Defendant, arise from the same legal theories, and allege the same types of harm and entitlement to relief. Rule 23(a)(3) is therefore satisfied.

(d) Adequacy: Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiffs and the Class, and Plaintiffs have retained competent counsel to represent them and the Class. Class Counsel regularly engage in consumer class litigation and other complex litigation similar to the present Litigation, and have dedicated substantial resources to the prosecution of these actions. Moreover, Plaintiffs and Class Counsel have vigorously and competently represented the Class Members' interests in these actions.

(e) Injunctive Only class: Rule 23(b)(2) is satisfied because based on the alleged acts, Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

7. In addition, the Court preliminarily finds that by not objecting to the certification of the Class for settlement purposes and by taking other steps to negotiate, execute, and implement the Settlement Agreement, Defendant has not waived any arguments that it has or may have to opposing class certification absent the Settlement Agreement. If the proposed Settlement is not finally approved by the Court, or does not become final, pursuant to the terms

5

of the Settlement Agreement, the Court will fully disregard and not consider any act relating to the negotiation, execution, or implementation of the Settlement Agreement, certification of the Class for settlement purposes only, or Defendant's lack of objection to Plaintiffs' class certification motion when deciding any class certification issues.

8.     The Court appoints the following people as class representatives: Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri.

9.     The Court appoints the following firms as Class Counsel: Zimmerman Law Offices, P.C; DeNittis Osefchen, P.C.; Law Offices of Todd M. Friedman; Edelman, Combs, Latturner & Goodwin, LLC; Agruss Law Firm, LLC; Ademi & O'Reilly, LLP; Evans Law Firm, P.A.; the Terrell Law Group; Hirsch Law Firm, P.A.; Marks & Klein, LLP. The Zimmerman Law Offices, P.C. and DeNittis Osefchen, P.C. law firms are appointed as Lead Class Counsel.

Preliminary Approval of the Settlement

10.     At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 Newberg § 11.26. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

11.     The Court preliminarily approves the Settlement, as fair, reasonable and adequate. The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms-length negotiations between the Parties and their capable and experienced counsel, and was reached with the assistance of a retired United States Magistrate

Judge and the Court. The Court further finds that the Settlement is within the range of reasonableness and possible judicial approval, such that: (a) a presumption of fairness is appropriate for the purposes of Preliminary Approval; and (b) it is appropriate to effectuate the notice to the Class, as set forth below and in the Settlement Agreement, and schedule a Final Approval Hearing to assist the Court in determining whether to grant Final Approval to the Settlement and enter Judgment.

12.     To the extent that Defendant has not yet done so, it will comply with the obligation to give notice under CAFA, 28 U.S.C. § 1715, in connection with the proposed Settlement as set forth below.

<u>Approval of Notice and Notice Program and Direction to Effectuate Notice</u>

13.     When a Rule 23(b)(2) class is certified, no notice to the class is necessary. *See* Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2558 (2011); *see also, e.g., Lewis v. City of Chicago*, 702 F.3d 958, 962–63 (7th Cir. 2012) ("Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class."). Rule 23(e), however, says that the court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. There is a tension between these two provisions. Courts, however, have resolved this tension by employing a "functional interpretation of Rule 23(e)" and finding that notice is not required under certain circumstances. *Green v. American Express Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001) (calling this the "functional interpretation of Rule 23(e)"). *Selby v. Principal Mutual Life Ins. Co.*, 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003); *Jermyn v. Best Buy Stores, L.P.*, 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012); *Foti v. NCO Fin. Sys., Inc.*, No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511, at *14 (S.D.N.Y. Feb. 19, 2008); *Miller v. Hygrade Food Prods. Corp.*, 01-3953, 2002 WL 1060698 (E.D. Pa. May 23, 2002) (observing that "the majority of courts have determined that

the Rule does not contain an absolute notice requirement" and declining to require notice where "there is no evidence of collusion and only negligible evidence of prejudice"); *Kim v. Space Pencil, Inc.*, C 11-03796, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ("The court exercises its discretion and does not direct notice here because the settlement does not alter the unnamed class members' legal rights."); *Lilly v. Conagra Foods, Inc.*, No. CV 12-225-RGK (SHx) Doc. No. 113, 134 (C.D. Cal. 2014); *see also* 2 McLaughlin on Class Actions § 6:20 ("[a]lthough the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or compromise be provided to class members in all class actions, many courts have adopted a 'functional interpretation of the Rule that permits courts to approve certain settlements without any notice to class members—even in classes certified under Rule 23(b)(3). This approach is sound."); Newberg on Class Actions §§ 11:66, 11:72 (5th ed.). Situations where notice is not necessary include: (1) when the terms of the settlement provide near complete relief to the plaintiffs, (2) when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class, (3) when there is no evidence of any collusion between the parties, and (4) when the cost of notice would risk eviscerating the settlement agreement. *Green*, 200 F.R.D. at 212.

14.     Here, the Court finds that traditional forms of publication notice are not necessary. First, Class members are giving up only injunctive relief claims and cannot opt-out. Moreover, the injunctive relief is providing Class Members with the relief that they seek. Second, the Settlement is not collusive in any way. Rather, it took almost 18 months and the assistance of the Court and a retired magistrate judge to negotiate. Conversely, requiring extensive, traditional publication notice would be expensive and out of line with the rest of the Settlement. A large portion of the entire population of the United States is likely to have eaten at a Subway® restaurant at least once since 2003. Thus, any class notice would be through

publication notices in major newspapers and magazines. That kind of cost would put the Settlement at risk because DAI has indicated that it may abandon the Settlement if forced to incur that kind of expense. Finally, there was considerable press on social, television, print and radio media about the length of sandwiches around the time these lawsuits were filed in 2013. Considering these facts, a press release containing a link to a Settlement Website will provide the public with the information it needs about this Settlement.

15. For these reasons, the Court approves the form and content of the Press Release Notice and Long-Form Notice, which are attached as Exhibits 1 and 2 to the Unopposed Motion for Preliminary Approval. The Court further finds that although no traditional publication notice is necessary, the notice program, described in Paragraphs 33-35 of the Settlement Agreement, is appropriate under the circumstances. The notices and notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

16. The Court directs that Rust Consulting act as the Settlement Administrator. The Settlement Administrator shall issue the Press Release Notice in the manner described in the Settlement Agreement. It also shall establish and maintain a Settlement Website, which will explain the Settlement, give answers to frequently asked questions, and provide links to the Long Form Notice, the Settlement Agreement, and other court documents, including the complaints filed in the Litigation.

17. DAI will pay all costs associated with the Settlement Administrator and will also post the Press Release Notice on its website. Lead Class Counsel will also post the Press Release Notice on their websites.

18. The Press Release Notice, Long Form Notice, and the Settlement Website will be made available to the public in the manner described in the Settlement Agreement within 15 days

after the Court enters this Order.

<u>Final Approval Hearing, Opt-Outs, and Objections</u>

19.    The Court directs that a Final Approval Hearing shall be scheduled for
[_____, 2015], at [___:___ am/pm], to assist the Court in determining whether to grant
Final Approval to the Settlement and enter Judgment, and whether Class Counsel's application
for attorneys' fees and expenses and request for Service Awards for Plaintiffs should be granted.

