# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE:  SUBWAY FOOTLONG
SANDWICH MARKETING AND
SALES PRACTICES LITIGATION

This document relates to all cases

)
)
)
)
)

Case No. 2:13-md-02439-LA

Judge Lynn Adelman

---

## CLASS COUNSEL'S PETITION FOR SERVICE AWARDS, ATTORNEY'S FEES, AND COSTS

---

# TABLE OF CONTENTS

Page(s)

Table of Authorities...................................................................................ii-iv

INTRODUCTION..........................................................................................1

LEGAL ARGUMENT.....................................................................................2

I.   THE LABOR OF PLAINTIFFS' CLASS COUNSEL HAS PRODUCED
     AN EXCELLENT RESULT FOR THE CLASS...............................................2

II.  THE PROPOSED FEE AWARD WAS NEGOTIATED SEPARATELY FROM
     THE CLASS SETTLEMENT AND WILL NOT IMPACT CLASS RECOVERY.........3

III. THE REQUESTED SERVICE AWARDS ARE REASONABLE............................4

IV.  THE REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS
     IS REASONABLE UNDER THE LODESTAR METHOD...................................7

     A.   Class Counsel's Hours Are Reasonable...............................................10

     B.   Class Counsel's Hourly Rates Are Reasonable......................................12

     C.   No Additional Adjustment to Counsel's Fee Is Necessary Here....................13

V.   THE LACK OF CLASS MEMBER OBJECTIONS SUPPORTS A FINDING
     THAT THE REQUESTED FEE IS REASONABLE.........................................15

CONCLUSION............................................................................................15

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

Abbot v. Lockheed Martin Corp., 2015 U.S. Dist. LEXIS 93206, at *12
(S.D. Ill. July 17, 2015)...............................................................................13

Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir. 1995)......................................8

Batt v. Micro Warehouse, Inc., 241 F.3d 891, 894 (7th Cir. 2001)...............10, 12

Bradley Corp. v. Zurich Ins. Co., 984 F. Supp. 1193, 1205 (E.D. Wis. 1997).........................8

Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 978 (Pa. Super. Ct. 2011).............................14

Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324-25 (D.N.J. 1997)..................7

Downes v. Wis. Energy Corp. Ret. Account Plan, 2012 U.S. Dist. LEXIS 55612,
at *14 (E.D. Wis. April 20, 2012)................................................................10

Enter. Energy Corp. v. Columbia Gas Transmission Corp.,
137 F.R.D. 240, 251, 1991 U.S. Dist. LEXIS 8193, 31 (S.D. Ohio 1991)............................5

Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 876-77 (7th Cir. 2012)........................6

Fox v. Vice, 131 S. Ct. 2205, 2216; 180 L. Ed. 2d 45 (2011)...................................8, 11

Greene v. Dillingham Constr. N.A., 101 Cal. App. 4th 418, 428-429;
124 Cal. Rptr. 2d 250, 258 (Cal. App. 1st Dist. 2002)..............................................14

Harman v. Lyphomed, Inc., 945 F.2d 969 (7th Cir. 1991).........................................7, 8

Heder v. City of Two Rivers, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003)...................8, 12, 13

Hensley v. Eckerhart, 461 U.S. 424, 439 at n.12 (1983)..............................8, 10, 11, 13, 14

Huguley v. General Motors Corp., 128 F.R.D. 81, 85 (E.D. Mich. 1989),
aff'd., 925 F.2d 1464 (6th Cir. 1989)................................................................5

In re Chambers Dev. Sec. Litig., 912 F. Supp. 852, 863 (W.D. Pa. 1995)...........................5

In re Dun & Bradstreet Credit Servs. Customer Litig.,
130 F.R.D. 366, 373-74 (S.D. Ohio 1990)...........................................................5

Case 2:13-md-02439-LA   Filed 12/07/15   Page 3 of 22   Document 50

In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,
733 F. Supp. 997, 1015-16 (E.D. Wisc. 2010)………………………………………………5

In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1020
(N.D. Ill. 2000), aff'd, 267 F.3d 743 (7th Cir. 2001)………………………………………3

In re Rite Aid Corp. Sec. Litig., 396 F.R.D 294, 305 (3d Cir. 2005)……………………………...15

