## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN


IN RE: SUBWAY FOOTLONG         )
SANDWICH MARKETING AND       )      Case No. 2:13-md-02439-LA
SALES PRACTICES LITIGATION      )


This document relates to all cases


## THEODORE H. FRANK'S
## OBJECTION TO PROPOSED SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES.........................................................................iii

INTRODUCTION .........................................................................................1

   I.   Frank is a class member and intends to appear at the fairness hearing..........................2

   II.   The settlement-only class certification does not satisfy the requirements of Rules 23(a)(4), 23(b)(2) or 23(g)(4). ...................................................................3

      A.   The settlement demonstrates a lack of adequate representation for absent class members in violation of Rule 23(a)(4) and 23(g)(4)...........................................4

      B.   23(b)(2) certification is not warranted because injunctive relief is not "appropriate with respect to the class as a whole." ...................................................11

         1.   Monetary claims predominate from the perspective of the class and its representatives...........................................................................13

         2.   Monetary claims predominate from the perspective of the operative complaint and the class's asserted claims. ..............................................16

         3.   Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief. ...................19

   III.   Even if the class were certifiable, this settlement is not fair. .........................................21

      A.   The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement.......................................................................22

      B.   Rule 23(h) does not permit lead counsel to privately divide a lump-sum fee award. 28

   CONCLUSION ...........................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ........................................................18

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)........................................................ 2, 4, 5

*Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.,* 637 F.3d 827 (7th Cir. 2011) ..................6

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001)........................................................5

*Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988)........................................................5

*Blackman v. District of Columbia*, 633 F.3d 1088 (D.C. Cir. 2011) ........................................... 12, 15

*Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 U.S. Dist. LEXIS 107928   (N.D. Ill. Aug. 1, 2013) .....................................................................................................................................15

*Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970 (5th Cir. 2000) ........................................... 14, 18, 20

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)...........................................4

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)........................................................14

*Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185 (5th Cir. 2010) ...........................................15

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007)...........................................16

*Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010)...........................................14

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012)...........................................14

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008)........................................................13

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000) ........................................*passim*

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011)...............4, 5

*Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) ........................................................6

*Day v. Whirlpool Corp.*, 2014 U.S. Dist. LEXIS 169026 (W.D. Ark. Dec. 3, 2014)................. 8-9

*Doster Lighting, Inc. v. E-Conolight LLC*, 2015 U.S. Dist. LEXIS 78499 (E.D. Wis. June 17, 2015) ........................................................................................................................................7

*Drimmer v. WD-40 Co.*, No. 06-cv-900 W(AJB), 2007 U.S. Dist. LEXIS 62582, 2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) ........................................................................................... 7-8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................................................20

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) ...................................... 5, 10, 11

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ........................................... 3, 5, 23, 25, 27

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) ........................................ 14, 27

*Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, 2015 U.S. Dist. LEXIS 124812 (N.D. Ill. Sept. 18, 2015) ...........................................................................................................................1, 22, 24, 28

*Haggart v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767  (W.D. Pa. Jun. 28, 2012).14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................26

*Hansberry v. Lee*, 311 U.S. 32 (1940) ........................................................5

Case 2:13-md-02439-LA   Filed 12/15/15   Page 3 of 38   Document 51

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012) ............................ 13, 14, 15, 16, 19

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ........................................................15

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987).................................................29

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011)....................................*passim*

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................................................................................24

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................22, 23, 25, 27

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277 (3d Cir. 2005)........................................................................................................................26

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ......................................................*passim*

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010) ......................................................................................................................................23

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) ................. 7, 9, 21

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)..5-6, 12, 22

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008) ......................29

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) .............................................. 23-24

*In re Mercury Interactive Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010) ...............................................28

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ........................................................20

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) ...................19

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990) ..............................................................25

*In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001)...............................................8

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ...........................................................19

*In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015).................................. 5, 8, 27

*In re St. Jude Med, Inc.*, 425 F.3d 1116 (8th Cir. 2005) ..................................................................19

*In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000) ....................................................20

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011)................. 11, 17-18, 19

*Lemon v. Int'l Union of Operating Eng'rs Local No. 139.*, 236 F.3d 577 (7th Cir. 2000)................12

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago.*, 834 F.2d 677 (7th Cir. 1987)..21

*McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626 (E.D. Pa. 2015)........................................................3

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003) ................................................14

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012) .................................................... 15-16

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004)........................................................25

*Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745 (7th Cir. 2006)..........................................................3

*Mogel v. UNUM Life Ins. Co. of Am.*, 646 F.Supp.2d.177 (D. Mass 2009)................................14

*Morris v. DaVita Healthcare Partners, Inc.*, 308 F.R.D. 360 (D. Colo. 2015) ................................16

iv

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ....................................................5, 10

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ....................................................*passim*

*Pearson v. NBTY, Inc..*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014) .25

*Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 283 Fed. Appx. 139 (4th Cir. 2008) 18

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ..........................................18

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013)..........................................5, 10

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) ....................................................*passim*

*Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639 (6th Cir. 2006)........................................12, 16

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)...........................................24

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006)...........................................16, 17

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013)..........................3, 16, 22, 26

*Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012) ...........................................8

*Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, 2012 U.S. Dist. LEXIS 51460 (D.N.J. Apr. 11, 2012)....................................................................................................16

*Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo. Ct. App. 2006) ...................................18

*Segal v. Bitar*, 2015 U.S. Dist. LEXIS 76620 (S.D.N.Y. May 26, 2015)......................................17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .......................................................24

*Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. Jun. 19, 2013)..................14, 16

*Synfuel Techs. Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)......................25, 26

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006)..........................................17

*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994) .......................................................6

*Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984)..........................................................4

*Veal v. Citrus World*, No. 2:12-cv-891-IPJ, 2013 WL 120761, 2013 U.S. Dist. LEXIS 2620 (N.D. Ala. Jan. 8, 2013) ..................................................................................16

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012)...........................................24, 26

*Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ...................................2, 4, 11, 12, 14, 19

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991)..................................27

**STATUTES**

Fed. R. Civ. P. 23(a)(4) ..............................................................................2, 4-11

Fed. R. Civ. P. 23(b)(2) ..................................................................... 2, 4, 8, 11-20

Fed. R. Civ. P. 23(b)(3) ...........................................................................11, 18, 20

Fed. R. Civ. P. 23(e)(2) ...........................................................................2, 21-28

Fed. R. Civ. P. 23(e)(3) .................................................................................30

Fed. R. Civ. P. 23(e)(5) ..................................................................................3

Fed. R. Civ. P. 23(g)(4) ..............................................................................2, 4-11

Fed. R. Civ. P. 23(h) ...........................................................................................26, 28-30

Wis. R. Prof. Conduct 1.5(e) ............................................................................................28

## OTHER AUTHORITIES

Advisory Committee Notes 39 F.R.D. 98 (1966).......................................................15

Lester Brickman LAWYER BARONS (2011) ...............................................................27

Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. REV. 71 (2015)..........30

Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109 (2011).................20

American Law Institute's Principles of the Law of Aggregate Litigation ("*ALI Principles*") (2010)................................................................................................................21

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 14.11 (4th ed. 2004)............30

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.612 (4th ed. 2004)..........12

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813 (2003) ................................................27

Tiffany Hsu, *Subway Pledges to Make All Its Footlong Sandwiches 12 Inches*, L.A. TIMES (Jan. 25, 2013), http://articles.latimes.com/2013/jan/25/business/la-fi-mo-subway-footlong-20130125.........................................................................................................7

Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177 (2003)..........................................20

Notes of Advisory Committeee on 2003 Amendments to Rule 23 ...........................................28

Ryan P. O'Quinn & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295 (2011) ....................................18

Martin H. Redish, WHOLESALE JUSTICE: CONSTITUTIONAL DEMOCRACY AND THE PROBLEM OF THE CLASS ACTION LAWSUIT 11 (2009) ................................................................20

Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000) ......................27

Rachel Tepper, *Subway Pledges to Ensure Every "Footlong" Is Twelve Inches*, THE HUFFINGTON POST (Jan. 25, 2013), http://www.huffingtonpost.com/2013/01/25/subway-footlong-scandal_n_2550156.html..............................................................................................7

Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729 (2006).........................................................................................14

# INTRODUCTION

The proposed class cannot be properly certified; the settlement fails to produce any compensatory value for class members; yet it still earmarks $525,000 million for class counsel and the named representatives. Thus, this settlement cannot be approved for multiple reasons.

