# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN RE: SUBWAY FOOTLONG ) | |
| SANDWICH MARKETING AND ) | Case No. 2:13-md-02439-LA |
| SALES PRACTICES LITIGATION ) | |

This document relates to all cases

## THEODORE H. FRANK'S
## DECLARATION IN SUPPORT OF
## OBJECTION TO PROPOSED SETTLEMENT

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My full name is Theodore Harold Frank. My business address is Competitive Enterprise Institute, 1899 L Street NW, 12th Floor, Washington, DC 20036, and my phone number is 202-331-2263. My email address is ted.frank@cei.org. I am a United States resident, currently domiciled in Houston, Texas. I will be relocating to Washington, DC, on January 1, 2016.

3. During the class period of 2003-2015, I purchased dozens of six-inch or foot-long Spicy Italian or Turkey sandwiches at Subway restaurants in, *inter alia*, Washington, DC (at the 1666 K Street NW location, the 1444 Eye Street NW location, and the Union Station location); Arlington, VA (at the 4227 Fairfax Drive, 4238 Wilson Drive, and 801 N. Quincy St. locations); or Houston, TX (at the 1556 W. Gray St. and IAH Terminal C locations). I am not an officer, director, employee or agent of Defendant, nor am I a Related Party, governmental entity, judge presiding over the litigation or immediate family member thereof.

4. I am thus a member of the proposed settlement class with standing to object. *See* Fed. R. Civ. P. 23(e)(5).

5. None of the proposed injunctive relief benefits me or matters to me in the slightest.

6. On information and belief, the proposed relief duplicates existing measures put in place by defendant after the controversy broke in early 2013. A true and correct copy of the article written by Rachel Tepper, *Subway Pledges to Ensure Every "Footlong" Is Twelve Inches*, THE HUFFINGTON POST (Jan. 25, 2013), http://www.huffingtonpost.com/2013/01/25/subway-footlong-scandal_n_2550156.html is attached to this declaration as Exhibit 1. A true and correct copy of the article written by Tiffany Hsu, *Subway Pledges to Make All Its Footlong Sandwiches 12 Inches*, L.A. TIMES (Jan. 25, 2013),

2

http://articles.latimes.com/2013/jan/25/business/la-fi-mo-subway-footlong-20130125 is attached to this declaration as Exhibit 2.

7. I bring this objection in good faith to prevent approval of an unfair settlement and ratification of an improper class certification.

8. The specific grounds of my objection are identified in my contemporaneously-filed objection.

9. I am represented in bringing this objection by Adam Schulman, Anna St. John, Melissa Holyoak, and Melody Akhavan of the 501(c)(3) non-profit Competitive Enterprise Institute's Center for Class Action Fairness, which I direct. They are representing me *pro bono* under my direction as part of their employment with CEI. All of our employment contracts were signed before any of us knew that this settlement existed. As non-profit law requires, none of us are permitted to personally profit from this litigation, and that is the only contractual arrangement between CEI, me, and my attorneys that is remotely relevant to this objection. If there is any doubt in my good faith, I am happy to stipulate to an injunction barring any settlement of my objection without court approval.

10. Center attorneys and I have brought dozens of objections since I founded the Center in 2009. (Prior to its merger with the Competitive Enterprise Institute in October of this year, the Center was a standalone public interest law firm.) In my experience, class counsel attack the Center's objections not on the merits, but with false *ad hominem* attacks. The remainder of this declaration is for the purposes of ensuring that the record includes evidence rebutting the most common attacks; if the Court intends to disregard those *ad hominem* attacks, it may disregard the rest of this declaration.

11. Since the Center's founding in 2009, its continuing mission has been to combat abuses of the class action procedural device that enrich attorneys at the expense of their putative clients, absent class members.

3

12. The Center receives many more requests to bring meritorious objections to class actions than it has resources to pursue, and thus has no interest in wasting resources bringing an objection it does not believe is legally meritorious. Because the Center is part of a non-profit, it cannot and does not settle its objections for a *quid pro quo* cash payment to withdraw, as many professional objectors do. But if the Court has any doubts whether this objection is brought in good faith, I am willing to stipulate to an injunction forbidding me from settling my objection for personal financial gain. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to alleged problem of objector blackmail).

13. Because of this necessity of selectiveness in choosing which objections to bring, the majority of the Center's objections have resulted in settlement rejections; attorney-fee reductions; or agreements or court-orders to improve the settlement for the benefit of the class. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner, J.) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. Nov. 6, 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling me "The leading critic of abusive class-action settlements"). Our objections have won tens of millions of dollars for class members. *E.g., McDonough v. Toys 'R' Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015); *In re Citigroup Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013). For example, out of four appeals decided by the Seventh Circuit, the Center prevailed fully in three, and lost the fourth only after achieving a multi-

4

million dollar fee reduction in the district court. *See Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *In re Southwest Airlines Voucher Litig.* 799 F.3d 701 (7th Cir. 2015).

14. While I am often accused of being an "ideological objector," the ideology of the Center's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, and I have never asked for an end to the class action, just proposed reforms for ending the *abuse* of class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my *certiorari* petition filed last week in *Frank v. Poertner*. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

15. On October 1, 2015, the Center merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. The Center was on financially sound footing, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to hire full-time communications or fundraising or regulatory-compliance staff.

16. Prior to its merger with CEI, the Center never took or solicited money from corporate donors. CEI, which is much larger than the Center, does take a small

5

percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. None of the corporate donors to CEI have earmarked contributions to CCAF; CCAF is fully funded by court-awarded attorneys' fees and donations earmarked by charitable foundations and individuals.

17. Given that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors, and based on my own experience working at CEI over the past three months, I have every confidence that I will have the autonomy for which I negotiated. For example, I understand that one of CEI's recent donors is Google, but no one at CEI has complained that I am currently prosecuting an appeal of the settlement approval of a Google class-action settlement protesting that the *cy pres* in that case was illusory relief because it went to organizations with which Google had a pre-existing relationship. *Gaos v. Google, Inc.*, No. 15-15858 (9th Cir.). Indeed, I only learned that one of CEI's donors is Google by happenstance of my own research, because no one at CEI told me or mentioned it when I notified them of the pending case.

18. In any event, no corporations or donors to CEI were aware of CEI's decision to initiate this objection, and the attorneys' decision to do so was independent of any discussions with any donors.

19. CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. I generally support CEI's dedication to free enterprise and individual liberty. But it is a large organization with a diverse group of scholars and attorneys, and some of them take public-policy positions I disagree with, and those controversial positions should not be used to tar CCAF's arguments, attorneys, or clients' objections. For

6

example, some (though not all) CEI experts take controversial positions on climate change; not that it is remotely relevant to this case, but I believe in anthropogenic global warming, and would support a revenue-neutral Pigouvian tax on carbon emissions. I haven't done an inventory of every CEI position paper and don't have a full accounting what other CEI positions I agree or disagree with, and have no idea where the other four CCAF attorneys stand on most non-class-action policy issues.

20. In my experience, class counsel attack the Center's objections by quoting out of context a single sentence in a case criticizing a single argument the Center made. But the same court stated that "the court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 804 (N.D. Ohio 2010). The *Lonardo* court even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Id.* at 813-17. Furthermore, the Center was ultimately successful in the Seventh and Ninth Circuits on the single argument *Lonardo* criticized as supposedly "short on law." Even if *Lonardo* was correct in 2010 that CCAF's policy-based argument was "short on law," it is no longer correct after *In re Bluetooth Headset Product Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) agreed that reversionary clauses are a problematic sign of self-dealing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 14, 2015, in Houston, Texas.

Theodore H. Frank

7