20.    Any person in the Class may object to the Settlement, Class Counsel's application
for attorneys' fees and expenses and/or the request for Service Awards for Plaintiffs. Any such
objections to the Settlement or to the application for fees, costs, expenses, and Class
Representative Service Awards must be mailed to the Clerk of the Court no later than 75 days
after the entry of this Order, as specified in the Notice. For an objection to be considered by the
Court, the objection, as stated in the Long Form Notice, must be signed by the objector's or the
objector's attorney and also set forth:

      a) the name of the Litigation;

      b) the objector's full name, address and telephone number;

      c) an explanation of the basis upon which the objector claims to be a Class
         Member or otherwise asserts standing to object;

      d) all grounds for the objection, accompanied by any legal support for the
         objection known to the objector or his counsel;

      e) the identity of all counsel who represent the objector, including any former or
         current counsel who may be entitled to compensation for any reason related to
         the objection to the Settlement or fee application;

      f) any and all agreements that relate to the objection or the process of
        objecting—whether written or verbal—between objector or objector's counsel

and any other person or entity;

g) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; and

h) a list of all persons, including if applicable the objector himself, who will be called to testify at the Final Approval Hearing in support of the objection.

Further Papers In Support Of Settlement and Fee Application

21. Class Counsel shall file their application for attorney's fees and expenses no later than 65 days after the entry of this Order, and Plaintiffs shall file their Motion for Final Approval of the Settlement no later than 95 days after the entry of this Order.

Effect of Failure to Approve the Settlement

22. In the event the Settlement is not approved by the Court, or for any reason the parties fail to obtain a Final Judgment as contemplated in the Settlement, or the Settlement is terminated pursuant to its terms for any reason, then the following shall apply:

(a) All orders and findings entered in connection with the Settlement, including the certification of a class, shall become null and void and have no further force and effect, shall not be used or referred to by the parties or the Court or by any member of the putative class for any purposes whatsoever, and shall not be admissible or discoverable in any other proceeding; and

(b) Nothing contained in this Order is, or may be construed as, any admission or concession by or against Defendant or Plaintiffs on any point of fact or law.

Stay/Bar Of Other Proceedings

23. All proceedings in the Litigation are stayed until further order of the Court, except as may be necessary to implement the terms of the Settlement.

24. Based on the foregoing, the Court sets the following schedule for the Final Approval Hearing and the actions which must precede it:

| Event | Days From Preliminary Approval Order | Date |
|---|---|---|
| Press Release Notice and Settlement Website made Public | 15 Days | _____, 2015 |
| Motion for Attorney's Fees | 65 Days | _____, 2015 |
| Deadline to Submit Objections | 75 Days | _____, 2015 |
| Motion for Final Approval | 95 Days | _____, 2015 |
| Final Fairness Hearing | 105 Days | _____, 2015 |

DONE AND ORDERED at the United States Courthouse in Milwaukee, Wisconsin this _____ day of _____ 2015.

_____

LYNN ADELMAN
UNITED STATES DISTRICT JUDGE

## Exhibit B To Settlement Agreement

5063/500/3219446.3

Federal Official:

The Honorable Loretta Lynch
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

State Officials (alphabetized by state and territory):

The Honorable Luther Strange
Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152

The Honorable Craig W. Richards
Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, AK 99811-0300

The Honorable Eleasalo V. Ale
Attorney General
Department of Legal Affairs
A.P. Lutali Executive Office Building
Utulei, American Samoa 96799

The Honorable Mark Brnovich
Attorney General
Office of the Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926

The Honorable Leslie Carol Rutledge
Attorney General
Office of the Attorney General
200 Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201-2610

5063/500/32194463

The Honorable Kamala Harris
Attorney General
c/o CAFA Coordinator
Office of the Attorney General
Consumer Law Section
1300 "I" Street
Sacramento, CA 95814-2919

The Honorable Cyntia H. Coffman
Attorney General
Office of the Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203

Jonathan A. Harris
Commissioner of Consumer Protection
Department of Consumer Protection
165 Capitol Avenue
Hartford, Connecticut 06106-1630

The Honorable George Jepsen
Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

The Honorable Matthew Denn
Attorney General
Office of the Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

The Honorable Karl Racine
Attorney General
Office of the Attorney General
441 4th Street, NW, Suite 1145S
Washington, DC 20001

The Honorable Pam Bondi
Attorney General
Office of the Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

**3**

John Sours
Chief Administrator
The Governor's Office of Consumer Affairs
2 Martin Luther King Jr. Drive, Suite 356
Atlanta, GA 30334-4600

The Honorable Sam Olens
Attorney General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

The Honorable Elizabeth Barrett-Anderson
590 South Marine Corps. Drive
ITC Building, Suite 706
Tamuning, GU 96913

The Honorable David M. Louie
Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813

The Honorable Lawrence Wasden
Attorney General
Office of the Attorney General
Consumer Protection Division
700 West Jefferson, Suite 210
Boise, ID 83720-0010

The Honorable Lisa Madigan
Attorney General
Office of the Attorney General
100 West Randolph Street
Chicago, IL 60601

The Honorable Greg Zoeller
Attorney General
Office of the Indiana Attorney General
Indiana Government Center South - 5th Floor
302 W. Washington Street
Indianapolis, IN 46204

4

The Honorable Tom Miller
Attorney General
Office of the Iowa Attorney General
1305 E. Walnut Street
Des Moines, IA 50319

The Honorable Jack Conway
Attorney General
Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601-3449

The Honorable Derek Schmidt
Attorney General
Office of the Kansas Attorney General
120 S.W. 10th Avenue, Second Floor
Topeka, KS 66612

The Honorable James D. Caldwell
Attorney General
Office of the Attorney General
Civil Division
P.O. Box 94095
Baton Rouge, LA 70804

The Honorable Janet T. Mills
Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333

The Honorable Brian Frosh
Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202

The Honorable Maura Healey
Attorney General
Office of Attorney General
One Ashburton Place
Boston, MA 02108-1518

5063/500/3219446.3

The Honorable Bill Schuette
Attorney General
Department of the Attorney General
Cadillac Place, 10th Floor
3030 W. Grand Blvd., Suite 10-200
Detroit, MI 48202

The Honorable Lori Swanson
Attorney General
Office of the Attorney General
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101-2131

The Honorable Jim Hood
Attorney General
Office of the Attorney General
Consumer Protection Division
550 High Street
Jackson, MS 39201

The Honorable Chris Koster
Attorney General
Missouri Attorney General's Office
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102

The Honorable Tim Fox
Attorney General
Montana Department of Justice
215 N. Sanders, 3rd Floor
Helena, MT 59620-1401

The Honorable Doug Peterson
Attorney General
Office of the Attorney General
2115 State Capitol Building
Lincoln, NE 68509

The Honorable Joseph Foster
Attorney General
Department of Justice
33 Capitol Street
Concord, NH 03301

**6**

The Honorable Adam Paul Laxalt
Attorney General
Office of the Attorney General
Old Supreme Court Building
100 N. Carson Street
Carson City, NV 89701

The Honorable John Jay Hoffman
Acting Attorney General
Office of the Attorney General
25 Market Street, 8th Floor
Trenton, NJ 08625-0080

The Honorable Hector Balderas
Attorney General
Office of Attorney General
408 Galisteo Street
Santa Fe, NM 85701

The Honorable Eric Schneiderman
Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224-0341

The Honorable Roy Cooper
Attorney General
Office of the Attorney General
9001 Mail Service Center
Raleigh, NC 27699-9001

The Honorable Wayne Stenehjem
Attorney General
Office of the Attorney General
State Capitol
600 East Boulevard Avenue, Dept. 125
Bismarck, ND 58505

The Honorable Joey P. San Nicolas
Attorney General
Office of the Attorney General
Caoitol Hill Road
Capitol Hill, Saipan 96950
Northern Mariana Islands

5063/500/3219446.3

The Honorable Mike DeWine
Attorney General
Office of the Attorney General
30 E. Broad Street, 14th Floor
Columbus, OH 43215

The Honorable Scott Pruitt
Attorney General
Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

The Honorable Ellen Rosenblum
Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301-4096