In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1990)……………6

In re Uponor, Inc., 2012 U.S. Dist. LEXIS 90294, at *36-37,
2012 WL 2512750 (D. Minn. June 29, 2012)……………………………………………………4, 9

Langendorf v. Conseco Senior Health Ins. Co., 2009 U.S. Dist. LEXIS 131289,
at *28-32 (N.D. Ill. Nov. 18, 2009)…………………………………………………………………7

Mangone v. First USA Bank, 206 F.R.D. 222 (S.D. Ill. 2001)……………………………………..4

Mathur v. Bd. of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003)………………………12

McDaniel v. Qwest Communs. Corp., 2011 U.S. Dist. LEXIS 154591,
at *13-14 (N.D. Ill. Aug. 29, 2011)………………………………………………………………...15

McKinnie v. J.P. Morgan Chase Bank, N.A., 678 F. Supp. 2d 806 (E.D. Wisc. 2009)…………..5

Missouri v. Jenkins, 491 U.S. 274, 286-87 (1989)…………………………………………………8

Operating Eng'rs Local 139 Health Benefit Fund v. Great Lakes Excavating, Inc.,
2008 U.S. Dist. LEXIS 121146 (E.D. Wis. June 5, 2008)………………………………………..8

People Who Care v. Rockford Bd of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996)……………7, 12

Reid v. Unilever United States, Inc., 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015)…13

Rendine v. Pantzer, 141 N.J. 292, 338 (1995)…………………………………………………...14

Shepard v. Madigan, 2014 U.S. Dist. LEXIS 137245 (S.D. Ill. Sept. 29, 2014)………………...13

Spegon v. Catholic Bishop, 175 F.3d 544, 551 (7th Cir. 1999)…………………………8, 10, 12

White v. Marshall, 771 F. Supp. 2d 952, 959 (E.D. Wis. 2011)………………………………10

White v. Nat'l Football League, 822 F. Supp. 1389, 1406 (D. Minn. 1993)…………………...5

## STATUTES

Page(s)

Rule 23(b)(2)...................................................................................................2

Rule 23(b)(3)...................................................................................................2

Case 2:13-md-02439-LA    Filed 12/07/15    Page 5 of 22    Document 50

## INTRODUCTION

This multi-district litigation is comprised of nine consolidated, contingent fee class action lawsuits that seek injunctive relief under various state-law fee-shifting statutes.[1] The parties have now agreed to a global settlement of this litigation, the final approval of which is currently pending before this Court. Plaintiffs' class counsel have worked diligently to prosecute the class claims to this successful conclusion, which was achieved only after a substantial investment of attorney time and effort in the face of a vigorous defense. Having taken these cases on a contingent basis, bearing the risk of no recovery, and having obtained an excellent result for the class, class counsel for plaintiffs, as prevailing parties via the proposed settlement, now petition this Court for an award of attorney's fees and for reimbursement of their litigation costs.

Class counsel hereby seek approval by the Court of a monetary award of **$525,000**, which shall include (1) the payment of service awards to the ten named class representatives, (2) reimbursement of litigation costs incurred by class counsel, and (3) payment of attorney's fees to class counsel. As set forth in greater detail below, the total amount sought, inclusive of service awards and costs, is well below the combined, unadjusted lodestar of plaintiffs' class counsel. Defendant has no objection to class counsel's fee request or to paying the requested amount in service awards and attorney's fees and costs, subject to this Court's approval thereof. Nor has any class member objected to this fee request or to the proposed service awards, attorneys' fees, or costs. If approved by the Court, this monetary award will be paid separately by defendant, and thus will not impact class recovery in any way. Consequently, for the reasons set forth herein, class counsel respectfully request that their fee petition be granted.

---

[1] The state law fee-shifting statutes under which plaintiffs' claims were brought are listed, along with their respective citations, in Count I of Plaintiffs' Joint Consolidated Class Action Complaint.

1

<u>**LEGAL ARGUMENT**</u>

I. **THE LABOR OF PLAINTIFFS' CLASS COUNSEL HAS PRODUCED AN EXCELLENT RESULT FOR THE CLASS.**

Plaintiffs in this litigation claim that defendant has violated various state laws – including consumer fraud statutes in all 50 states – by making and selling "6-inch" and "Footlong" sandwiches that were in fact shorter than their names indicate. The proposed nationwide class consists of all persons who purchased a "6-inch" or "Footlong" sandwich at a Subway® restaurant in the United States any time between January 1, 2003 and October 2, 2015 (the date of preliminary approval).