In early 2013, with a single tweet, an Australian teenager precipitated a fooforaw regarding the length of Footlong sandwiches, and that spawned the nine federal lawsuits that were consolidated into this MDL. Within two weeks of that tweet, and before most of these constituent cases were even filed, defendant Doctor's Associates, Inc. ("Subway") pledged to sure that worldwide all Footlong sandwiches would be a full twelve inches in length. This settlement contemplates that Subway agree to "make or keep in place" certain means to that end, means that Subway naturally has been using already to follow through on its earlier pledge. The settling parties have not met their burden to demonstrate that the settlement provides any incremental benefit beyond the pre-settlement status quo.

In structure and design, the proposed settlement is a close cousin of those repudiated by the Sixth Circuit in *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713 (6th Cir. 2013), by the Seventh Circuit in *Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000); and by the Northern District of Illinois in *Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, 2015 U.S. Dist. LEXIS 124812 (N.D. Ill. Sept. 18, 2015). As in those cases, this settlement's provisions sustain class counsel, the named representatives, and the defendant, but disserve class members through valueless practice changes that provide no incremental benefit over the status quo. The "economic reality" is that a defendant merely cares about its total liability, and not the fair allocation of damages and relief. *Pampers*, 724 F.3d at 717; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). The problem here is one of allocation. Frank does not object to Subway settling this case for half a million dollars, but class counsel cannot allocate that entire economic benefit of the settlement to themselves with the class receiving nothing.

1

Class counsel owes a fiduciary duty to their client—but the client is not a free-floating abstract entity akin to the general public; rather it is the class of discrete individuals who purchased Subway sandwiches over the last dozen years. Rule 23's subsections afford these individuals numerous protections, several of which are flagrantly violated by this settlement. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 620, 623 (1997). This settlement flouts subsection (b)(2) because the class definition, class claims, and available relief all indicate that monetary claims predominate, precluding (b)(2) certification. *See, e.g., Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541 (2011). It flouts (a)(4), (e)(2), and (g)(4) by allocating the entirety of the settlement proceeds to class counsel and the named representatives. *See, e.g., Pampers*, 724 F.3d 713.

## I.     Frank is a class member and intends to appear at the fairness hearing.

Theodore Harold Frank is a member of the putative (b)(2) settlement class, defined as all persons in the United States who purchased a Six inch or Footlong sandwich at a Subway restaurant any time between January 1, 2003 and October 2, 2015. Frank is a U.S. citizen and resident who purchased sandwiches on multiple occasions from during the class period at Subway restaurants located in Texas, Virginia, and the District of Columbia. *See* Frank Decl. ¶ 3. He is therefore a member of the putative class with standing to object. His business address is 1899 L Street NW, 12th Floor, Washington, DC 20036; his telephone number is 202-331-2263; his email address is ted.frank@cei.org. *Id.* at ¶ 2. He is represented by Adam Schulman, an attorney with the non-profit Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF") and intends to appear through Schulman at the Fairness Hearing to discuss the points raised in this Objection and to address any responses that the settling parties may make. He requests fifteen minutes to reply to any responses to his objection and answer any questions the Court may have; he does not plan to call any witnesses but reserves the right to cross-examine any witnesses who testify in support of the certification or settlement.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson*, 772 F.3d at 787 (observing that CCAF's client "flagged fatal weaknesses in the proposed

2

settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *Pampers*, 724 F.3d at 716-17 (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal U.S.A.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement") (rejecting settlement approval and certification). CCAF has won tens of millions of dollars for class members. *See, e.g., McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted).

Frank brings this objection through CCAF in good faith to protect the interests of the class. He objects to any settlement provision that imposes burdens on objectors beyond Rule 23(e)(5).

## II.    The settlement-only class certification does not satisfy the requirements of Rules 23(a)(4), 23(b)(2) or 23(g)(4).

"Class-action settlements are different from other settlements." *Pampers*, 724 F.3d at 715. "[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Id.* at 718 (internal quotation omitted); *accord Eubank v. Pella Corp.*, 753 F.3d 718, 720-24 (7th Cir. 2014). Thus, through its oversight responsibility, the Court itself embraces a derivative obligation as a "fiduciary of the class"[1] rather than "assum[ing] the passive role that is appropriate when there is genuine adverseness between the parties rather than the conflict of interest recognized and discussed in many previous class action cases." *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *see also Pearson*, 772 F.3d at 787 (disapproving the notion that "the

---

[1] *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).

3

judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public.").

This affirmative judicial duty to vouchsafe the rights of the absent plaintiffs extends to the decision to grant class certification, obliging district courts to conduct a "rigorous analysis" to ensure compliance with the Rule 23 certification prerequisites. *Dukes*, 131 S. Ct. at 2551 (2011). A proponent of class certification "must affirmatively demonstrate his compliance with the Rule." *Id*; *accord Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984) (proponents of certification bear the burden of proving Rule 23 prerequisites are met). Aside from trial manageability concerns, that burden is no lighter when the Court is confronted with a settlement-only class certification. In fact, the specifications of Rule 23(a) and (b)(2) are "designed to protect absentees by blocking unwarranted or overbroad class definitions" and "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620; *Pampers*, 724 F.3d at 721 ("These requirements are scrutinized more closely, not less, in cases involving a settlement class"). Relevant to this objection are subsections 23(a)(4), 23(b)(2), and 23(g)(4).

### A.   The settlement demonstrates a lack of adequate representation for absent class members in violation of Rule 23(a)(4) and 23(g)(4).

Rule 23(a)(4), grounded in the Due Process Clause of the Constitution, conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." 23(g)(4) imparts an equivalent duty on class counsel, most weighty "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Together these provisions demand that the named representatives and class counsel manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).  Class counsel must "prosecute the case in the interest of the class . . . rather than just in their interests as lawyers who if successful will obtain a

4

share of any judgment or settlement as compensation for their efforts"[2] and the named representatives may not "leverage" "the class device" for their own benefit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). The terms of settlement here leave no doubt that the class's fiduciaries are not discharging their duties, and accordingly 23(a)(4) and (g)(4) are not satisfied.