The Honorable Kathleen Kane
Attorney General
Pennsylvania Office of the Attorney General
1600 Strawberry Square, 16th Fl.
Harrisburg, PA 17120

The Honorable Roberto J. Sanchez-Ramos
Attorney General
Office of Attorney General
GPO Box 902192
San Juan, PR 00902-0192

The Honorable Peter Kilmartin
Attorney General
Office of the Attorney General
150 South Main Street
Providence, RI 02903

The Honorable Alan Wilson
Attorney General
Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211

The Honorable Marty J. Jackley
Attorney General
Office of the Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501

Julie Mix McPeak
Commissioner
Department of Commerce and Insurance
Consumer Affairs Division
500 James Robertson Parkway
Davy Crockett Tower
Nashville, TN 37243-0600

The Honorable Herbert Slatery III
Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207

The Honorable Ken Paxton
Attorney General
Office of the Attorney General
P.O. Box 12548,
Austin, TX 78711-2548

The Honorable Sean D. Reyes
Attorney General
Office of the Attorney General
P.O. Box 142320
Salt Lake City, UT 84114-2320

The Honorable Mark Herring
Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

The Honorable Terri Griffiths
Acting Attorney General
Department of Justice
Office of the Attorney General
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, VI 00802

9

The Honorable William H. Sorrell
Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001

The Honorable Bob Ferguson
Attorney General
Office of the Attorney General
1125 Washington Street, SE
P.O. Box 40100
Olympia, WA 98504-0100

The Honorable Patrick Morrisey
Attorney General
Office of the Attorney General
State Capitol Complex,
Building. 1, Room E-26
Charleston, WV 25305

The Honorable Brad Schimel
Attorney General
Office of the Attorney General
P.O. Box 7857
Madison, WI 53707-7857

The Honorable Ben Brancel
Secretary of Agriculture, Trade, and Consumer Protection
Department of Agriculture, Trade, and Consumer Protection
P.O. Box 8911
Madison, WI 53708-8911

The Honorable Peter K. Michael
Attorney General
Attorney General's Office
123 Capitol Building
200 West 24th Street
Cheyenne, WY 82002

**10**

## Exhibit C to Settlement Agreement

## PRESS RELEASE

### Settlement of *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*

Doctor's Associates Inc. (DAI), the franchisor of Subway® Sandwich Shops, announces that a settlement has been proposed in a putative class action lawsuit about the marketing of Six Inch and Footlong Subway® Sandwiches. The Court has not made any findings that any of DAI's marketing or practices were improper or unlawful.

In settlement, DAI has agreed to certain practice changes for the benefit of all Subway® customers and to pay attorney's fees and class representative service awards. In return, the class, which includes anyone who has purchased a Six Inch or Footlong sandwich between January 1, 2003 to _____, will give up their rights to seek certain injunctive relief claims against DAI but will not give up the right to seek other remedies.

A federal court must approve the settlement before it becomes final. The Court has scheduled a Settlement Fairness Hearing for _____ and set _____ as the deadline for filing objections to the settlement. This press release is a brief summary of the settlement. More detailed information and instructions, including information about the practices changes, and the attorney's fees and class representative service awards sought, the release of claims, and how to object to the settlement, are available at the Settlement Website www.subsettlement.com.

The United States District Court for the Eastern District of Wisconsin has authorized and approved of this press release and the information available at www.subsettlement.com.

**Exhibit D to Settlement Agreement**

# If you bought a Subway® Six Inch or Footlong Sandwich Between January 1, 2003 and ____, 2015 your rights could be affected by a lawsuit.

*A federal court authorized this notice. It is not a solicitation from a lawyer.*

- The proposed settlement of a lawsuit (the "Settlement") will require Doctor's Associates Inc. ("DAI"), the franchisor of Subway® stores, to make or continue certain practice changes regarding Subway® Six Inch or Footlong Sandwiches. If approved, the Settlement will require DAI to keep the practice changes in place for four years. The Settlement does not include any monetary benefits for Class Members and does not release Class Members' claims for monetary damages.

- The Plaintiffs in this lawsuit claim that DAI has marketed Subway® Footlong sandwiches as being 12 inches when they are not in fact 12 inches. Plaintiffs make a similar claim about the marketing of Six Inch sandwiches. A copy of the complaint in this case, setting forth the Plaintiffs' claims, is available at www.subsettlement.com. DAI denies the Plaintiffs' claims and asserts that its business practices and marketing are entirely lawful. The Court has not made any finding that DAI has done anything wrong.

| AVAILABLE BENEFITS: |
|---|
| The proposed Settlement, if approved, will require DAI to make or continue practice changes that are meant to help ensure that Subway® Footlong Sandwiches, to the extent commercially reasonable, are 12 inches in length. |

- The Court still has to decide whether to approve the Settlement. DAI will be required to make the practice changes if the Court approves the Settlement and after appeals, if any, are resolved.

- Your legal rights are affected whether you act or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT: | |
|---|---|
| **DO NOTHING** | Receive the benefits of the injunctive relief and give up your right to further seek injunctive relief. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options - **and the deadlines to exercise them** - are explained in this notice.

BASIC INFORMATION........................................................................................PAGE 4
1. What is this notice?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a settlement?

WHO IS IN THE SETTLEMENT....................................................................PAGE 5

THE SETTLEMENT BENEFITS—WHAT YOU GET ...........................................PAGES 5-6

RELEASE OF CLAIMS...................................................................................PAGE 6

THE LAWYERS REPRESENTING YOU ...........................................................PAGES 6-7
5. Do I have a lawyer in this case?
6. How will the lawyers be paid?

PLAINTIFFS...............................................................................................PAGE 7
7. Will the Plaintiffs be paid something?

OBJECTING TO THE SETTLEMENT................................................................PAGES 7-8
8. What is an objection?
9. How do I object?

THE COURT'S SETTLEMENT HEARING.........................................................PAGE 8
10. When and where will the Court decide whether to approve the settlement?
11. May I speak at the hearing?

IF YOU DO NOTHING...................................................................................PAGE 8

GETTING MORE INFORMATION....................................................................PAGES 8-9

## BASIC INFORMATION

This litigation relates to the marketing of Six Inch and Footlong Subway® Sandwiches.

The Plaintiffs are Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri.

The Defendant is Doctor's Associates Inc. ("DAI"), which is the company that sells franchises for Subway® restaurants.

### 1. What is this notice?

The parties in a lawsuit filed as class action regarding Six Inch and Footlong Subway® sandwiches have reached an agreement to settle the lawsuit. This notice package explains the lawsuit, the Settlement, your legal rights, and what options you have in response to this Settlement.

### 2. What is this lawsuit about?

Plaintiffs claim that Defendant's marketing materials represent that Footlong sandwiches sold at Subway® restaurants are 12 inches long when in fact they are not 12 inches long. Plaintiffs allege that Defendant makes similar misrepresentations about the length of Six Inch sandwiches sold at Subway® restaurants. Plaintiffs assert that these alleged business practices violate state consumer protection statutes.

Defendant denies that it did anything wrong or that it caused damages to anyone. Defendant contends that its sandwiches are the proper length and that its practices comply with lawful industry standards.

The Court has not found that Defendant did anything wrong, or otherwise made any rulings on the merits of Plaintiffs' claims.

The case is known as *In re Subway® Footlong Sandwiches Sales and Marketing Practices Litigation,* MDL No. 2439 (E.D. Wisc.). Judge Lynn Adelman of the United States District Court for the Eastern District of Wisconsin is overseeing this case.

### 3. What is a class action?

In a class action, one or more persons called Class Representatives sue on behalf of a group of people with similar claims. All of these people together are called the "Class" or "Class Members." One court resolves the issues for everyone in the Class.