As a result of the settlement, defendant has agreed to provide certain injunctive relief for the benefit of the millions of class members, as well as all future Subway® customers, consisting of the creation and implementation of strict standards which should serve to prevent the complained-of conduct in the future.[2] This injunctive relief obtained by class counsel pursuant to the settlement is not illusory; rather, it includes real and substantial changes to the standard practices and written policies used in over 25,000 Subway® restaurants in the United States. Specifically, it will result in a fundamental change to defendant's operations and training manuals, which, prior to this case, expressly authorized Subway® franchises to serve "Footlong" sandwiches that were only 11.5 inches in length or less. According to plaintiffs' expert, John A. Gordon, Master Analyst Financial Forensics ("MAFF"), the cost of implementing the injunctive relief that class counsel has obtained for the class via this settlement will be approximately $9 million, and will include:

---

[2] The relief obtained was wholly injunctive because Plaintiffs' Joint Consolidated Class Action Complaint seeks only injunctive relief and certification of a Rule 23(b)(2) class. It is important to note that class members will <u>not</u> be releasing any claims for monetary damages or any Rule 23(b)(3) claims as a result of this proposed settlement.

- Requiring the use of a special tool for measuring bread in each Subway® restaurant, to help ensure that the bread sold to customers is either 6 or 12 inches long;

- Requiring a sampling of the baked bread at each regular compliance inspection to ensure it is at least 12 inches long;

- Requiring the inspection of bread ovens and proofers during regular evaluations of each Subway® restaurant to ensure that they are in proper working order and within operating specifications;

- Increasing compliance penalties for Subway® restaurants found using bread that is not at least 12 inches long, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

- Changing all Subway® protocols, training materials, franchisee communications, and operations manuals, which previously stated that the minimum size of a "Footlong" could be 11.5 inches, so that all documents now require that the "Footlong" be at least 12 inches in length;

- Instituting additional quality control measures regarding bread length, including providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections; and

- Requiring franchisees to add a notice in each Subway® restaurant regarding the inherent variability in the dimensions of fresh bread.

The proposed injunctive settlement ends the policies and practices challenged by plaintiffs in this litigation. Given the nature of the claims and the current state of the law, it represents an excellent result for the class. The class counsel who were instrumental in securing this result, and the named plaintiffs who represented the class, deserve to be compensated for their efforts as set forth herein.

## II.     THE PROPOSED FEE AWARD WAS NEGOTIATED SEPARATELY FROM THE CLASS SETTLEMENT AND WILL NOT IMPACT CLASS RECOVERY.

The fact that a requested fee award was negotiated independently from the class settlement, and the fact that it will be paid separately by a defendant so as not to impact any recovery for the class, both weigh in favor of approval of a fee request. See In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000), aff'd, 267 F.3d 743 (7th Cir. 2001)

3

(approving proposed settlement and fee award, noting "[t]o eliminate any potential conflict of interest, the parties did not engage in fee negotiation until after the settlement of Plaintiffs' claims on their merits."); id. at 1033 (further observing that "[b]ecause the attorneys fees award was separately negotiated and separately funded, it does not reflect any diminished recovery to class members"); see also Mangone v. First USA Bank, 206 F.R.D. 222 (S.D. Ill. 2001) (approving attorneys' fee award that was "negotiated after the settlement for the Class had been agreed to in principle"); In re Uponor, Inc., 2012 U.S. Dist. LEXIS 90294, at *36-37, 2012 WL 2512750 (D. Minn. June 29, 2012):

> **Where, as here, class counsel has expended considerable time and effort in procuring a settlement, has independently negotiated the fee amount at arm's length with defendants, and the fee amount does not impact or diminish the total settlement received by class members, the attorneys' fees requested are appropriate.**

Both of these factors are present in the case at bar. Pursuant to lead class counsel's usual practice of negotiating the settlement of a class action, the subject of attorney's fees and costs was not discussed with defendant until after an agreement in principle had been reached as to the substantive relief that would be afforded to the class. Thereafter, counsel engaged in additional arms-length negotiations as to the amount of statutory attorney's fees and costs that would be paid to class counsel, subject to Court approval. Ultimately, it was agreed that, if approved by the Court, the award of attorney's fees and costs described herein would be paid separately by defendant, and that this award would in no way impact the relief afforded to the class members. It is submitted that these factors support approval of the requested award.