In general, class representatives might be inadequate for a multitude of reasons. For example, they may be collusively aligned with the defendant (*e.g.* the seminal case of *Hansberry v. Lee*, 311 U.S. 32 (1940)); they may be beholden agents of class counsel (*e.g.*, *Eubank*, 753 F.3d at 721-22 (rejecting class representative who was father-in-law of class counsel); *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015) ("*Southwest*") (rejecting class representative who was co-counsel with class counsel in another action)); they may be seeking relief that harms a certain subset of the class (*e.g.*, *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (upholding denial of certification in a suit alleging that noise and chemicals associated with the operation of O'Hare Airport reduced the value of surrounding homes because "homeowners who want to sell to businesses (or are in areas zoned for business) may benefit from extra flights and so oppose homeowners differently situated.")); they may have reached an individual settlement and thus no longer have a vested stake in what the class could receive through litigation (*see, e.g., Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012)); or they may just not care enough about what's going on (*e.g.*, *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-483 (5th Cir. 2001)).

The inadequacy can manifest itself right from the case's inception based upon background facts, but perhaps more commonly, it can reveal itself in the course of the proceedings. This is why the Supreme Court instructs that it is "altogether proper" to inspect the terms of settlement when evaluating whether adequacy is met. *See Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 619-20 (1997); *accord Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1166 (9th Cir. 2013) ("[O]ur [23(a)(4)] analysis focuses on the agreement."); *In GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801

---

[2] *Creative Montessori*, 662 F.3d at 917.

(3d Cir. 1995) ("*GM Trucks*") (providing that conflicts can sometimes be discerned from "the very terms of the settlement").

There is a common thread underlying many species of representative inadequacy: the selection of litigation strategies that do not prioritize actual redress to absent class members. *See, e.g., Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery.") Whether it is class counsel or the named representatives steering the decision-making (we think it is likely class counsel),[3] both have now signed off upon a settlement that divides the entirety of the $525,000 settlement proceeds between themselves, generating no demonstrable benefit for absent class members. Such representation is palpably inadequate.

"A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain [relief] that already is on offer is not adequately protecting the class members' interests." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). Indeed, this settlement certification fails for the same reason as *Aqua Dots*; the representatives propose a settlement under which the defendant will "agree to make, or…keep in place" several changes to its policies and practices that appear to have already been implemented. Settlement Agreement and Release ("Settlement"), Dkt. 46-1, Exh. A, ¶ 22. In this class action, plaintiffs alleged that Subway engaged in deceptive practices regarding the length of its Six Inch and Footlong Subway sandwiches. *See* Settlement ¶ 1. In the Settlement, Subway indicates that it made "certain" changes to its bread baking practices as a result of the Litigation. The reality is that Subway pledged to make changes immediately after the controversy gained attention in early 2013 and *before* most of the constituent cases in this MDL had even been filed: "We have redoubled our efforts to ensure consistency and correct length in every sandwich we serve. Our commitment remains steadfast to ensure that every Subway Footlong sandwich is 12 inches at each location worldwide."

---

[3] *See generally Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (discussing plaintiffs' attorneys' role as the driving force in class proceedings).

6

Rachel Tepper, *Subway Pledges to Ensure Every "Footlong" Is Twelve Inches*, THE HUFFINGTON POST (Jan. 25, 2013), http://www.huffingtonpost.com/2013/01/25/subway-footlong-scandal_n_2550156.html (quoting statement Subway submitted to Chicago Tribune); Tiffany Hsu, *Subway Pledges to Make All Its Footlong Sandwiches 12 Inches*, L.A. TIMES (Jan. 25, 2013), http://articles.latimes.com/2013/jan/25/business/la-fi-mo-subway-footlong-20130125.

The settling parties cannot show that the settlement provides any benefit to the class over Subway's preexisting voluntary therapeutic changes, implemented in the wake of the controversy going viral in early 2013. While plaintiffs may well be correct that "certain" (again, which ones?) of the practice changes occurred "after initiation of the first lawsuit in this case," that is irrelevant for the purpose of whether this settlement-only class should be certified to execute the proposed Settlement. Under *Aqua Dots*, it is fatal to class certification that the plaintiffs' have not proven that the Settlement's supposed "relief" does anything for class members beyond duplicating the status quo.

Even if the Settlement provides a modicum of additional compliance practices above what Subway already pledged, it remains nonetheless true that "[plaintiffs'] decision to incur litigation costs to receive little more than [defendant] offered previously draws [their] adequacy into serious question." *Doster Lighting, Inc. v. E-Conolight LLC*, 2015 U.S. Dist. LEXIS 78499, at *18 n.4 (E.D. Wis. June 17, 2015) (following *Aqua Dots*). As plaintiffs readily acknowledge, in their 2013 Consolidated Amended Complaint (Dkt. 18), plaintiffs "abandoned their monetary damages claims." Settlement ¶ 8. Thus, they have abdicated their fiduciary duty by abandoning the only claims that could actually compensate class members for the injuries that the complaint alleges they have suffered. *See, e.g., In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1129 (7th Cir. 1979) (explaining that while "abandonment" of certain claims initially pled "does not by itself warrant the reversal of the settlement …, it does indicate that the representation during the negotiations may have been inadequate"); *Drimmer v. WD-40 Co.*, No. 06-cv-900 W(AJB), 2007 U.S. Dist. LEXIS 62582, 2007 WL 2456003, at *5 (S.D. Cal. Aug. 24, 2007) ("A class representative is not an adequate

7

representative when the class representative abandons particular remedies to the detriment of the class.").

When the settlement is reduced to its only concrete component—the $525,000 allocated to the attorneys' fee and incentive award—it is clear that the class counsel have prosecuted the suit "just in their interests as lawyers"[4] and that all representatives have "leverage[d]" "the class device" for their own benefit. *Murray*, 434 F.3d at 952. As *Aqua Dots* establishes, a settlement class cannot be certified where the attorneys are the main beneficiary of that agreement. 654 F.3d at 752; *see also Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 319 (7th Cir. 2012) (terminating derivative lawsuit where "[t]he only goal of this suit appears to be fees for the plaintiffs' lawyers"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (Rakoff, J.) ("an excessive compensation proposal can cast in doubt the ability of proposed lead counsel to adequately represent the class."). Representatives are not adequate if they endorse a settlement where class counsel, the named representatives and the settlement administrator capture the entire constructive common fund; they have not discharged their "obligation to represent the interests of the class in dealings with both the defendant and class counsel." *Southwest*, 799 F.3d at 714.

In fact, the path of these proceedings confirms the impression that this settlement revolves around the $525,000 fee rather than any "vigorous[] prosecut[ion] [of] the interests of the class." *Pampers*, 724 F.3d at 721. Within three days of the first constituent case being filed in this litigation, the defendant had openly pledged to ensure that in the future it would make every effort to assure that its footlong sandwiches were twelve inches long. Within six months of formation of the MDL, the plaintiffs had entered settlement mode, having filed the Consolidated Complaint that lays the groundwork for this feeble (b)(2) settlement by sacrificing any chance of compensation for class members in December 2013. *See Day v. Whirlpool Corp.*, 2014 U.S. Dist. LEXIS 169026, at *17-*18 (W.D. Ark. Dec. 3, 2014) ("While there is no question that settlement is viewed as a favored outcome, when a plaintiff begins a lawsuit with the desire to negotiate settlement rather than the

---

[4] *Creative Montessori*, 662 F.3d at 917.

desire to be "made whole," and does not even press his attorney to conduct discovery to determine the likelihood of victory on the merits or to give some context to the terms of the settlement offer, the Court is concerned that such a plaintiff will not vigorously prosecute the interests of a class."). Plaintiffs engaged in no substantive litigation motion practice aside from a placeholder certification motion (Dkt. 19), filed for the purpose of avoiding an offer of settlement that would moot the class action, and mooted when the defendant agreed they would not make such an offer. By March 2014, the settling parties had publicly memorialized an understanding regarding the class's relief (Dkt. 27; Settlement ¶10), yet they required more than a year of contentious negotiation and mediation (including a day long mediation before the Court after an impasse was encountered) to reach agreement on the $525,000 fee. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d at 1128 (finding fact that the settlement was reached nine months after filing to "suggest that representation of the class during the negotiations was less than vigorous"). As common sense dictates, and this case illustrates, a defendant will fight much harder when being asked to fork over real money than when being asked to codify its existing practices in injunction form.