### 4. Why is there a settlement?

The Settlement is not an admission of any wrongdoing by the Defendant, and the Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides mutually agreed to settle the claims. By settling, they both avoid the risks, delay, and costs of a trial, and consumers get benefits. The Class Representatives and the attorneys believe this Settlement is the best option for everyone in the Class.

## WHO IS IN THE SETTLEMENT?

You will be among the members of the Settlement Class if you purchased any Six Inch or Footlong sandwich from a Subway® restaurant between January 1, 2003 and _____.

All of the Court's orders will apply to you and legally bind you.

You are not a Settlement Class Member if you are:
- An employee of DAI, any of its affiliated entities, or a Subway® store.
- An employee of Aryzta, Southwest Bakery, or Millard Bakery.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**Practice Changes:** substantially as a result of this Litigation, DAI has changed, or is in the process of changing, its practices and has agreed that it will keep the following changes in place for four years after the Settlement becomes final:

     i.     Requiring that franchisees use of a tool for measuring bread in each Subway® restaurant to help ensure that the bread sold to customers is either 6 or 12 inches long;

     ii.     Requiring that, at each regular compliance inspection of each Subway® restaurant, generally conducted monthly, to include a sampling of the baked bread to ensure it is at least 12 inches long. The sampling will include measuring at least 10 baked breads in total, and breads using both the Italian and 9-Grain Wheat loaves will be included in the sample;[1]

     iii.     Requiring that bread ovens and proofers be inspected during the evaluations for each Subway® restaurant, generally conducted monthly, to ensure that they are in proper working order and within operating specifications;

     iv.     Increasing the penalty for non-compliance for Subway® restaurants found using bread that is not at least 12 inches long and/or bread ovens/proofers that are not within operating specifications, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

     v.     All DAI protocols, training materials, franchisee communications (including University of Subway® course materials, the Franchise Disclosure Document, and the Operations Manual) which had previously allowed for a small tolerance in the length of a Footlong sandwich will require that a Footlong sandwich must be at least 12 inches in length. These same materials will also say that a Six Inch sandwich must be at least six inches in length;

     vi.     DAI will institute or maintain additional quality control measures regarding bread length. These measures include providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections, and requiring the use of hygrometers in the store

---

[1] Although Subway® restaurants sell additional varieties of breads, Footlong sandwiches are all made using either an Italian or 9-Grain Wheat loaf as a base.

inspection process to ensure that bread proofers are operating at the correct temperature and humidity levels. DAI will also enhance the standards relating to the supervision of third party dough manufacturers, including replacing the company retained to test the quality and uniformity of the bread dough produced by those manufacturers that is shipped to Subway® stores;

vii.  Requiring franchisees to add the following notice in each Subway® restaurant: "due to natural variations in the bread baking process, the size and shape of bread may vary." It will be located on the bread cling or similar location generally visible to customers ordering their sandwiches;

viii. DAI will add the notice discussed in the preceding paragraph to its website in the Menu and Nutrition section at a location agreed to by the Parties; and

ix.   Requiring, at each regular compliance inspection, generally held monthly, a check for compliance with the requirements of this Paragraph. DAI will institute a penalty for non-compliance, which, in addition to other violations, could result in termination of a noncompliant franchisee's franchise agreement.

## RELEASE OF CLAIMS

If the Settlement is approved, you will give up the right to sue DAI and other Related Parties on your own (or to be a part of any other lawsuit against DAI and other Related Parties) for injunctive relief concerning the claims that this Settlement resolves. The Settlement's approval will not affect your right to bring a claim for money damages against DAI or the other Related Parties.

If the Settlement is approved, it will extinguish the claims in these currently pending actions: *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, MDL Case No. 3:13-md-2439-LA; *Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*").

For a full explanation of this provision and for the complete details regarding the Released Claims and Related Parties, please refer to the Settlement Agreement online at www.subsettlement.com. You may also contact class counsel directly at the address listed below.

## THE LAWYERS REPRESENTING YOU

### 5. Do I have lawyers in this case?

The Court ordered that the following law firms will represent you and all Class Members: Zimmerman Law Offices, P.C.; DeNittis Osefchen , P.C.; Law Offices of Todd M. Friedman; Edelman, Combs, Latturner & Goodwin, LLC; Agruss Law Firm, LLC; Ademi & O'Reilly, LLP; Faruqi & Faruqi, LLP; Evans Law Firm, P.A.; The Terrell Law Group; Hirsch Law Firm, P.A.; and Marks & Klein, LLP. These law firms are called Class Counsel.

If you want to be represented by your own lawyer, you may hire one at your own expense.

## 6. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorney's fees and reimbursement of expenses in the amount of no more than $525,000. Defendant has agreed not to oppose any request up to this amount so long as the attorney's fees, costs, expenses, and Class Representative service awards sought do not total more than $525,000. A copy of the request, after it is filed, will be available at www.subsettlement.com. The Court may consider the request at the fairness hearing on _____, 201_. The amount of fees and expenses awarded to Class Counsel by the Court will be paid by the Defendant.

## PLAINTIFFS

## 7. Will the Plaintiffs be paid something?

Yes. Class Counsel will also submit an application to the Court by _____, 201_ to award payments in an amount not to exceed $1,000 for each of the named Plaintiffs. Defendant has agreed not to oppose any request up to this amount so long as the attorney's fees, costs, expenses, and Class Representative service awards sought do not total more than $525,000.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

## 8. What is an objection?

Objecting is simply telling the Court that you don't like something about the Settlement.

## 9. How do I object?

If you're a Class Member, you can object to the Settlement, the Class Representative service awards, or the motion for an award of attorney's fees, if you wish. You can give reasons why you think the Court should not approve the Settlement, the Class Representative service awards, or the motion for an award of attorney's fees. The Court will consider your views.

To object, you must send a letter saying that you object to the proposed Settlement in the *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*. You must include your name, address, and telephone number. You must also explain why you believe that you are a Class Member or otherwise have standing to object, and you must provide all the reasons why you object, including any legal support for your objections. If you are represented by an attorney or have been represented by an attorney regarding this Litigation or your objection, you must identify the attorney. You must also identify any agreements that you have with anyone, including your attorney, regarding objecting to this Settlement. Finally, you must identify any attorneys who will represent you at the Settlement Fairness Hearing and all persons, including yourself, that you will call to testify at the Settlement Fairness Hearing. You, or your attorney if you have one, must sign the objection. A full explanation of what information you should include in your objection is contained in the Court's Order Preliminarily Approving the Settlement, which is available at www.subsettlement.com. Mail copies of the objection to the following address:

Clerk of Court
United States District Court
517 East Wisconsin Avenue

Milwaukee, WI 53202

## THE COURT'S SETTLEMENT HEARING

United States District Court Judge Lynn Adelman is in charge of this case. This case is pending in the United States District Court for the Eastern District of Wisconsin located at 517 East Wisconsin Avenue, Milwaukee, Wisconsin. The case number is MDL No. 2439.

### PLEASE DO NOT WRITE OR CALL THE COURT
### OR THE CLERK'S OFFICE FOR INFORMATION.

The Court will hold a hearing to decide whether to approve the Settlement. You may attend the hearing (at your own expense) and you may ask to speak, but you don't have to, and if you request an opportunity to speak, Judge Adelman will decide whether to allow that. Class Counsel and Defense Counsel will answer any questions the Court may have. You may also pay your own lawyer to attend, but it's not necessary.

### 10. When and where will the Court decide whether to approve the settlement?

The Court will hold a Settlement Fairness Hearing at _____ on _____, 201_ at the United States District Court for the Eastern District of Wisconsin in Milwaukee, Wisconsin. At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will decide whether to allow people who have asked to speak at the hearing to do so. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement.