## III.   THE REQUESTED SERVICE AWARDS ARE REASONABLE.

The purpose of a service or incentive award to the named, representative plaintiffs in a class action is to recognize that they have undertaken extra burdens in instituting and maintaining

4

the litigation, beyond those borne by ordinary class members, and that the named plaintiffs' efforts helped recover a benefit for the entire class. See Huguley v. General Motors Corp., 128 F.R.D. 81, 85 (E.D. Mich. 1989), aff'd., 925 F.2d 1464 (6th Cir. 1989) (recognizing that "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne").

Federal courts within the Seventh Circuit and elsewhere routinely approve the award of service payments to class representatives for their assistance to a plaintiff class. See, e.g., In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig., 733 F. Supp. 997, 1015-16 (E.D. Wisc. 2010) (approving $1,000 incentive awards for 132 representative plaintiffs); McKinnie v. J.P. Morgan Chase Bank, N.A., 678 F. Supp. 2d 806 (E.D. Wisc. 2009) (approving $1,000 incentive award to named plaintiff); White v. Nat'l Football League, 822 F. Supp. 1389, 1406 (D. Minn. 1993) ("Courts, however, routinely approve such [service] awards for class representatives who expend special efforts that redound to the benefit of absent class members."); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 251, 1991 U.S. Dist. LEXIS 8193, 31 (S.D. Ohio 1991) (approving incentive award to named plaintiff in class action, stating: "In this case, the Class Representatives have taken actions which have protected the interests of the Class Members and which have resulted in a Settlement that provides substantial economic and non-economic benefits for the Class Members."); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding two class representatives $55,000 each as incentive awards, stating: "Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent."); In re Chambers Dev. Sec. Litig., 912 F. Supp. 852, 863 (W.D. Pa. 1995) ("it has been this Court's practice to approve such incentive awards if they

are reasonable"); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving incentive awards to class representatives who "have rendered a public service by contributing to the vitality of the federal Securities Acts").

In the case at bar, defendant has agreed to pay a total of $525,000 to cover service awards, attorney's fees, and costs. Counsel have designated a total of **$5,000** to be paid in service awards to the ten named plaintiffs, with each named plaintiff to receive **$500 apiece**, subject to Court approval. As set forth in the cases cited above, this proposed award is lower than, or on par with, incentive awards that have been approved in other class actions in the Seventh Circuit and elsewhere. No class member has objected to this proposed award.

It is submitted that most individuals, if faced with a loss of less than $5 – the approximate price of a Subway® "Footlong" sandwich – would not be willing to spend the time and effort needed to bring and prosecute a lawsuit in court. In the case at bar, the named plaintiffs spent a substantial amount of time helping to investigate this matter, being interviewed by counsel, and helping to gather information used to prepare the class complaints and responses to discovery requests. Without the class representatives, there would have been no litigation and no recovery for the class. The requested award would help compensate the named plaintiffs for going the extra mile in expending such time and effort, bearing the risk of litigation, and helping to obtain a benefit not only for millions of their fellow class members but also for each and every future Subway® customer. See Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 876-77 (7th Cir. 2012) (explaining that incentive awards are designed to compensate named plaintiffs in class actions for participating in the litigation and bearing the risk of potentially being liable for defendant's litigation costs and fees should a case be deemed frivolous, and observing that

6

median incentive awards are $4,000 per named plaintiff). Accordingly, the proposed service awards are reasonable and should be approved.

## IV.   THE REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS IS REASONABLE UNDER THE LODESTAR METHOD.

When a class action settlement provides only equitable relief to class members, courts in the Seventh Circuit use the lodestar method to award attorneys' fees to class counsel. People Who Care v. Rockford Bd of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996), noting that in a class action for equitable relief brought under a fee shifting statute:

> **[P]revailing parties are entitled to "reasonable" fees as a portion of their cost of bringing suit. Clear guidelines have been developed to aid courts in calculating the amount of those fees. The "lodestar" method – reasonable hourly rates multiplied by hours reasonably expended – is the most appropriate starting point.**

See also Langendorf v. Conseco Senior Health Ins. Co., 2009 U.S. Dist. LEXIS 131289, at *28-32 (N.D. Ill. Nov. 18, 2009) (using lodestar method to calculate attorneys' fees "[a]s a result of the difficulty in making an assessment of" the value of a settlement for equitable relief) (citing Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324-25 (D.N.J. 1997) (using lodestar method where the settlement provided for "equitable relief to address the alleged deceptive practices averred in plaintiffs' complaint")).