Federal courts have seen—and rejected—arrangements like this before. In *Pampers*, approximately 50 class representatives had signed off on a settlement that granted them "incentive awards" of $1000 each per affected child, afforded class counsel a hefty fee, while leaving absent class members with prospective injunctive relief and the right to participate in a money-back guarantee program that was already available to them before the settlement. 724 F.3d 713. The Sixth Circuit found that under the terms of the agreement, adequacy of representation was lost because in essence, "there [was] no overlap between" the deal obtained by the class representatives and that obtained by the class itself. 724 F.3d at 722. Upon attaining the defendant's consent to supercompensatory recovery, the class representatives had no remaining "interest in vigorously prosecuting the interests of unnamed class members." *Id.* In other words, they are no longer in the same boat as class members. The negotiated settlement here mirrors *Pampers*: the ten named plaintiffs obtain $500 service awards, class counsel obtains a hefty fee, and absent class members receive only injunctive relief that added nothing to what was already available to them. Also, as in

*Pampers*, the named representatives here are binding themselves to a broader release than absent class members, amounting to a side settlement that highlights the leveraging of the class device. Settlement ¶47.

The Sixth Circuit found no comfort in the fact that bargaining for incentive awards was common practice. *Id.* It announced a general rule that courts "should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Id.*; *see also Radcliffe*, 715 F.3d at 1165 (observing that incentive awards can induce a named representative to be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large.").

The Seventh Circuit's stance is more nuanced, permitting named representative incentive awards where a settlement confers a real benefit upon class members. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). More relevant here, however, is that on several occasions the Seventh Circuit has held that incentive awards are unsustainable where absent class members recover nothing more than a pittance.

In *Crawford v. Equifax Payment Servs.*, the settlement proposed a $2,000 payment to the lead plaintiff, $78,000 to class counsel, $5,500 to a non-class legal aid clinic and an injunction against the defendant from using the form that allegedly violated the Fair Debt Collection Practices Act. 201 F.3d 877, 880 (7th Cir. 2000). Repudiating the settlement, the Seventh Circuit concluded that the "fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not [be] approved under Rule 23(e)" *Crawford*, 201 F.3d at 882. In *Murray v. GMAC Mortg. Corp.*, the parties proposed a settlement that would pay the named representative $3,000 while leaving each absent class member with less than a dollar per capita. 434 F.3d at 952. *Murray* held such a settlement to be "untenable" with the likely upshot that the class representative "is not a good champion" and "that her law firm…is not an appropriate counsel." *Id.*

10

Even in *Espenscheid*, where Judge Posner endorsed incentive awards to reward a class representative who produces real value, he noted that "[o]ne can imagine for example a case in which the representative presses for an incentive award so large in relation to the judgment or settlement that if awarded it would significantly diminish the amount of damages received by the class. He would then have a clear conflict of interest as class representative. The present case, however, is not a consumer class action, in which damages per class member tend to be slight." 688 F.3d at 875-76 (citing cases where courts found disproportionate incentive awards to have undermined adequacy of representation). This is the case Judge Posner has imagined; it is a consumer case where damages are slight. And because the class's representatives' (named plaintiffs and class counsel) lump-sum $525,000 compensation consumes the entire constructive common fund, their representation is inadequate on the face of the agreement.

### B. 23(b)(2) certification is not warranted because injunctive relief is not "appropriate with respect to the class as a whole."

Rule 23(b)(2) allows a class action to be maintained if 23(a)(1)-(4) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2), however, lacks several vital procedural protections that are afforded to absent class members in a (b)(3) class, paramount among them the statutory rights to exclude oneself and to the "best notice that is practicable." Given this divergence in treatment, courts must be even more vigilant in their enforcement of the specifications of (b)(2). The most potent textual protection is the requirement that "final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2); *Dukes,* 131 S. Ct. at 2560 ("[T]he validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole.*'" (quoting Rule 23(b)(2) and adding emphasis)).

Two consequences follow from this textual prescription. <u>First</u>, (b)(2) classes are not suitable, in fact they are "necessarily improper" for class claims alleging economic harm, at least when such claims accrue on an individual basis. *Kartman v. State Farm Mut. Auto. Ins. Co.,* 634 F.3d 883, 892 (7th

11

Cir. 2011); *see also Dukes*, 131 S. Ct. at 2557 ((b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages"). Second, "cohesiveness is a significant touchstone of a (b)(2) class." *Blackman v. District of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011) (Brown, J., concurring) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 & n.18 (3d Cir. 1998)); *accord Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006) ("homogeneity of interests" required for mandatory class treatment); *Lemon v. Int'l Union of Operating Eng'rs, Local No.* 139, 216 F.3d 577, 580 (7th Cir. 2000) (requiring "cohesive and homogenous" interests). The putative class here lacks a homogeneous interest in prospective injunctive relief and asserts individual consumer fraud claims for which damages is an adequate remedy, both of which preclude (b)(2) certification.

Determining whether injunctive relief is appropriate, and thus whether (b)(2) certification is appropriate is made more complicated by the fact that plaintiffs and defendants seek certification of a settlement-only class. Delaying certification until settlement poses various problems, *see GM Trucks*, 55 F.3d at 786-800, and calls for heightened judicial scrutiny of the certification, *id.* at 807; *accord Pampers*, 724 F.3d at 721; MANUAL FOR COMPLEX LITIG. § 21.612.

If this class were being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to the complaint and determine whether any monetary relief sought is incidental;[5] and (2) make sure that the class has the requisite cohesiveness and homogeneity. The second step of the inquiry alternatively can ask whether the injunctive relief predominates from the perspective of the class; indeed, whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2); *Dukes*, 131 S. Ct. at 2560. But because this is a settlement class, two new factors complicate the analysis: (3) the actual relief

---

[5] At a minimum *Dukes* forbids courts from certifying "claims for individualized relief" within (b)(2) classes. 131 S. Ct. at 2557. Contrasting with individualized damages claims are "incidental damages": those "that flow directly from liability to the class *as a whole*" on the claims forming the basis of the injunctive or declaratory relief." *Dukes*, 131 S. Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998).

obtained in the settlement; and (4) the claims released in the settlement. *See Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) (explaining how to discern "predominance" in a (b)(2) settlement class and focusing on "retrospective" class definition to find certification improper).

If any of the above four factors counsel against certification, the court may not certify a mandatory (b)(2) class. Here the certification fails on the second prong; injunctive relief is not appropriate with respect to the class as a whole in light of the retrospective definition of the putative class, the type of claims class members possess, and the injury as alleged in the complaint. The parties may not end-run this conclusion by amending the operative complaint to effectuate a non-compensatory injunctive-relief-only settlement.