### 11. May I speak at the Hearing?

You may ask the Court for permission to speak at the Settlement Fairness Hearing. Your Objection (described above) must identify all persons, including yourself, who you will call to testify at the Settlement Fairness Hearing.

Your Objection, including this information, must be postmarked no later than _____, 201_ and be sent to the Clerk of the Court at the addresses above.

Judge Adelman will decide whether to allow you to speak at the Settlement Fairness Hearing.

### IF YOU DO NOTHING

If you do nothing, you will lose your right to start or continue a lawsuit against the Defendant and other Released Parties about the claims that this Settlement resolves.

### GETTING MORE INFORMATION

This notice summarizes the proposed Settlement. More details are available in the Settlement Agreement, which you can read in its entirety by visiting www.subsettlement.com.

Any other questions should be directed to Lead Class Counsel listed below:

Zimmerman Law Offices, P.C.

- 8 -

77 West Washington Street, Suite 1220
Chicago, Illinois 60602

DeNittis Osefchen, P.C.
5 Greentree Centre, Suite 410
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053

# Exhibit B

|  |  |
|---|---|
| IN RE:  SUBWAY® FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION | )<br>)<br>)<br>)<br>)<br>) |

MDL No. 2439

This Document Relates to All Cases

## DECLARATION OF STEPHEN P. DeNITTIS, ESQUIRE
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

I, Stephen P. DeNittis, upon my oath certifies as follows:

1.   I am an attorney-at-law of the State of New Jersey and a shareholder in DeNittis Osefchen, P.C.

2.   I have been appointed by the Court as interim co-lead counsel along with Thomas Zimmerman of the Zimmerman Law Office, P.C.  in the above-captioned matter and am fully familiar with the facts set forth herein. Doc. No. 10.

3.   I have a firm basis of knowledge regarding the facts of this matter, which informs my decision to recommend the proposed settlement to the Court and the proposed Class.

4.   DAI is the franchisor of Subway® restaurants in the United States.

5.   DAI enters into franchise agreements with individuals that, in exchange for the payment of a continuing royalty and an agreement to abide by the franchise agreement's terms, allows them to use DAI's marks and its confidential method for operating a Subway® restaurant. Subway® franchisees operate over 27,000 Subway® restaurants in the United States.

1

6.    In January 2013, an Australian teenager posted a picture on Facebook of a Footlong Subway® sandwich he claims to have purchased that was only 11 inches long.[1]

7.    The post went viral and became the subject of considerable media attention.

8.    Around this time, Class Counsel began investigating potential claims against DAI for violating the consumer protection laws of each state.

9.    Class Counsel's investigation was thorough and included, among other things, reviewing Subway® advertising materials, speaking with numerous franchisees, speaking with former employees of DAI's captive bread bakeries, and hiring a consultant to purchase and measure Footlong sandwiches from a number of Subway® restaurants.

10.    This investigation allowed Class Counsel to develop an understanding of the nature of DAI's representations and conduct, and the Class' potential causes of actions and remedies.

11.    Between January 22, 2013 and June 12, 2103, Plaintiffs and their respective counsel filed their original complaints in eight different federal district courts and state courts. *See Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*").

---

[1] http://www.huffingtonpost.com/2013/01/19/subway-response-footlong-controversy-measurment_n_2511316.html.

12.     Each complaint alleged that DAI had engaged in unfair and deceptive marketing practices regarding the length of Footlong Subway® sandwiches.  Certain of the complaints contained similar allegations regarding Six Inch Subway® sandwiches and/or named Subway Sandwich Shops, Inc. as a defendant.  Each was pleaded as a class action and sought monetary damages, attorney's fees, and injunctive relief. Many of the complaints sought punitive damages, statutory damages, and/or restitution.

13.     On February 15, 2013, after removing to federal court the cases filed in state court, DAI requested that the Judicial Panel on Multidistrict Litigation ("Panel") transfer the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman,* and *Springer* matters to a single district for coordinated or consolidated pre-trial proceedings. *See* MDL No. 2439, Doc. No. 1. DAI later notified the Panel of the *Nobles* matter and asked that it receive similar treatment.  *Id.*, Doc. No. 18.

14.     While waiting for the Panel to rule, the Parties agreed to explore mediating this dispute before retired United States Magistrate Judge Morton Denlow.

15.     The Parties also agreed to engage in targeted informal discovery before conducting that mediation.

16.     This informal discovery included exchanging documents and answering interrogatory-like questions.

17.     Class Counsel also continued with their own investigation, which included interviewing former employees of the third-party bakeries that manufacture the dough used in the breads.

18.     The Parties then held an in-person mediation session before retired Magistrate Judge Denlow, but no settlement was reached. In preparing for and conducting the mediation,

3

Class Counsel learned what DAI's likely defenses were going to be. The information allowed them to better assess the strength of their case going forward.

19.     Following the mediation, Class Counsel concluded that it would likely be difficult to obtain certification of a monetary damages class under Rule 23(b)(3) and decided to focus their efforts on the Class's injunctive relief claims, which would likely be of the most value and benefit to the Class.

20.     In June 2013, the Panel granted DAI's motion and transferred the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman, Nobles,* and *Springer* matters to this Court. MDL No. 2439, Doc. No. 22, 25. Shortly after the transfer, the Court appointed Thomas Zimmerman from the Zimmerman Law Offices, P.C., and Stephen DeNittis from DeNittis Osefchen, P.C. as co-lead counsel, made the *Zeqiri* matter part of the consolidated litigation, and set a deadline for Plaintiffs to file a Consolidated Amended Complaint. Doc. No. 10.

21.     Plaintiffs filed their Consolidated Amended Complaint on December 31, 2013. Doc. No. 18. In it, Plaintiffs decided not to pursue their monetary damages claims. *See id.* at ¶¶ 6-7, p. 25.

22.     Instead, they sought injunctive relief only and the certification of a class pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at ¶¶ 6-7, 44 & p. 25.

23.     The Consolidated Amended Complaint also dropped Subway Sandwich Shops, Inc. as a defendant because Class Counsel's investigation has shown that it had no involvement in the events at issue.

24.     Plaintiffs also filed a motion for class certification at that time, Doc. No. 19, which the Court denied without prejudice after DAI stipulated that it would not seek to moot the Class's claims by making offers of judgment. Doc. Nos. 24-25.

4

25.     Throughout the summer and fall of 2013, the Parties continued to engage in settlement discussions with the assistance of retired Magistrate Judge Denlow.

26.     Although hard-fought, these discussions resulted in an agreement in principle on the relief for the Class, which the Parties memorialized by March 2014

27.     The Parties then proceeded, again with the help of retired Magistrate Judge Denlow, to negotiate the amount of attorney's fees and Class Representative Service Awards that Plaintiffs could seek.

28.     After a number of contentious exchanges over the course of several months, the Parties determined that they had reached an impasse. The Parties informed the Court of the impasse.

29.     The Court decided, with the Parties' consent, that it would conduct an in-person mediation on the attorney's fees and Class Representative Service Award issues. Doc. Nos. 36-38.

30.     With the Court's assistance, the Parties reached an agreement on attorney's fees and Class Representative Service Awards in February 2015.  Doc. No. 40.

31.   Based on a comprehensive analysis of the law and facts at issue in the Litigation, and taking into account the risks, uncertainties, delay, and expense involved in the Litigation, Class Counsel have concluded that it is in the best interests of the Class to compromise and settle the Litigation fully and finally in the manner and upon the terms and conditions set forth in the Settlement Agreement.