As explained by the Seventh Circuit Court of Appeals in Harman v. Lyphomed, Inc., 945 F.2d 969 (7th Cir. 1991), to calculate an attorney's fee under the lodestar method, a Court must first determine the "reasonable number of hours expended by the attorneys." Id. at 974. Next, the Court must "determine the reasonable hourly rate allowable for each attorney or class of attorneys involved in the case." Id. "These rates should be within the narrow bands of rates charged by attorneys of similar experience, competence and specialty." Id. Attorneys' fees may also include hourly billing for paralegals if consistent with prevailing practice. Langendorf,

7

2009 U.S. Dist. LEXIS 131289, at *31 (citing <u>Missouri v. Jenkins</u>, 491 U.S. 274, 286-87 (1989)). "Multiplying the hours reasonably expended by the reasonable hourly rates produces the lodestar." <u>Harman</u>, 945 F.2d at 974. Additionally, a court may "discount or increase the lodestar based on a variety of factors." <u>Heder v. City of Two Rivers</u>, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003) (citing <u>Bankston v. Illinois</u>, 60 F.3d 1249, 1255 (7th Cir. 1995)). District courts are given "great deference" in determining fee awards. <u>Spegon v. Catholic Bishop</u>, 175 F.3d 544, 551 (7th Cir. 1999).

As to the amount of information necessary to support a fee petition, the United States Supreme Court in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 439 at n.12 (1983) stated:

> **Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.**

<u>See</u> <u>also</u> <u>Fox v. Vice</u>, 131 S. Ct. 2205, 2216; 180 L. Ed. 2d 45 (2011) (internal citations omitted):

> **The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.**

Specifically, courts in this district have found that specific billing records are not necessary to establish entitlement to a fee award, but rather that an attorney's affidavits are sufficient. <u>See</u> <u>Bradley Corp. v. Zurich Ins. Co.</u>, 984 F. Supp. 1193, 1205 (E.D. Wis. 1997); <u>see</u> <u>also</u> <u>Operating Eng'rs Local 139 Health Benefit Fund v. Great Lakes Excavating, Inc.</u>, 2008 U.S. Dist. LEXIS 121146 (E.D. Wis. June 5, 2008) (granting fee petition based on attorney's affidavit and summaries of time records).

Moreover, where – as here – a defendant has agreed to pay an award of attorney's fees separately from the class recovery, less detail is required in a fee application. See In re Uponor, Inc., 2012 U.S. Dist. LEXIS 90294, 36-37, 2012 WL 2512750 (D. Minn. June 29, 2012) ("[W]hen a defendant agrees to pay fees and costs separately from the benefit for a class, the district court 'may rely on summaries submitted by the attorneys and need not review actual billing records.'").

In this petition, class counsel are seeking a total of $525,000 to cover service awards, attorney's fees, and costs. As explained above, counsel have designated a total of $5,000 to be paid in service awards to the ten named plaintiffs. The remaining **$520,000** will go to offset the fees and costs incurred by class counsel in prosecuting this litigation. In negotiating this number, class counsel were aware that their combined, unadjusted lodestar in this matter – if billed at their usual hourly rates, as approved by numerous state and federal courts – **was over $1.125 million**. Despite this, in order to finalize the settlement and avoid additional litigation over a contested fee petition, counsel voluntarily agreed to limit their request for an award of fees and costs in this matter to **less than half** of the total amount of fees incurred by counsel and their combined, unadjusted loadstar. The total costs and total, unadjusted lodestar incurred by each class counsel are set forth in Attachment 1 (summarizing in detail counsel's time records and costs)[3] and are further described in counsel's certifications attached hereto as Attachments 2-11.