### 1. Monetary claims predominate from the perspective of the class and its representatives.

The fact that injunctive relief is inappropriate with respect to the class as a whole is apparent from the class definition. The class is defined as "all persons in the United States who *purchased* a Footlong or Six Inch sandwich at a Subway restaurant any time between 2003 and the date of preliminary approval" Settlement § I.B. (emphasis added). Cohesive classes coalesce behind a common interest that makes appropriate the granting of final injunctive or corresponding declaratory relief. No such interest exists here. In this case there is a discontinuity between the class definition—former buyers—and the prospective injunctive relief sought in the Consolidated Complaint (Dkt. 18 at 26) and obtained in the settlement. Settlement ¶22. All settlement relief could benefit only future purchasers of Subway sandwiches, but the class comprises past purchasers.

*Hecht* demonstrates how attempting (b)(2) certification is futile: when class members are "victims of a completed harm with no reference to ongoing injury or risk of future injury," when the definition "ensure[s] that every member would be entitled to damages, but not that every member would have standing to seek injunctive relief," (b)(2) certification is improper. 691 F.3d at 223-24. *Hecht* follows a wide consensus of courts that have rejected attempts at shoehorning former customers, ex-employees, or any individuals who suffered a discrete harm in the past and who no longer have an ongoing relationship into 23(b)(2) classes that offer prospective injunctive relief. *See*

*e.g., Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 553 (5th Cir. 2003); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d. 177, 184 (D. Mass. 2009).

> *Dukes* eliminates any doubt that may have remained in the wake of these cases:

> > [E]ven though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole,*" about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court's time.

131 S. Ct. at 2560 (internal citation omitted). Thus, post-*Dukes*, courts frequently deny (b)(2) certifications as inconsonant with retrospectively-defined classes. *See e.g.*, *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 406 (W.D.N.Y. 2013) (denying (b)(2) certification where class was defined as those who had "*received*" telephonic messages in the past) (emphasis in original); *Haggart v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767, at *20 (W.D. Pa. Jun. 28, 2012) ("Even more essentially fatal to his motion for certification under (b)(2) is that Plaintiff only seeks to enjoin Defendant from making representations to future potential EsophyX procedure patients; i.e., to individuals who are not members of the class as defined."); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457, at *37 (E.D. Pa. Jun. 19, 2013) (class of past purchasers of beer steins could not be certified under (b)(2)). Commentators have also recognized the problem of mandatory injunctive relief settlement classes that remit no benefit to the class. *See e.g.*, Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729, 740 (2006) (applying their critique to all cases "where the class includes former customers who will not benefit from injunctive relief unless they choose to do business with the defendant in the future.").

Certainly, a 23(b)(2) class is appropriate when the class comprises individuals who maintain an ongoing relationship with the defendant. The prototypical example is a desegregation injunction

in a civil rights case. *See* Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). "While (b)(2) classes are not exclusively reserved for civil rights disputes, this class type is especially suited for those plaintiffs." *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 200-201 (5th Cir. 2010). But when the only shared characteristic amongst class members is that they have purchased a Subway sandwich some time in the past twelve years, the requisite homogeneous interests necessary to cohere a class around injunctive relief are not present. "[A]t some level of abstraction, a degree of cohesion will exist in almost any putative class," but fundamentally "the question is not one of fault but one of remedy." *Blackman*, 633 F.3d at 1094. It is not logically possible to suggest that all class members will again purchase Subway sandwiches in the future.

The problem of mismatch between (b)(2) and the class is compounded here by the fact that the named plaintiffs have themselves no standing to seek injunctive relief. The rule of law is simple: "Unless the named plaintiffs are themselves entitled to seek injunctive relief they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 U.S. Dist. LEXIS 107928, at *8 (N.D. Ill. Aug. 1, 2013) ("[The named plaintiff] cannot rely on the prospect that other consumers may be deceived by [defendant's] product to show that she has standing to pursue injunctive relief."). Regardless of whether the underlying statutes permit injunctive relief, injunctions are "unavailable…where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-24 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Here, according to the Complaint, the Plaintiffs and the proposed class "purchas**ed**" Subway subs in reliance on misrepresentations of the defendant as to length, "receiv**ed**" less food than they bargained and therefore "suffer**ed** an injury" Complaint ¶¶21, 42-43 (emphasis added). Like the class, they suffered discrete harms in the past. But, perhaps unlike some putative class members, they are now aware, and were aware at the time the suit was filed, that Subway's Footlong subs are "routinely…shorter than one foot…in length." See Complaint ¶36.

"[T]he law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). Thus, in

15

*McNair*, the Third Circuit held that the named plaintiffs had no standing to seek an injunction against deceptive renewal techniques when they were no longer subscribers at risk of being deceived by that technique. *Id.* at 226-27; see also *Morris v. DaVita Healthcare Partners, Inc.*, 308 F.R.D. 360, 369 (D. Colo. 2015) ("named plaintiffs cannot seek injunctive relief where the alleged injury is the concealment of information that they now possess."). When the named plaintiffs in the future purchase Footlong subs, as they assert they will (Complaint ¶22), there will be no deception about the variability of loaf length.

*McNair*'s theory applies seamlessly to consumer fraud claims on retail products. *See, e.g.,* *Stoneback*, 2013 U.S. Dist. LEXIS 86457, at *37 ("[B]ecause plaintiffs now know the origin of the steins and mugs, it is difficult to discern how they would be injured by future misrepresentations from defendants."); *Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, 2012 U.S. Dist. LEXIS 51460, at *17 (D.N.J. Apr. 11, 2012) ("Plaintiff cannot plausibly demonstrate that he is likely to be fooled into purchasing Defendants' products."); *Veal v. Citrus World*, No. 2:12-cv-891-IPJ, 2013 WL 120761, 2013 U.S. Dist. LEXIS 2620, at *22 (N.D. Ala. Jan. 8, 2013) (following Robinson in case alleging misrepresentative labeling of orange juice as "fresh squeezed" and "pure"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (*sua sponte* raising lack of standing to seek injunction on false advertising claim when plaintiffs knew the truth about defendant's products); *but see Richardson*, 991 F. Supp. 2d at 191, 195 (holding that named representatives have standing to seek injunctive relief where they there were "repeat past purchases, brand loyalty, allegations of ongoing purchases, and an injury unconnected to the performance of the product combin[ing] to show that future injury [wa]s likely"; still rejecting certification and settlement on other grounds). Neither the class as defined nor the class representatives befit a (b)(2) injunctive certification.

## 2. Monetary claims predominate from the perspective of the operative complaint and the class's asserted claims.

In determining whether injunctive relief predominates for (b)(2) purposes, analyzing the complaint is customary procedure in courts across the nation. *E.g., Reeb*, 435 F.3d at 642. "If

16

recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go it alone—or not at all." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006). Even where the court is dealing with a settlement-only class certification, looking to an adversarial complaint is still advisable. *See Hecht*, 691 F.3d at 223 ("The … complaint requested 'the maximum statutory damages' under the FDCPA but failed even to mention injunctive relief."); *Crawford*, 201 F.3d at 881 ("Crawford's pleadings sought certification under Rule 23(b)(3), and the switch to Rule 23(b)(2) was a last-minute change.").