32.     Class Counsel believes the terms of the Settlement Agreement are fair, adequate, and reasonable and thus in the best interests of the Class.

5

33. My firm and I are highly experienced in class actions generally and consumer class actions in particular.

34. I am admitted to practice before the Supreme Court of the United States, the United States District Court for the District of New Jersey, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of New Jersey, the Third Circuit Court of Appeals, the Commonwealth of Pennsylvania and the United States District Court for the Western District of Tennessee.

35. I have tried to verdict twenty (20) cases before a jury with favorable results in (15) of those cases.

36. I have served as lead or co-lead counsel in over 150 class actions involving consumer fraud, food mislabeling, violations of the Real Estate Settlement Procedures Act (RESPA), construction defects, wage and hour violations, and environmental torts. Such class actions, include, but are not limited to, the following cases:

> In Federal Court: *In re: Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practices Litigation*., Case No. A-14-MC-2588-SS MDL No. 2588 (co-lead counsel in pending MDL consumer fraud class action); *Telliho v. East Windsor Township, et. al.*, Civil Action No.: 3:12-cv-4800 (lead counsel in the New Jersey Red light camera cases which settled for $4.2 million); *Poole v. Merrill Lynch*, Civil Action No. 06-cv-1657 (D.Or)(co-lead counsel in a nationwide wage and hour class action which settled for $43.5 million); *Bernhard v. TD Bank*, Civil Action No.08-4392-RBK-AMD(D.N.J.)(co-lead counsel in wage and hour class action); *Kaufmann v. Commerce Bancorp.*, CIVIL ACTION , Civil Action No. 06-cv-4664-RBK-RMD (D.N.J.) (co-lead counsel in wage and hour class action); *Jones v. Commerce Bancorp. Inc.*, CIVIL ACTION NO. 05-cv-05600-RBK-AMD (D.N.J.)(consumer fraud class action); *DeMarco v. National Collector's Mint, Inc.*, 229 F.R.D. 73 (S.D.N.Y. 2005)(lead counsel in a matter of first impression which resulted in a $9,000,000 valued settlement); *Carnival et. al. v. WMX, Technologies et. al.*, CIVIL ACTION NO. 97-5122 (D.N.J.)($5.1 million settlement); *Arnold, et al. v. Ambassadors International, Inc., et al.*, CIVIL ACTION NO. 01-CV-2020 (RBK)(D.N.J.)(co-lead counsel in class action resulting in $5 million settlement and injunctive relief);

6

In State Court: *Barkers v. PSEG*, Docket Number, BUR-C-39-03 (co-lead counsel in class action settlement resulted in PSEG repairing 3,000 defective gas meter sets throughout t NJ and resulted in the Board of Public Utilities adopting new gas meter regulations); *Felderstein v. Orleans*, Docket Number BUR-L-479-02 (co-lead counsel in $345,000 class settlement in construction defect class action); *Melnick v. Orleans*, Docket Number BUR-L-152-01(co-lead counsel in $1.4 million settlement in construction defect class action); *Spectracom, Inc. v. Cell Direct Corporation and Fax.com, Inc.*, Docket Number CAM-C-116-02(co-lead counsel in class action injunctive relief under the TCPA); *Ward and Decker v. York International, et al.*, Docket Number BUR-L-2693-03(co-lead counsel in construction defect class action); *Schmoll, et al. v. Hovnanian*, Docket Number BUR-C-141-02(co-lead counsel in construction defect class action); *Staub v. Hoeganaes*, Docket Number BUR-L-2080-03(lead counsel in $1.4 million dollar class settlement); *Blasini v. Weichert South Jersey, Inc.*, Docket Number BUR-L-736-11(lead counsel in $525,000 for a class of 8,000 Weichert buyers charged an allegedly $200 illegal administrative fee in violation of the NJ CFA fraud); *Blasini v. Prudential Fox & Roach*, Docket Number BUR-989-11, (lead counsel in class action involving 4,000 Prudential buyers charged an allegedly $275 illegal administrative fee in violation of the NJ CFA); *Espinosa & DeSimone v. MAMCO Property Management, et al.* Docket No. CAM-L-180-11 (lead counsel in class action involving approximately 4,000 condominium residents allegedly overcharged processing and transfer fees by Defendant in violation of the NJ CFA); *Baraldi v. Surety Title*, (lead counsel in class action on behalf of 36,000 Surety consumers who were allegedly overcharged deed and mortgage recording fees and were refunded 100% of the overcharge through a claims process); *Blasini v. Trident Land Transfer Company of New Jersey*, LLP, Docket No. CAM-L -2355-11 (lead counsel in class action on behalf of 17,000 Trident consumers who were allegedly overcharged mortgage recording fees and were refunded 100% of the overcharge through a claims process); Gallagher v. The Title Company of Jersey, et al. Docket No. SLM-L-67-12 (lead counsel in class action on behalf of 16,000 consumers who were allegedly overcharged deed and mortgage recording fees and were refunded 100% of the overcharge through a claims process); *Gloucester Properties v. North American Title, et al*, Docket No: CAM-L-5738-11 (lead counsel in class action on behalf of 11,000 consumers who were allegedly overcharged deed and mortgage recording fees and were refunded 100% of the overcharge through a claims process*); Espinosa v. Integrity Title Agency, Inc.*, Docket Number BUR-L-2668-11 (lead counsel in class action on behalf of 5,000 consumers who were allegedly overcharged deed and mortgage recording fees and were refunded 100% of the overcharge through a claims process).

37.     I have presented and/or lectured to attorneys on class action topics at the following

Continuing Legal Education seminars:

- Lecturer, "Fair Labor Standards Act (FLSA) Collection Actions", Camden County Bar Association Labor & Employment Law Committee, November 12, 2008

- Lecturer, "Private Practice Professional Development Symposium – Class Action Litigation", Rutgers-Camden University School of Law, February 28, 2009

- Lecturer, "Anticipating Class Actions", Camden County Bar Association Class Action Practice Committee, March 23, 2010

- Lecturer, "The Impact of Recent Developments in Class Action Law in the Interests of Plaintiffs and Defendants – New Jersey and Beyond", Camden County Bar Association Class Action Committee, April 19, 2011

- Lecturer, "Challenges for Plaintiffs & Defendants Posed By Recent NJ Class Action Decisions", Camden County Bar Association Class Action Practice Committee, May 16, 2012

- Lecturer, "Consumer Fraud Product Labeling Class Actions: One Label, Very Different Perspectives – Plaintiffs, Defendants and the Government", Perrin Conferences, November 5, 2012

- Lecturer, "Ascertainable Loss Under the NJ CFA – More than Just Out-of-Pocket Damages", New Jersey Association for Justice, Meadowlands Seminar, November 15, 2013

38.     I am co-author of the following publication relating to class actions:

- Co-Author, "A Plaintiff's Perspective of the New Ascertainability Requirement in Federal Class Actions," New Jersey Lawyer, April 2015 at 24.

39.     The proposed class action settlement in this matter is the product of several years of arms-length bargaining that took place between experienced advocates who each sought to vigorously protect and advance their clients' interests.

40.     While only preliminary approval of the proposed class action settlement is being sought at the current time, I recommend the proposed settlement to both the Court and the proposed Class as fair and reasonable, in light of the risk of continued litigation.

41.     While Plaintiffs believe they could prove that Defendants had a policy of allowing Footlong sandwiches of less than 12 inches and 6 inches in length, proving that any given class member suffered an out-of-pocket monetary loss because their particular sandwich was less than the promised 12 inches could have proven to be an obstacle.