---

[3] Attachment 1, which summarizes class counsel's contemporaneous time records and lists all costs incurred by each counsel's firm as of May 2014, was originally submitted to this Court when the parties were mediating the amount of fees and costs to be paid to class counsel. Since that time, class counsel collectively have incurred at least $75,000.00 in additional fees and costs, as set forth in their respective certifications. See Attachments 2-11. Despite this, class counsel have not supplemented Attachment 1 to reflect these additional fees and costs because the amount requested in this fee petition is amply justified by the fee/cost amounts set forth in Attachment 1, which, as noted above, are more than double the fees and costs requested herein. Nevertheless, should the Court wish class counsel to update Attachment 1 to reflect all additional fees and costs incurred since the fee mediation, or to provide any additional information that the Court may require, class counsel will certainly do so.

As discussed below, the reduced fee award requested in this petition is reasonable under the lodestar analysis as to both hours expended and rates charged; thus, the Court should grant class counsel's petition.[4]

### A.      Class Counsel's Hours Are Reasonable.

In determining the reasonable number of hours expended by an attorney on a matter, courts should not "engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained." White v. Marshall, 771 F. Supp. 2d 952, 959 (E.D. Wis. 2011). Rather, the court should "determine whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Id. The Seventh Circuit Court of Appeals has maintained that fee petitions brought by the prevailing party under fee shifting statutes should exclude "excessive, redundant or otherwise unnecessary expenses." Batt v. Micro Warehouse, Inc., 241 F.3d 891, 894 (7th Cir. 2001). Stated otherwise, "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute." Spegon, 175 F.3d at 552 (citing Hensley, 461 U.S. at 434 (explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's adversary pursuant to statutory authority")). "[I]n the event counsel does not exercise such judgment, the district court may reduce the number of hours accordingly." See Batt, 241 F.3d at 894.

---

[4] Although the Court need not necessarily consider this issue, the requested fee is also reasonable in relation to the value of the total benefit conferred on the class. As noted above, plaintiffs' expert has valued the cost of implementing the equitable relief obtained for the class as a result of the settlement at approximately $9 million. The requested fee of $525,000 – which amount includes service awards to be paid to the named plaintiffs – is approximately 5.8% of the total estimated value of the settlement. This percentage of benefit is far below what has been approved by courts of the Seventh Circuit, including the Eastern District of Wisconsin. See, e.g., Downes v. Wis. Energy Corp. Ret. Account Plan, 2012 U.S. Dist. LEXIS 55612, at *14 (E.D. Wis. April 20, 2012) (approving a fee equal to 30% of the benefit conferred upon the class).

So that the Court may have the benefit of reviewing all hours expended in this matter, class counsel are submitting along with this petition affidavits and monthly or periodic time records/summaries showing the amount of time worked by each attorney and paralegal on this litigation, organized by firm, legal professional, and category of task performed. See Attachment 1. The level of detail provided by class counsel far exceeds the minimum standards set forth by the United States Supreme Court in Hensley and Fox. Class counsel's cost summaries, setting forth the amount of costs incurred by each firm in litigating these cases, are also attached for the Court's review. See id.

It is submitted that these hours were ably spent, and were reasonable and necessary to bring this case to a successful conclusion. This case involved numerous legal and factual issues, many of which were technically complex, requiring class counsel to conduct numerous hours of legal research and briefing, factual investigation, and discovery. Class counsel also spent numerous hours coordinating this multidistrict litigation, preparing for and participating in settlement discussions and mediation, and performing numerous other tasks identified in counsel's time records. For example, class counsel performed thorough pre-settlement factual investigation that included interviewing dozens of current and former Subway® franchisees and their employees, numerous customers, and even former employees of defendant's captive bread vendors, who provided, inter alia, evidence to support plaintiffs' allegation that the undersized sandwiches were a matter of Subway® corporate policy. Plaintiffs' counsel also gathered documentary and other evidence to support these allegations, including, inter alia, copies of defendants' internal franchise manuals, and other documents and tangible items such as samples of defendants' bread baking trays. It is submitted that the evidence obtained as a result of these investigations, as well as the other hours expended by class counsel in litigating this case, led

11

defendant to agree to mediation and ultimately resulted in the proposed settlement and benefit to the class. See Attachments 1-11.