Here too, as in *Crawford*, the operative complaint in preparation for settlement pulled a last minute switch to seeking solely injunctive relief and a (b)(2) certification. Yet still the language of the complaint speaks, as it must, of past injuries incurred. E.g., Complaint ¶60 ("Plaintiffs and Class members have been damaged in that they have received less than they bargained for."). Disingenuous attempts to turn monetary claims into injunctive do not suffice to satisfy (b)(2). *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 (7th Cir. 2011)

*Kartman* itself in fact disposes of this proposed (b)(2) certification. As in *Kartman*, the plaintiffs in this case "have only one cognizable injury—underpayment [of loaf on subway sandwiches]—and prospective injunctive relief is not a proper remedy for that kind of injury." *Id.* at 888-89. "The proposed injunction would not be an appropriate remedy for any single plaintiff, let alone for the class as a whole. To begin with, the plaintiffs cannot satisfy the test for a remedy in equity. An injunction requires a showing that: (1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury…" *Id.* at 892. *Accord Richards*, 453 F.3d at 531 n.6 ("The general rule is that injunctive relief will not issue when an adequate remedy at law exists."); *Segal v. Bitar*, 2015 U.S. Dist. LEXIS 76620, at *43-*44 (S.D.N.Y. May 26, 2015) (denying (b)(2) settlement certification when money damages were an adequate remedy at law). Putting together the pieces, we can see why (b)(2) classes are far more suited to remedying civil rights and environmental violations than consumer fraud cases.

As in *Kartman*, "[t]his case cannot satisfy the basic requirements for an injunction. First, the plaintiffs have not suffered irreparable harm. Their injury—the underpayment [of loaf on subway

sandwiches]—is easily remedied by an award of money damages, a fully adequate remedy. It follows that class certification under Rule 23(b)(2) is **necessarily improper**." *Id.* (emphasis added). That monetary damages are an adequate remedy for consumer protection claims is underscored by the fact that, while the statutes vary from state to state, many do not allow private plaintiffs to act as private attorneys general and limit such plaintiffs to monetary relief. *See, e.g.*, *Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 283 Fed. Appx. 139, 142 (4th Cir. 2008) (private parties cannot seek injunctive relief under Virginia consumer protection law); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 161 (Mo. Ct. App. 2006) (private parties cannot obtain injunctive relief to protect the general public under Missouri consumer protection law); *accord* Memorandum in Support of Preliminary Approval, Dkt. 46-1 at 11 (citing authorities which show that the consumer protection laws of Illinois, New Jersey, Pennsylvania, Wisconsin and Arkansas do not allow private plaintiffs to sue for injunctive relief). A (b)(2) certification cannot lie where the underlying law allows only for a damages remedy. *Crawford*, 201 F.3d at 882; *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) ("Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion.").

Even if prospective injunctions were permissible remedies for every consumer protection statutory claim, monetary claims under those causes of action are not incidental. This is because these claims are "dependent in significant way[s] on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Compensatory damages and restitution amounts vary with the individual purchase price and quantity. Any potential statutory liquidated damages would vary depending upon the geographical location of the individual purchase. Ryan P. O'Quinn & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295, 305-06 (2011) (cataloguing state by state variation). Given the lack of available injunctive relief under myriad state consumer protection laws and the individualized nature of the claims, "Rule 23(b)(3) [is] the only conceivable vehicle for [a nationwide consumer fraud] claim." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

More fatal yet for the (b)(2) certification, the parties haven't proved that the injunction alters the status quo. *See supra* § II.A. If not, there is no factual predicate to seek injunctive relief or to certify a Rule 23(b)(2) class. Injunctions are "unavailable…where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-24 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In these circumstances, the First Circuit held (b)(2) certification to be reversible error. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 11-16 (1st Cir. 2008); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) ("[I]t appears the [misrepresentation] has already been removed from EZ Seed's packaging, and it is not clear what additional injunctive relief plaintiffs seek. Thus, certification of a 23(b)(2) class does not appear necessary."). Even if the defendant backtracks on its practice and policy changes, some class members may again purchase Subway sandwiches, but others may not, and therefore the remedy is not a unitary and indivisible injunction "benefitting all its members at once." *Dukes*, 131 S. Ct. at 2558. Especially given defendant's remedial promises, this Court should not be satisfied that "a reasonable plaintiff, based on…economic calculus, would have sued solely for [injunctive relief], not merely that a lawyer could have been found who would have located a plaintiff and brought a class action in the hope of a fee." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (quoting *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 73 (S.D.N.Y. 2002)).

The allegations of the complaint, the type of claims at issue, and the circumstances of the remedial activities dictate that, if anything, this class should be certified as a 23(b)(3) class.

### 3. Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief.

Although it is a necessary precondition to a (b)(2) settlement certification that the class obtain injunctive relief and that the settlement release confine itself to injunctive claims, it is not a sufficient one. *Contra* Memorandum in Support of Preliminary Approval, Dkt. 46-1 at 15. As shown by *Hecht*, *Crawford*, and *Kartman*, *inter alia*, this Court must also consider the class definition, the injuries alleged, and the claims pled. This case is a perfect instantiation of why Rule 23(b)(2) cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of

relief they seek. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing Dukes); contrast Declaration of Stephen DeNittis, Dkt. 46-1, Exh. B (opining that injunctive relief claims "would likely be of most value and benefit to the class"). Nor can the rule be read to allow the class representatives' subjective intentions to govern the predominance inquiry. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

Despite "all the high-minded rhetoric plaintiffs' and defense attorneys may attach to the virtues of opt-outs, all such principles will be abandoned when plaintiffs' and defense interests converge on the utility of the mandatory classes." Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177, 241 (2003). That point of convergence is at the time of settlement, when the defendants seek to broaden the global peace they will attain, and the plaintiffs would prefer not to have to overcome the (b)(3) hurdles of predominance and superiority, and the burden of sending absent class members real notice. *See In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a [mandatory] class is impermissible and highlights the problem with defining and certifying class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (evincing concern that "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections"); Martin H. Redish, WHOLESALE JUSTICE: CONSTITUTIONAL DEMOCRACY AND THE PROBLEM OF THE CLASS ACTION LAWSUIT 11 (2009) (discussing atttorneys' incentive to argue for mandatory certification); Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109, 1119 (2011) ("Settling shifts the game into a peacemaking mode where achieving finality means keeping as many class members as possible in the settlement.").

Putative class members have become the "sacrificial pawn." *See* Mullenix, *supra*, at 241. The incentives no longer align the settling parties with protecting the interests of unnamed parties. The Court is the last line of defense and must conduct an independent evaluation of whether monetary claims predominate. They do.

**III.    Even if the class were certifiable, this settlement is not fair.**

This Court should reject the settlement on the various grounds that demonstrate that the underlying class cannot be certified as requested. *See supra* § II. These arguments bleed into the corollary 23(e)(2) question of whether the settlement is "fair, reasonable and adequate." For instance, if final injunctive relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be *per se* inadequate. Similarly, when the terms of settlement manifest inadequate representation of absent class members, it follows that the settlement is unfair. Nonetheless, there are several independent reasons why this Court should reject the settlement under 23(e) even if it accepts that the class itself is viable.

There is no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979); *Pampers*, 724 F.3d at 719 (compiling cases and authorities); *accord* American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.05(c) (2010) ("In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable."). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

Courts "'must be particularly vigilant'" not only for explicit collusion, but also for more "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations.'" *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *accord Pearson*, 772 F.3d at 787 (district courts must be "vigilant and realistic" in their review, nixing "selfish deal[s]" that "disserve" the class). Although it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. Just last year the Seventh Circuit described it as "naïve" to "bas[e] confidence in the fairness of the settlement on its having been based on 'arms-length negotiations by experienced counsel.'" *Redman*, 768 F.3d at 629.