8

42.    As outlined in greater detail in the accompanying memorandum in support of preliminary approval, the proposed settlement calls for the implementation and continuation of a series of Subway® policy changes relating to preparation and inspection which are designed to eliminate the problem of undersized Footlong sandwiches.

43.    It is my opinion as co-lead counsel that the proposed class settlement is not only fair and reasonable, but it is likely equal to the best result that could realistically have been achieved for the proposed class, if this matter continued in litigation and the Plaintiffs and the Class won on their claims for injunctive relief set forth in their Consolidated Amended Complaint at trial.

44.    I declare under penalty of perjury that the facts set forth in this declaration are true to the best of my knowledge. If any facts set forth herein are intentionally false I acknowledge I may be subject to punishment. I was not coerced in anyway in making this declaration and it is made by my own free will.

Dated:  September 29, 2015

By: _____

STEPHEN P. DeNITTIS

9

# Exhibit C

# PRESS RELEASE

## Settlement of *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*

Doctor's Associates Inc. (DAI), the franchisor of Subway® Sandwich Shops, announces that a settlement has been proposed in a putative class action lawsuit about the marketing of Six Inch and Footlong Subway® Sandwiches. The Court has not made any findings that any of DAI's marketing or practices were improper or unlawful.

In settlement, DAI has agreed to certain practice changes for the benefit of all Subway® customers and to pay attorney's fees and class representative service awards. In return, the class, which includes anyone who has purchased a Six Inch or Footlong sandwich between January 1, 2003 to _____, will give up their rights to seek certain injunctive relief claims against DAI but will not give up the right to seek other remedies.

A federal court must approve the settlement before it becomes final. The Court has scheduled a Settlement Fairness Hearing for _____ and set _____ as the deadline for filing objections to the settlement. This press release is a brief summary of the settlement. More detailed information and instructions, including information about the practices changes, and the attorney's fees and class representative service awards sought, the release of claims, and how to object to the settlement, are available at the Settlement Website www.subsettlement.com.

The United States District Court for the Eastern District of Wisconsin has authorized and approved of this press release and the information available at www.subsettlement.com.

# Exhibit D

# If you bought a Subway® Six Inch or Footlong Sandwich Between January 1, 2003 and ____, 2015 your rights could be affected by a lawsuit.

*A federal court authorized this notice. It is not a solicitation from a lawyer.*

- The proposed settlement of a lawsuit (the "Settlement") will require Doctor's Associates Inc. ("DAI"), the franchisor of Subway® stores, to make or continue certain practice changes regarding Subway® Six Inch or Footlong Sandwiches. If approved, the Settlement will require DAI to keep the practice changes in place for four years. The Settlement does not include any monetary benefits for Class Members and does not release Class Members' claims for monetary damages.

- The Plaintiffs in this lawsuit claim that DAI has marketed Subway® Footlong sandwiches as being 12 inches when they are not in fact 12 inches. Plaintiffs make a similar claim about the marketing of Six Inch sandwiches. A copy of the complaint in this case, setting forth the Plaintiffs' claims, is available at www.subsettlement.com. DAI denies the Plaintiffs' claims and asserts that its business practices and marketing are entirely lawful. The Court has not made any finding that DAI has done anything wrong.

### AVAILABLE BENEFITS:

The proposed Settlement, if approved, will require DAI to make or continue practice changes that are meant to help ensure that Subway® Footlong Sandwiches, to the extent commercially reasonable, are 12 inches in length.

- The Court still has to decide whether to approve the Settlement. DAI will be required to make the practice changes if the Court approves the Settlement and after appeals, if any, are resolved.

- Your legal rights are affected whether you act or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT: | |
|---|---|
| **DO NOTHING** | Receive the benefits of the injunctive relief and give up your right to further seek injunctive relief. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options - **and the deadlines to exercise them** - are explained in this notice.

## What This Notice Contains

**BASIC INFORMATION**......................................................................................PAGE 4
  1. What is this notice?
  2. What is this lawsuit about?
  3. What is a class action?
  4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT**...............................................................PAGE 5

**THE SETTLEMENT BENEFITS—WHAT YOU GET**...............................PAGES 5-6

**RELEASE OF CLAIMS**............................................................................PAGE 6

**THE LAWYERS REPRESENTING YOU**.................................................PAGES 6-7
  5. Do I have a lawyer in this case?
  6. How will the lawyers be paid?

**PLAINTIFFS**.............................................................................................PAGE 7
  7. Will the Plaintiffs be paid something?

**OBJECTING TO THE SETTLEMENT**.......................................................PAGES 7-8
  8. What is an objection?
  9. How do I object?

**THE COURT'S SETTLEMENT HEARING**................................................PAGE 8
  10. When and where will the Court decide whether to approve the settlement?
  11. May I speak at the hearing?

**IF YOU DO NOTHING**..............................................................................PAGE 8

**GETTING MORE INFORMATION**..........................................................PAGES 8-9

Case 2:13-md-02439-LA   Filed 09/29/15   Page 113 of 119   Document 46-1

# BASIC INFORMATION

This litigation relates to the marketing of Six Inch and Footlong Subway® Sandwiches.

The Plaintiffs are Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri.

The Defendant is Doctor's Associates Inc. ("DAI"), which is the company that sells franchises for Subway® restaurants.

## 1. What is this notice?

The parties in a lawsuit filed as class action regarding Six Inch and Footlong Subway® sandwiches have reached an agreement to settle the lawsuit. This notice package explains the lawsuit, the Settlement, your legal rights, and what options you have in response to this Settlement.

## 2. What is this lawsuit about?

Plaintiffs claim that Defendant's marketing materials represent that Footlong sandwiches sold at Subway® restaurants are 12 inches long when in fact they are not 12 inches long. Plaintiffs allege that Defendant makes similar misrepresentations about the length of Six Inch sandwiches sold at Subway® restaurants. Plaintiffs assert that these alleged business practices violate state consumer protection statutes.

Defendant denies that it did anything wrong or that it caused damages to anyone. Defendant contends that its sandwiches are the proper length and that its practices comply with lawful industry standards.

The Court has not found that Defendant did anything wrong, or otherwise made any rulings on the merits of Plaintiffs' claims.

The case is known as *In re Subway® Footlong Sandwiches Sales and Marketing Practices Litigation,* MDL No. 2439 (E.D. Wisc.). Judge Lynn Adelman of the United States District Court for the Eastern District of Wisconsin is overseeing this case.

## 3. What is a class action?

In a class action, one or more persons called Class Representatives sue on behalf of a group of people with similar claims. All of these people together are called the "Class" or "Class Members." One court resolves the issues for everyone in the Class.

## 4. Why is there a settlement?

The Settlement is <u>not</u> an admission of any wrongdoing by the Defendant, and the Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides mutually agreed to settle the claims. By settling, they both avoid the risks, delay, and costs of a trial, and consumers get benefits. The Class Representatives and the attorneys believe this Settlement is the best option for everyone in the Class.

## WHO IS IN THE SETTLEMENT?

You will be among the members of the Settlement Class if you purchased any Six Inch or Footlong sandwich from a Subway® restaurant between January 1, 2003 and _____.

All of the Court's orders will apply to you and legally bind you.