Accordingly, class counsel submits that all of the hours they spent in prosecuting these cases, as set forth in their time summaries and certifications, were necessary to bring this matter to a successful conclusion and to obtain the injunctive relief for the benefit of the class. Moreover, as noted above, class counsel have voluntarily reduced their fee request to less than 50% of their combined, unadjusted lodestar. Thus, it is submitted that this reduced number of hours for which class counsel seek to be compensated is unquestionably reasonable.

**B.      Class Counsel's Hourly Rates Are Reasonable.**

The Seventh Circuit Court of Appeals has held, on several occasions, that "[a] 'reasonable' hourly rate should reflect the 'market rate' for the attorney's services." Heder, 255 F. Supp. 2d at 953 (quoting Batt, 241 F.3d at 894 (further explaining that "the market rate is 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'") (quoting Spegon, 175 F.3d at 555)); see also People Who Care, 90 F.3d at 1310. "The attorney's actual billing rate for comparable work is **presumptively appropriate** to use as the market rate." Heder, 255 F. Supp. 2d at 953 (citing Mathur v. Bd. of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003); Spegon, 175 F.3d at 555). A fee applicant can demonstrate his or her market rate "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." Batt, 241 F.3d at 894 (quoting Spegon, 175 F.3d at 556).

As indicated in their accompanying certifications, the hourly rates sought by class counsel herein represent their normal billing rates in complex litigation. See Certifications of

12

Class Counsel, attached hereto as Attachments 2-11. These hourly rates are those actually charged by these attorneys to clients for legal services when hourly billing is used. Moreover, as indicated in the attached certifications, the historical hourly rates of each of the petitioners has been approved by numerous federal and state courts. Finally, detailed accounts of the experience of petitioners are set forth in the accompanying certifications. See id.

The hourly rates requested for petitioners in this matter are well within – or very close to – the hourly rates previously approved by the district courts in the Seventh Circuit in prior class actions and other complex litigation. See, e.g., Abbot v. Lockheed Martin Corp., 2015 U.S. Dist. LEXIS 93206, at *12 (S.D. Ill. July 17, 2015) (finding as reasonable rates for class counsel rates ranging between $447 and $974, depending on the specific attorney's experience level); Reid v. Unilever United States, Inc., 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) (approving as reasonable class counsel rates ranging from $520 to $650); Shepard v. Madigan, 2014 U.S. Dist. LEXIS 137245 (S.D. Ill. Sept. 29, 2014) (approving attorney rates up to $925). Accordingly, the hourly rates submitted by class counsel are reasonable.

## C.    No Additional Adjustment to Counsel's Fee Is Necessary Here.

After calculating an attorneys' lodestar by multiplying the hours "reasonably expended" by the "reasonable hourly rates" – which is the "presumptively reasonable fee" – a district court may "discount or increase" this amount based on several factors known as the "Hensley factors." Heder, 255 F. Supp. 2d at 953 (citing Hensley, 461 U.S. at 436). These factors include, inter alia, the degree of success obtained in the case, the time and labor required to prosecute the case, the novelty and difficulty of the factual and legal issues, the skill required to perform the legal services properly, the attorney's customary fee, whether the fee is fixed or contingent, the experience, reputation, and ability of the attorney, and the undesirability of the case. Id. at 953-

13

957. "The party advocating adjustment of the lodestar bears the burden of establishing that such an adjustment is necessary." Id. at 953.

Here, as explained above, class counsel has already voluntarily reduced their combined, unadjusted lodestar from more than $1.125 million to $520,000 (including costs) – a reduction of more than 50%. Counsel respectfully submits that no further adjustment is necessary. Indeed, if this Court were to adjust counsel's lodestar, the relevant Hensley factors would support an increase in the award rather than any further reduction. Specifically, class counsel have obtained via the settlement the exact injunctive relief sought in plaintiffs' complaint, resulting in a significant benefit for the class. As described above and in their time summaries and certifications, class counsel have spent numerous hours investigating, researching, briefing, and ultimately resolving the complex issues of law and fact that arose during the prosecution of this case. See Attachments 1-11. The resolution of such issues necessitated the high degree of skill and expertise possessed and exhibited by class counsel.

Moreover, the fact that plaintiff's class counsel took these matters on an entirely contingent basis – as no plaintiff in his right mind would agree to pay an attorney an hourly fee to litigate a case involving the purchase of a $5 "Footlong" sub sandwich – means that counsel had no guarantee that they would receive any fees for the work they performed on this case, or reimbursement of their expenses. This alone would entitle class counsel to a fee enhancement pursuant to a number of the state laws under which plaintiffs brought their claims.[5] Consequently, no additional downward adjustment is warranted here.