In order to approve a settlement, courts must scrutinize the agreement to ensure it is not a "selfish" product of the "acute" and "built-in conflict of interest" between class counsel and the

21

class. *Pearson*, 772 F.3d at 787; *Redman*, 768 F.3d at 629; *accord Pampers*, 724 F.3d at 718 (settlement unfair if it affords "preferential treatment" to class counsel); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (delineating three telltale signs of a lawyer-driven settlement).

Mutual self-interest of class counsel and defendants leads to the most common settlement defects—those of allocation. This is because "the adversarial process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717 (emphasis in original). "[A]n economically rational defendant will be indifferent to the allocation of dollars between class members and class counsel … [c]aring only about his total liability." *Pearson*, 772 F.3d at 786. Not unexpectedly, then, the foremost 23(e)(2) deficiency here relates to the issue of allocation: class counsel and the named representatives are seizing the entirety of the available cash proceeds, thus leaving class members with zero recovery.

### A. The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement.

The settlement agreement permits class counsel to seek, unopposed, an award of fees, costs, and class representative awards totaling up to $525,000. Settlement ¶¶ 39-41. Putative class members are entitled only to injunctive relief that appears to duplicate practice changes that the defendant has already implemented. *Id.* ¶22. As in *Pampers*, the signs of an unfair deal that affords preferential treatment to class counsel are "not particularly subtle." 724 F.3d at 718.

Federal courts have begun to give determinative content to the abstract question of when a settlement is unfairly tilted in the direction of class counsel. The first, and most blatant, warning sign is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *GM Trucks*, 55 F.3d at 803 ("non-cash relief … is recognized as a prime indicator of suspect settlements"); *Richardson*, 991 F. Supp. 2d at 204 (D.D.C. 2013) (citing *Crawford* in finding similarly structured settlement unfair); *Grok Lines*, 2015 U.S. Dist. LEXIS 124812, at *21 ("$98,000 for the attorneys and $0 for the class members" does not "strike the right balance").

22

"[T]he ratio that is relevant is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at 781 (quoting *Redman*, 768 F.3d at 630). Here, the putative (b)(2) class members receive only meaningless injunctive relief while the settlement agreement permits class counsel and the named representatives to seek and divide, unopposed, an award of fees and costs of $525,000.

"[E]specially in consumer class actions … the presumption should…be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 778 F.3d at 782. A proportionate attorney award hews to the 25% of the fund benchmark.[6] Conversely, an award that vastly exceeds this benchmark is disproportionate and renders the settlement unfair. *See, e.g., Pampers*, 724 F.3d 713 (vacating settlement where fees cannibalized $2.7 million of the $3.1 million constructive common fund value); *Bluetooth*, 654 F.3d at 945 (vacating approval where fees amounted to more than 83% of the constructive common fund); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish"); *Redman*, 768 F.3d at 630-32 (55%-67% fee allocation unfair); *Eubank*, 753 F.3d at 727 (56% fee allocation unfair); *Crawford*, 201 F.3d at 882 (settlement where class counsel and named representatives captured all the cash "should not have been approved under Rule 23(e)").[7] To reach the appropriate ratio here, the class benefit would have to be valued at more than $1.5 million. The burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719. They must

---

[6] *See In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1014 (E.D. Wis. 2010) ("[T]he mean fee in 'consumer' cases is 25%.") (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248, 262 (2010)).

[7] Plaintiffs would like to justify their award based on the fact that it equates to less than 50% of their claimed lodestar. Class Counsel's Fee Petition (Dkt. 50) at 9; *id.* at 10 n.4 (court "need not necessarily consider" the fee in relation to the value of the benefit conferred upon class members). The Seventh Circuit rejects this methodology. *Redman*, 768 F.3d at 635 ("[H]ours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel. The judge could start with hours but couldn't rightly stop there.").

23

demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010).

But, as a matter of law, the injunctive relief that this settlement offers is not worth $1.5 million. For a period of four years from the effective date, the defendant will agree to keep in place or put in place several compliance measures, including for example, a requirement that franchisees have a tool (read: ruler, measuring tape or unusually long protractor) to measure bread length at each Subway location. Settlement ¶¶22-24.

First and foremost, neither the settlement nor the class notice bear their burden to describe which practices changes preceded the settlement. It is not simply enough to state, as the settling parties do, that all changes came after the filing of the initial lawsuit because it is "the *incremental* benefits that matter" "not the total benefits." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002); *see also Aqua Dots*, 654 F.3d at 752; *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1090 (C.D. Ill. 2012) (voluntary remedial measures independent of the settlement "should not considered part of the benefit for forfeiting the right to sue"); *Pampers*, 724 F.3d at 719; *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003). "The Settlement's value to consumers in requiring Defendant to cease [allegedly unlawful activity], however, depends on the probability that [Defendant] would have voluntarily ceased [that activity] independent of the Agreement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 960 (N.D. Ill. 2011). "[A] settlement agreement on paper that appears to be a dam holding back a flood is superfluous if there is nothing to hold back." *Grok Lines*, 2015 U.S. Dist. LEXIS 124812 (N.D. Ill. Sept. 18, 2015); *see also Pearson*, 772 F.3d at 785 (bemoaning "substantively empty" prospective injunctive relief). As in *Grok Lines*, the changes codified in this settlement are "nothing more than ordinary steps that any business might take on its own,"[8] and in fact include steps the defendant did take after it encountered the social media maelstrom and the institution of several federal lawsuits in early 2013.

---

[8] 2015 U.S. Dist. LEXIS 124812, at *16-*17

Moreover, as far as Frank can discern, the parties have not even attempted the required quantification of "the overall value of the settlement offer to class members." *Synfuel Techs., Inc. v. DHL Express (USA)*, *Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (Wood, J.); *Eubank*, 753 F.3d at 720. Although the plaintiffs have estimated that the cost to Subway will be approximately $9 million (see Fee Petition at 10 n.4), that is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)); *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) (putting defendant out of business not valuable to class members). But at least there have been no other disingenuous attempts using pseudo-scientific valuation, which "quite rightly" count for nothing. *Pearson*, 772 F.3d at 786; *see generally In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency problem).

However, even if the parties were to disambiguate which of the injunctive changes are non-duplicative and even if they were to provide a credible quantification of the value to the public at large of said changes, a $1.5 million *class* valuation still could not stand as a matter of law, simply because "it is future customers who are not plaintiffs in this suit who will reap…the benefit from these changes. The [adversarial] class complaint[s] specifically sought a sum of money that represents the difference between the illegal penalties imposed on the Plaintiff and the Class and the amount that should have been imposed. The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654; *accord Pampers*, 724 F.3d at 720. Even where the "injunctive relief [is a] substantial benefit[] secured under the settlement agreement, [it] benefit[s] the public and future consumers of [the defendants' product]—not Class members for past injuries—and cannot be a key consideration in determining the fairness of the settlement." *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *15 (N.D. Ill. Jan. 3, 2014), *aff'd on this point*, 772 F.3d 778, 785-86. "Future purchasers are not

members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786; *see also Crawford*, 201 F.3d at 880 (defendant's injunctive agreement not to use the abusive debt collection letter that was at issue is a "gain" of "nothing" for class members). These are proper recognitions of the principle that the class is composed of people who have done business with the defendants *in the past*; while the prospective injunctive relief can only benefit those who do business with defendants *in the future*.[9]

Illusory non-class injunctive relief simply does not justify a $525,000 Rule 23(h) award to class counsel and the named representatives. The first warning sign of a lawyer-driven deal is apparent.