You are not a Settlement Class Member if you are:
- An employee of DAI, any of its affiliated entities, or a Subway® store.
- An employee of Aryzta, Southwest Bakery, or Millard Bakery.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**Practice Changes**: substantially as a result of this Litigation, DAI has changed, or is in the process of changing, its practices and has agreed that it will keep the following changes in place for four years after the Settlement becomes final:

    i.      Requiring that franchisees use of a tool for measuring bread in each Subway® restaurant to help ensure that the bread sold to customers is either 6 or 12 inches long;

    ii.     Requiring that, at each regular compliance inspection of each Subway® restaurant, generally conducted monthly, to include a sampling of the baked bread to ensure it is at least 12 inches long. The sampling will include measuring at least 10 baked breads in total, and breads using both the Italian and 9-Grain Wheat loaves will be included in the sample;[1]

    iii.    Requiring that bread ovens and proofers be inspected during the evaluations for each Subway® restaurant, generally conducted monthly, to ensure that they are in proper working order and within operating specifications;

    iv.    Increasing the penalty for non-compliance for Subway® restaurants found using bread that is not at least 12 inches long and/or bread ovens/proofers that are not within operating specifications, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

    v.     All DAI protocols, training materials, franchisee communications (including University of Subway® course materials, the Franchise Disclosure Document, and the Operations Manual) which had previously allowed for a small tolerance in the length of a Footlong sandwich will require that a Footlong sandwich must be at least 12 inches in length. These same materials will also say that a Six Inch sandwich must be at least six inches in length;

    vi.    DAI will institute or maintain additional quality control measures regarding bread length. These measures include providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections, and requiring the use of hygrometers in the store

---

[1] Although Subway® restaurants sell additional varieties of breads, Footlong sandwiches are all made using either an Italian or 9-Grain Wheat loaf as a base.

inspection process to ensure that bread proofers are operating at the correct temperature and humidity levels. DAI will also enhance the standards relating to the supervision of third party dough manufacturers, including replacing the company retained to test the quality and uniformity of the bread dough produced by those manufacturers that is shipped to Subway® stores;

vii.    Requiring franchisees to add the following notice in each Subway® restaurant: "due to natural variations in the bread baking process, the size and shape of bread may vary." It will be located on the bread cling or similar location generally visible to customers ordering their sandwiches;

viii.    DAI will add the notice discussed in the preceding paragraph to its website in the Menu and Nutrition section at a location agreed to by the Parties; and

ix.    Requiring, at each regular compliance inspection, generally held monthly, a check for compliance with the requirements of this Paragraph. DAI will institute a penalty for non-compliance, which, in addition to other violations, could result in termination of a noncompliant franchisee's franchise agreement.

## RELEASE OF CLAIMS

If the Settlement is approved, you will give up the right to sue DAI and other Related Parties on your own (or to be a part of any other lawsuit against DAI and other Related Parties) for injunctive relief concerning the claims that this Settlement resolves. The Settlement's approval will not affect your right to bring a claim for money damages against DAI or the other Related Parties.

If the Settlement is approved, it will extinguish the claims in these currently pending actions: *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, MDL Case No. 3:13-md-2439-LA; *Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*").

For a full explanation of this provision and for the complete details regarding the Released Claims and Related Parties, please refer to the Settlement Agreement online at www.subsettlement.com. You may also contact class counsel directly at the address listed below.

## THE LAWYERS REPRESENTING YOU

**5. Do I have lawyers in this case?**

The Court ordered that the following law firms will represent you and all Class Members: Zimmerman Law Offices, P.C.; DeNittis Osefchen , P.C.; Law Offices of Todd M. Friedman; Edelman, Combs, Latturner & Goodwin, LLC; Agruss Law Firm, LLC; Ademi & O'Reilly, LLP; Faruqi & Faruqi, LLP; Evans Law Firm, P.A.; The Terrell Law Group; Hirsch Law Firm, P.A.; and Marks & Klein, LLP. These law firms are called Class Counsel.

- 6 -

If you want to be represented by your own lawyer, you may hire one at your own expense.

## 6. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorney's fees and reimbursement of expenses in the amount of no more than $525,000. Defendant has agreed not to oppose any request up to this amount so long as the attorney's fees, costs, expenses, and Class Representative service awards sought do not total more than $525,000. A copy of the request, after it is filed, will be available at www.subsettlement.com. The Court may consider the request at the fairness hearing on _____, 201_. The amount of fees and expenses awarded to Class Counsel by the Court will be paid by the Defendant.

## PLAINTIFFS

## 7. Will the Plaintiffs be paid something?

Yes. Class Counsel will also submit an application to the Court by _____, 201_ to award payments in an amount not to exceed $1,000 for each of the named Plaintiffs. Defendant has agreed not to oppose any request up to this amount so long as the attorney's fees, costs, expenses, and Class Representative service awards sought do not total more than $525,000.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

## 8. What is an objection?

Objecting is simply telling the Court that you don't like something about the Settlement.

## 9. How do I object?

If you're a Class Member, you can object to the Settlement, the Class Representative service awards, or the motion for an award of attorney's fees, if you wish. You can give reasons why you think the Court should not approve the Settlement, the Class Representative service awards, or the motion for an award of attorney's fees. The Court will consider your views.

To object, you must send a letter saying that you object to the proposed Settlement in the *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*. You must include your name, address, and telephone number. You must also explain why you believe that you are a Class Member or otherwise have standing to object, and you must provide all the reasons why you object, including any legal support for your objections. If you are represented by an attorney or have been represented by an attorney regarding this Litigation or your objection, you must identify the attorney. You must also identify any agreements that you have with anyone, including your attorney, regarding objecting to this Settlement. Finally, you must identify any attorneys who will represent you at the Settlement Fairness Hearing and all persons, including yourself, that you will call to testify at the Settlement Fairness Hearing. You, or your attorney if you have one, must sign the objection. A full explanation of what information you should include in your objection is contained in the Court's Order Preliminarily Approving the Settlement, which is available at www.subsettlement.com. Mail copies of the objection to the following address:

Clerk of Court
United States District Court
517 East Wisconsin Avenue

Milwaukee, WI 53202

## THE COURT'S SETTLEMENT HEARING

United States District Court Judge Lynn Adelman is in charge of this case. This case is pending in the United States District Court for the Eastern District of Wisconsin located at 517 East Wisconsin Avenue, Milwaukee, Wisconsin. The case number is MDL No. 2439.

### PLEASE DO NOT WRITE OR CALL THE COURT
### OR THE CLERK'S OFFICE FOR INFORMATION.

The Court will hold a hearing to decide whether to approve the Settlement. You may attend the hearing (at your own expense) and you may ask to speak, but you don't have to, and if you request an opportunity to speak, Judge Adelman will decide whether to allow that. Class Counsel and Defense Counsel will answer any questions the Court may have. You may also pay your own lawyer to attend, but it's not necessary.

**10. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Settlement Fairness Hearing at _____ on _____, 201_ at the United States District Court for the Eastern District of Wisconsin in Milwaukee, Wisconsin. At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will decide whether to allow people who have asked to speak at the hearing to do so. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement.

**11. May I speak at the Hearing?**

You may ask the Court for permission to speak at the Settlement Fairness Hearing. Your Objection (described above) must identify all persons, including yourself, who you will call to testify at the Settlement Fairness Hearing.

Your Objection, including this information, must be postmarked no later than _____, 201_ and be sent to the Clerk of the Court at the addresses above.

Judge Adelman will decide whether to allow you to speak at the Settlement Fairness Hearing.

### IF YOU DO NOTHING

If you do nothing, you will lose your right to start or continue a lawsuit against the Defendant and other Released Parties about the claims that this Settlement resolves.

### GETTING MORE INFORMATION

This notice summarizes the proposed Settlement. More details are available in the Settlement Agreement, which you can read in its entirety by visiting www.subsettlement.com.

Any other questions should be directed to Lead Class Counsel listed below:

Zimmerman Law Offices, P.C.

- 8 -

77 West Washington Street, Suite 1220
Chicago, Illinois 60602

DeNittis Osefchen, P.C.
5 Greentree Centre, Suite 410
Route 73 South & Lincoln Drive
Marlton, New Jersey 08053