---

[5] Indeed, the law of some states requires the application of an upward multiplier in contingent, fee-shifting cases. See, e.g., Rendine v. Pantzer, 141 N.J. 292, 338 (1995) (holding that in calculating an attorney lodestar in a contingent case under a New Jersey fee-shifting statute, courts are required to make an upward adjustment to reflect the risk that the attorney will not receive any payment if the suit does not succeed); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 978 (Pa. Super. Ct. 2011) (adopting rationale of Rendine in Pennsylvania); Greene v. Dillingham Constr. N.A., 101 Cal. App. 4th 418, 428-429; 124 Cal.

## V. THE LACK OF CLASS MEMBER OBJECTIONS SUPPORTS A FINDING THAT THE REQUESTED FEE IS REASONABLE.

As of the date this fee petition was filed, class counsel has received only two objections to the proposed settlement, neither of which raised any specific objections to the proposed award of fees and costs. This factor also supports approval of the requested award of fees and costs. See McDaniel v. Qwest Communs. Corp., 2011 U.S. Dist. LEXIS 154591, at *13-14 (N.D. Ill. Aug. 29, 2011) (citing as justification for approving a fee request the fact that "[t]here were no objections to the requested attorneys' fee award," and further stating that the "absence of objection is a 'rare phenomenon' and 'indicates the appropriateness of the [fee] request'") (internal citations omitted); see also In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request.").

## CONCLUSION

For the reasons articulated herein, class counsel ask that their petition for service awards, attorney's fees, and costs totaling $525,000 be approved.

Date:   December 7, 2015

Respectfully submitted,

### *Plaintiffs' Co-Lead Counsel*

*/s/ Thomas A. Zimmerman, Jr.*
    Thomas A. Zimmerman, Jr.
    Zimmerman Law Offices, P.C.
    77 West Washington Street, Suite 1220
    Chicago, Illinois 60602
    (312) 440-0020

*/s/ Stephen P. DeNittis*
    Stephen P. DeNittis
    DeNittis Osefchen, P.C.
    5 Greentree Centre, Suite 410
    Route 73 South & Lincoln Drive
    Marlton, New Jersey 08053
    (856) 797-9951

---

Rptr. 2d 250, 258 (Cal. App. 1st Dist. 2002) (reversing and remanding decision of California trial court that failed to consider applying a contingent fee multiplier in fee shifting case). Despite this, class counsel are seeking no such multiplier here, further underscoring the reasonableness of their fee request.

*Plaintiffs' Executive Committee*

Guri Ademi
Shpetim Ademi
David J Syrios
John D. Blythin
Ademi & O'Reilly, LLP
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000

Michael S. Agruss
Agruss Law Firm, LLC
22 W. Washington Street, Suite 1500
Chicago, IL 60602
(312) 224-4695

Gerald A. Marks
Louis D. Tambaro
Kristen A. Curatolo
Marks & Klein, LLP
63 Riverside Avenue
Red Bank, NJ 07701
(732) 747-7100

Juan E. Monteverde
Antonio Vozzolo
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
(212) 983-9330

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200

E. Kent Hirsch
Hirsch Law Firm, P.A.
107 West Emma Ave.
Springdale, AR 72764
(479) 751-0251

Marshall Dale Evans
Evans Law Firm, P.A.
2333 N. Green Acres Road
P.O. Box 1986
Fayetteville, AR 72702
(479) 521-9998

Todd M. Friedman
Nicholas J. Bontrager
Law Offices of Todd M. Friedman
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
(877) 206-4741

16

## CERTIFICATE OF SERVICE

Stephen P. DeNittis, an attorney, hereby certifies that he caused the foregoing document, to be served upon all counsel of record in this case via the Court's CM/ECF System, prior to 5:00 p.m., on this day December 7, 2015.

All Plaintiffs, individually, and on behalf of all others similarly situated,

By:    s/Stephen P. DeNittis
        Stephen P. DeNittis
        DeNittis Osefchen, P.C.
        5 Greentree Centre
        525 Route 73 North, Suite 410
        Marlton, NJ 08053
        (856) 797-9951

17