A second telltale indication of preferential treatment is the presence of a "clear-sailing" clause (whereby defendant consents not to challenge the award of fees to plaintiffs' counsel). This is also present here. Settlement ¶ 41. "Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.'" *Vought*, 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari). It indicates that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991)).[10] As such, the Seventh Circuit has designated a clear-sailing clause to be a "questionable feature" that "at least in a case…involving a non-cash settlement award to the class…should be

---

[9] Note that this is ***not*** an argument that injunctive relief is ***never*** a benefit to the class. There are settlements where class members receive appropriate injunctive relief that redresses their past injuries. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (class members received "a redesigned improved replacement latch to be installed free of charge.").

[10] Although class benefits and fees were negotiated separately, that does nothing to allay any conflict unless "fee negotiations [are] postponed until the settlement was judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005); *Pearson*, 772 F.3d at 786-87; *Richardson*, 991 F. Supp. 2d at 204; *contra* Fee Petition at 3-4

26

subjected to intense critical scrutiny." *Redman*, 768 F.3d at 637; *see also Weinberger*, 925 F.2d at 525; *accord Bluetooth*, 654 F.3d at 949; William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions.").

A third telltale indication of preferential treatment is the presence of a "kicker" clause (whereby class counsel's fee fund is segregated from the class benefit such that any unawarded fees revert to the defendant rather than going to benefit the class). This too is present here. Settlement ¶39. A reversionary fee structure is an inferior settlement structure for one principal reason: the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949 ("The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees.").

Fee segregation thus has the self-serving effect of protecting class counsel by deterring scrutiny of the fee request. *See Pearson*, 772 F.3d at 786 (calling it a "gimmick for defeating objectors"). A court and potential objectors have less incentive to scrutinize a request because the kicker combined with the clear-sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker is *per se* unethical).

Several times within the past two years, the Seventh Circuit has spoken out forcefully, declaring that segregating and insulating the fee award begets a "strong presumption of…invalidity." *Pearson*, 772 F.3d at 787; *accord Redman*, 768 F.3d at 637 (segregation is a "defect"); *Eubank*, 753 F.3d at 723 (segregation is a "questionable provision"); *Southwest Airlines Voucher Litig.*, 799 F.3d at 712 ("Clear-sailing and kicker clauses weigh substantially against the fairness of a settlement" but are not *per se* forbidden when class members attain full recovery). Despite the Seventh Circuit's admonitions, class counsel here persists in fabricating benefits of the segregated fee structure. *See* Fee Petition at 1

("this monetary award will be paid separately by defendant, and thus will not impact class recovery in any way.").

Given the teachings of *Redman* and *Pearson*, this settlement must fall. Even were the fees reduced by 80%, the settlement would still be too lopsided to approve. *See Crawford*, 201 F.3d at 882 ($78,000 - $0 ratio unsupportable); *Grok Lines*, 2015 U.S. Dist. LEXIS 124812 ($98,000- $0 ratio unacceptable).

### B. Rule 23(h) does not permit lead counsel to privately divide a lump-sum fee award.

Settlement ¶42 provides in part that "Lead Class Counsel will be responsible for determining in their sole discretion the allocation of attorney's fees, costs and expense among Class Counsel." Rule 23(h) authorizes the Court to award "reasonable" attorneys' fees only when notice of the fee request is "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h), (h)(1). Undermining the "active judicial involvement in measuring fee awards [that] is singularly important to the proper operation of the class action process,"[11] paragraph 42 impermissibly attempts to delegate the Court's role to Lead Class Counsel, without any oversight from absent class members.

It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *accord Redman*, 768 F.3d at 637-38 (following *Mercury*). The fee request in this case lacks basic information; it fails to provide even the bare bones of who seeks what, instead providing a lump sum for Lead Class Counsel to distribute at their sole discretion. This extra-judicial award undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Mercury*, 618 F.3d at 994. *Cf. also* Wis. R. Prof. Conduct 1.5(e) (explaining heightened thresholds of reasonableness review where two lawyers from different firms attempt to divide legal fees).

---

[11] Notes of Advisory Committee on 2003 Amendments to Rule 23.

As the Fifth Circuit illuminated: "In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court "must not . . . delegate that duty to the parties." *Id.* at 228 (internal quotation omitted). The appellants in *High Sulfur* complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot compare apples to oranges without knowing what the oranges are." *High Sulfur*, 517 F.3d at 232.

*High Sulfur* also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. "It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro of the Third Circuit had noted earlier, 'They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" *Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)).

Furthermore, the *High Sulfur* fee agreement is comparatively inoffensive. In *High Sulfur,* at least the district court judge had the fee committee's recommendation available. Here, not only is there no recommendation for the both the Court and class, there isn't even an assurance that class counsel will determine a "fair and reasonable" allocation at some time in the future.

Even long before the implementation of 23(h), the Second Circuit "reject[ed] this authority…to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." *In re Agent Orange Prods. Liab. Litig*, 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable fund cases." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226.

23(h) is not meaningless formality; good public policy demands a court to be the one allocating the fees. If one of the law firms has secretly agreed to accept a lower amount or percentage of its lodestar, it is the class that is entitled to that giveback, not another law firm that, unbeknownst to the class and the court, extracted a return greater than suggested by its lodestar. *Pearson*, 772 F.3d at 786. Perhaps one firm is entitled to a larger percentage of its lodestar than another firm, or a disproportionate share of the lump sum awarded to counsel, but those reasons should be revealed and tested in court. *Cf.* MANUAL FOR COMPLEX LITIG., FOURTH, § 14.11 at 186; *see generally* Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. REV. 71 (2015) (illuminating repeat-player phenomenon and concluding that fees should be allocated "through a transparent process, not through the backdoor of settlement"). When fee awards are made publicly, the class realizes gains through intra-counsel competition and self-policing. An efficient firm will not let an inefficient one get away with excess hours. On the contrary, if fees are awarded on a lump-sum basis, any subsequent fat-trimming will occur too late to benefit class members.

This Court must inquire whether there is any fee-division agreement between Lead Class Counsel and ancillary class counsel. If so, it must be revealed both to the Court and to the class. Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ. P. 23(e)(3) (requiring the parties seeking approval to file a statement identifying any agreement made in connection with the proposal). This violation of 23(h) dictates that the fee request should be denied and that the settlement is unfair.

## CONCLUSION

As proposed, the settlement is unlawful. It presupposes a certification that, consistent with Rule 23 and the Constitution, must not be granted. Class Counsel is handsomely compensated for alleged wrongs committed against class members, while absent class members obtain negligible to no relief. To approve such a settlement would condone abuse of the class action mechanism of class counsel's selfish ends.

Dated:  December 15, 2015

Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
Competitive Enterprise Institute,
Center for Class Action Fairness
1899 L Street, NW, 12th Floor
Washington, DC 20036
Telephone:  (610) 457-0856
Email:  adam.schulman@cei.org

*Attorney for Objector Theodore H. Frank*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 15, 2015, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

In addition, in accordance with the Class Notice and Preliminary Approval Order he caused to be mailed via USPS first-class mail a copy of the foregoing to the following recipient:

Clerk of Court
United States District Court
517 East Wisconsin Avenue
Milwaukee, WI 53202


Dated: December 15, 2015

By:     /s/Adam Schulman
        Adam Schulman

32