**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) |  No. 2:13-md-2439 |

THIS DOCUMENT RELATES TO ALL CASES

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Nguyen Buren, John Farley, Vincent Gotter, Barry Gross, Jason Leslie, Ayanna Nobles, Charles Noah Pendrak, Andrew Roseman, Richard Springer, and Zana Zeqiri ("Plaintiffs" or "Class Representatives") hereby move this Court for final approval of the Class Action Settlement Agreement ("Settlement Agreement")[1] they have entered into with Defendant Doctor's Associates Inc. ("DAI"), a copy of which is available at Doc. No. 46. The Settlement Agreement is the product of extensive arms-length negotiations between the Parties. As explained below, it is a fair, reasonable, and adequate settlement of the claims asserted by the Class, which consists of all individuals in the United States who have purchased a Six Inch or Footlong sandwich from a Subway® restaurant from 2003 to October 2, 2015. Indeed, the proposed Settlement provides the Class with most of the injunctive relief sought in the Consolidated Amended Complaint, Doc. No. 18. Because the Settlement satisfies the criteria for final approval of a class action settlement, Plaintiffs respectfully request that the Court enter an order finally approving the Settlement and enter final judgment.

## BACKGROUND

DAI is the franchisor of Subway® restaurants in the United States. Declaration of Stephen DeNittis, Doc. No. 46 ¶ 4. DAI enters into franchise agreements with individuals that, in

---

[1] This brief uses the same capitalized terms as the Settlement Agreement.

1

exchange for the payment of a continuing royalty and an agreement to abide by the franchise agreement's terms, allows them to use DAI's marks and its confidential method for operating a Subway® restaurant. Subway® franchisees operate over 27,000 Subway® restaurants in the United States. *Id.* ¶ 5.

In January 2013, an Australian teenager posted a picture on Facebook of a Footlong Subway® sandwich he claims to have purchased that was only 11 inches long. *Id.* ¶ 6. The post went viral and became the subject of considerable media attention. *Id.* ¶ 7. Around this time, Class Counsel began investigating potential claims against DAI for violating the consumer protection laws of each state. *Id.* ¶ 8. Class Counsel's investigation was thorough and included, among other things, reviewing Subway® advertising materials, speaking with franchisees, and hiring a consultant to purchase and measure Footlong sandwiches from a number of Subway® restaurants. *Id.* ¶ 9. This investigation allowed Class Counsel to develop an understanding of the nature of DAI's representations and conduct, and the Class' potential causes of actions and remedies. *Id.* ¶ 10.

Between January 22, 2013 and June 12, 2103, Plaintiffs and their respective counsel filed their original complaints in eight different federal district courts and state courts. *See Buren v. Doctor's Associates Inc.*, No. 2:13-cv-653-LA ("*Buren*"); *Leslie v. Doctor's Associates Inc.*, No. 2:13-cv-654-LA ("*Leslie*"); *Springer v. Doctor's Associates Inc.*, No. 2:13-cv-655-LA ("*Springer*"); *Gross v. Doctor's Associates Inc.*, No. 2:13-cv-656-LA ("*Gross*"); *Pendrak v. Subway Sandwich Shops, Inc.,* No. 2:13-cv-657-LA ("*Pendrak*"); *Roseman v. Subway Sandwich Shops, Inc.*, No. 2:13-cv-658-LA ("*Roseman*"); *Gotter v. Doctor's Associates Inc.*, No. 2:13-cv-659-LA ("*Gotter*"); *Nobles v. Doctor's Associates Inc.*, No. 2:13-cv-716-LA ("*Nobles*"); *Zeqiri v. Doctor's Associates Inc.*, No. 2:13-cv-675-LA ("*Zeqiri*"). Each complaint alleged that DAI

Case 2:13-md-02439-LA   Filed 01/05/16   Page 2 of 41   Document 54

had engaged in unfair and deceptive marketing practices regarding the length of Footlong Subway® sandwiches. Certain of the complaints contained similar allegations regarding Six Inch Subway® sandwiches and/or named Subway Sandwich Shops, Inc. as a defendant. Each was pleaded as a class action and sought monetary damages, attorney's fees, and injunctive relief. Many of the complaints sought punitive damages, statutory damages, and/or restitution. DeNittis Decl. ¶ 12.

On February 15, 2013, after removing to federal court the cases filed in state court, DAI requested that the Judicial Panel on Multidistrict Litigation ("Panel") transfer the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman,* and *Springer* matters to a single district for coordinated or consolidated pre-trial proceedings. *See* MDL No. 2439, Doc. No. 1. DAI later notified the Panel of the *Nobles* matter and asked that it receive similar treatment. *Id.*, Doc. No. 18.

While waiting for the Panel to rule, the Parties agreed to explore mediating this dispute before retired United States Magistrate Judge Morton Denlow. DeNittis Decl. ¶ 14. The Parties also agreed to engage in targeted informal discovery before conducting that mediation. *Id.* ¶ 15. This informal discovery included exchanging documents and answering interrogatory-like questions. *Id.* ¶ 16. Class Counsel also continued with their own investigation, which included interviewing former employees of the third-party bakeries that manufacture the dough used in the breads. *Id.* ¶ 17. Plaintiffs also retained a restaurant earnings and economics expert, who made various calculations that will be discussed *infra*. The Parties then held an in-person mediation session before retired Magistrate Judge Denlow, but no settlement was reached. In preparing for and conducting the mediation, Class Counsel learned what DAI's likely defenses were going to be. The information allowed them to better assess the strength of their case going forward. *Id.* ¶ 18. Following the mediation, Class Counsel concluded that it would

3

likely be difficult to obtain certification of a monetary damages class under Rule 23(b)(3) and decided to focus their efforts on the Class's injunctive relief claims, which would likely be of the most value and benefit to the Class considering the likely inability to get a money damage class certified. *Id.* ¶ 19.

In June 2013, the Panel granted DAI's motion and transferred the *Buren, Gotter, Gross, Leslie, Pendrak, Roseman, Nobles,* and *Springer* matters to this Court. MDL No. 2439, Doc. No. 22, 25. Shortly after the transfer, the Court appointed Thomas Zimmerman from the Zimmerman Law Offices, P.C., and Stephen DeNittis from DeNittis Osefchen, P.C. as co-lead counsel, made the *Zeqiri* matter part of the consolidated litigation, and set a deadline for Plaintiffs to file a Consolidated Amended Complaint. Doc. No. 10.

Plaintiffs filed their Consolidated Amended Complaint on December 31, 2013. Doc. No. 18. In it, Plaintiffs decided not to pursue their monetary damages claims. *See id.* at ¶¶ 6-7, p. 25. Instead, they sought injunctive relief only and the certification of a class pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at ¶¶ 6-7, 44 & p. 25. The Consolidated Amended Complaint also dropped Subway Sandwich Shops, Inc. as a defendant because Class Counsel's investigation has shown that it had no involvement in the events at issue. DeNittis Decl. ¶ 23. Plaintiffs also filed a motion for class certification at that time, Doc. No. 19, which the Court denied without prejudice after DAI stipulated that it would not seek to moot the Class's claims by making offers of judgment. Doc. Nos. 24-25.

Throughout the summer and fall of 2013, the Parties continued to engage in settlement discussions with the assistance of retired Magistrate Judge Denlow. DeNittis Decl. ¶ 24. Although hard-fought, these discussions resulted in an agreement in principle on the relief for the Class, which the Parties memorialized by March 2014. *Id.* ¶ 25. The Parties then proceeded,

4

again with the help of retired Magistrate Judge Denlow, to negotiate the amount of attorney's

fees and Class Representative Service Awards that Plaintiffs could seek. After a number of

contentious exchanges over the course of several months, the Parties determined that they had

reached an impasse. The Parties informed the Court of the impasse. *Id.* ¶¶ 27-28. The Court

decided, with the Parties' consent, that it would conduct an in-person mediation on the attorney's

fees and Class Representative Service Award issues. Doc. Nos. 36-38. With the Court's

assistance, the Parties reached an agreement on attorney's fees and Class Representative Service

Awards in February 2015. Doc. No. 40.

## THE SETTLEMENT'S TERMS

The parties negotiated the final terms of the formal Settlement Agreement for which

approval is now sought. As defined in the Settlement Agreement, the Settlement Class is:

> all persons in the United States who purchased a Six Inch or Footlong sandwich at
> a Subway® restaurant any time between January 1, 2003 and the date of
> preliminary approval. Excluded from this class are Defendant, the Related Parties,
> governmental entities, and all judges assigned to hear any aspect of this case, as
> well as their immediate families.

Settlement Agreement ¶ I(A) . The Settlement is straightforward. It requires DAI to make or

keep in place a number of practice changes for at least four years that benefit the Class and

remedy the alleged problem Plaintiffs identified in the Consolidated Amended Complaint. These

changes, in total, are meant to ensure that, as best practicable accepting the realities of baking

bread, sandwiches sold at Subway® restaurants are 12 inches in length. These practice changes

are:

- Instituting or maintaining a requirement that franchisees use a tool for measuring
  bread in each Subway® restaurant to help ensure that the bread sold to customers is
  either 6 or 12 inches long;

- Instituting or maintaining a requirement that, at each regular compliance inspection,
  conducted by DAI or its agents of each Subway® restaurant, generally monthly, to

5

include a sampling of the baked bread to ensure it is at least 12 inches long. The sampling will include measuring at least 10 baked breads in total, and breads using both the Italian and 9-Grain Wheat loaves will be included in the sample;[2]

- Instituting or maintaining a requirement that bread ovens and proofers be inspected during the evaluations for each Subway® restaurant, generally conducted monthly, to ensure that they are in proper working order and within operating specifications;

- Increasing the penalty for non-compliance for Subway® restaurants found using bread that is not at least 12 inches long and/or bread ovens/proofers that are not within operating specifications, which, in addition to other violations, could result in termination of a franchisee's franchise agreement;

- All DAI franchisee protocols, training materials, and communications (including University of Subway® course materials, the Franchise Disclosure Document, and the Operations Manual) which had previously allowed for a small tolerance for size deviation in the size of a Footlong sandwich will require that a Footlong sandwich must be at least 12 inches in length. These same materials will also say that a six inch sandwich must be at least six inches in length;

- DAI will institute or maintain additional quality control measures regarding bread length. These measures include providing a temperature and humidity gauge (hygrometer) to each Subway® Development Agent office responsible for performing store inspections, and requiring the use of hygrometers in the store inspection process to ensure that bread proofers are operating at the correct temperature and humidity levels. Development Agent offices will be responsible for obtaining any additional or replacement hygrometers in order ensure that they are available and used in the store inspection process. DAI will also enhance the standards relating to the supervision of third party dough manufacturers, including replacing the company retained to test the quality and uniformity of the bread dough produced by those manufacturers that is shipped to Subway® stores;

- DAI will institute or maintain a requirement that franchisees add a notice in each Subway® restaurant regarding the inherent variability in the dimensions of fresh bread. The notice will state: "Due to natural variations in the bread baking process, the size and shape of bread may vary," and will be located on the bread cling or similar location generally visible to customers ordering their sandwiches;

- DAI will add the notice discussed in the preceding paragraph to its website in the Menu and Nutrition section at a location agreed to by the Parties; and

- DAI will institute or maintain a requirement that, at each regular compliance inspection, generally conducted monthly, DAI or its agent check for compliance with

---

[2]  Although Subway® restaurants sell additional varieties of breads, Footlong sandwiches are all made using either an Italian or 9-Grain Wheat loaf as a base.

6

the requirements of this Paragraph. DAI will institute a penalty for non-compliance, which, in addition to other violations, could result in termination of a noncompliant franchisee's franchise agreement.

Settlement Agreement ¶ (22). As the Settlement Agreement states and as the declaration of David Cousins confirms, DAI made these practices changes "substantially as a result" of this litigation. Declaration of D. Cousins ¶ 3 (attached as Exhibit 1). As part of the Settlement, Plaintiffs may seek up to $1,000 each in incentive awards and Class Counsel may seek up to $525,000 in attorney's fees and expenses, so long as the total amount sought by Plaintiffs and Class Counsel is $525,000 or less. *Id.* ¶¶ 39-40. The Settlement also provides for a notice program that is appropriate under the circumstances of this case and an opportunity for each class member to object. *Id.* ¶¶ 33-36. Finally, once approved, the Settlement releases only the injunctive relief claims that Class Members have, while releasing both the injunctive relief and monetary damage claims of the named Plaintiffs. *Id.* ¶¶ 47-49. To be clear, except for the ten Plaintiffs, **each Class Member will retain his or her right to seek individual or classwide monetary relief from DAI**. (emphasis added).

## THE APPROVAL PROCESS TO DATE

Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement on September 29, 2015. Doc. No. 46. The Court granted that motion on October 2, 2015. Doc. No. 47. As required by the Court's Preliminary Approval Order and its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, DAI provided timely notice to the relevant state and federal regulators. Declaration of Nicole Chavez ¶ 2 (attached as Exhibit 2). The long-form settlement notice was made available to the public on www.subsettlement.com on October 19, 2015. Declaration of Jason Rabe ¶ 5 (attached as Exhibit 3). In addition, the press release notice was made available on www.subway.com that same day. *Id.* ¶ 4. Finally, the

7

Settlement Administrator issued the press release notice over the PR newswire on October 19, 2015. *Id.* ¶ 4. A number of news agencies ran stories on the Press Release Notice and the settlement of this lawsuit, including the Wall Street Journal, USA Today, Time, and Huffington Post.[3]

On December 6, 2015, Plaintiffs' Counsel filed their Motion for Attorney's fees, seeking $500 per each named plaintiff and $520,000 for counsel. Doc. No. 50. Four objections to the settlement were filed. Doc. No. 48, 49, 51, 53.

## MR. FRANK'S BIASED OBJECTION[4]

Theodore Frank is an outspoken anti-class action and tort reform advocate who is the founder and president of the ironically-named "Center for Class Action Fairness," an organization opposed to class actions on ideological grounds, which is funded by the Koch brothers through Donors Trust.[5] Mr. Frank has been described by several federal courts as a "professional objector" and a political ideologue who files meritless objections to proposed class action settlements. For example, in *Koz v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 129205, *11, 2013 WL 4834805 (S.D. Cal. Sept. 10, 2013), the district court noted:

> **"In this light, the Court notes that present objectors' counsel, Darrell Palmer and Theodore Frank of the Center for Class Action Fairness, have both been widely and repeatedly criticized as serial, professional, or otherwise vexatious objectors."** (emphasis added)

---

[3] Among others, news stories on the settlement were written by the Wall Street Journal: http://blogs.wsj.com/law/2015/10/20/subway-footlong-settlement-short-on-dough/; USA Today: http://www.usatoday.com/story/money/2015/10/21/subway-could-start-measuring-sandwiches-ensure-footlong-status/74320592/; Time: http://time.com/money/4079569/subway-footlong-lawsuit-12-inches/; and the Huffington Post: http://www.huffingtonpost.com/entry/subway-measure-footlongs_562784f0e4b08589ef49c897.

[4] There have been four objections to the Settlement Agreement. Three by unrepresented objectors and one by professional objector Mr. Frank. All of the objections are addressed in this memorandum.

[5] In addition to his work as an attorney and class action objector, Mr. Frank is a noted conservative political operative, perhaps best known for writing the vetting report for vice-presidential candidate Sarah Palin for the John McCain campaign in the 2008 presidential election.

8

*See also Dewey v. Volkswagen of America*, 728 F. Supp. 2d 546, 575 (D. N.J. 2010) (where the

district court described attorney Theodore Frank as a **"professional objector"** of which

**"federal courts are increasingly weary"**); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d

766, 785 (N.D. Ohio 2010) (calling a brief objecting to a class action settlement filed by

Theodore Frank **"long on ideology and short on law"** when he failed to cite a single case).

It is submitted that, separate and apart from the meritless arguments raised in the current

objection by Mr. Frank, it is helpful to understand that Mr. Frank's starting point is his belief that

all class action settlements are "bad" and that class actions—all class actions—are part of an evil

scheme to damage our economy and stifle the progress of businesses as they strive to make all

our lives better. A flavor of Mr. Frank's views regarding class actions, and the plaintiff's bar

generally, can be gleaned from viewing an opinion piece by Mr. Frank entitled "Open Ended

Litigation", which appeared at washingtonpost.com's "Think Tank Town" feature in 2006, where

Mr. Frank stated:

> **"In banana republics across the globe, economies come to a standstill
> because the risk of confiscation or corruption keeps many investments
> from ever happening. The same danger occurs when the expropriation
> is conducted by lawyers in the name of 'justice.' If businessmen and
> entrepreneurs -- be they insurers, manufacturers of lifesaving
> pharmaceuticals, or the small businesses that deliver your packages --
> have to account for the risk that their contractual arrangements will be
> disregarded by courts, they have to raise prices to account for that risk.
> Such increased prices mean fewer contracts are signed and fewer
> businesses are started. Consumers are worse off, not just because they
> now have fewer options, but because the economy is smaller as jobs and
> opportunities are lost. The only beneficiaries are the lawyers."
> (emphasis added)**

Despite his dismal view of the plaintiffs' class action bar, Mr. Frank appears to think that

being a professional class action objector—like himself—is an excellent job opportunity. In an

article drafted by Mr. Frank on PointofLaw.com entitled "Stop Complaining about the Legal Job

9

Market", Mr. Frank urged newly-minted lawyers discouraged by the current job market to become professional class action objectors like himself, stating:

> **"Every month, I'm presented with class action settlements where class members have legitimate objections and want to object, but my attorneys don't have the time because of other opportunities or commitments. Every month, I'm presented with still other class action settlements where class members would have legitimate objections, but no class member ever approaches me. … <u>I don't have a monopoly on class action objections or helping consumers and shareholders. At the risk of creating competition that cannibalizes my donors, go do what I do, maybe you'll do it better.</u>" (emphasis added)**

True to his word, Mr. Frank and his firm the Center for Class Action Fairness have indeed been very busy as a professional class action objector, appearing as either the actual objector, or as the attorney for the objector, or both, in the following class action settlements:

Poertner v. The Gillette Company, 12-cv-00803 (M.D. FL);
In re Google Referrer Header Privacy Litigation, 10-cv-04809 (N.D.CA.);
Ercoline v. Unilever United States, 10-cv-01747: (D.N.J.);
David Wolf et al v. Red Bull GMBH et al, 13-cv-08008 (S.D.NY)
Fraley et al v. Facebook, 11-cv-01726 (N.D.CA)
Delacruz v. Cytosport, 11-cv-03532 (N.D.CA)
In re Grand Theft Auto Video Game Consumer Litigation, 06-md-01739 (S.D.NY)
Pecover v. Electronic Arts, 08-cv-02820: (N.D.CA)
Blessing v. Sirius XM Radio Inc., 09-cv-10035: (S.D.NY)
David Wolf et al v. Red Bull GMBH et al, 13-cv-08008 (S.D.NY)
In re Yahoo! Litig., 06-cv-02737 (C.D.CA)
Rande Bronster v. AOL, LLC, 09-cv-03568 (C.D.CA)
Trombley v. National City Bank, et al, 10-cv-00232 (D.C.D.C.)
Baggett v. Hewlett-Packard Company, 07-cv-00667 (C.D.CA)
In re Apple Inc Securities Litigation, 06-cv-05208 (C.D.CA)
Hamilton v. Suntrust Mortgage Inc et al, 13-cv-60749 (S.D.FL)
In re Capital One Telephone Consumer Protection Act Litigation, 12-cv-10064 (N.D.IL)
Rande Bronster v. AOL, LLC, 09-cv-03568 (C.D.CA)
Gascho v. Global Fitness Holdings, LLC, 11-cv-00436 (S.D.OH)
Fauley et al v. Metropolitan Life, Storick, 14 CH 1518 (Circuit Court of Lake County, Ill)
Fladell v. Wells Fargo Bank, 13-cv-60721 (S.D. FL)
In re Certainteed Fiber Cement Siding Litigation, 11-md-02270, (E.D.PA)

<u>In re Southwest Airlines Voucher Litigation</u>, 11-cv-08176 (N.D.IL)
<u>In re Johnson & Johnson Derivative Litigation</u>, 10-cv-02033 (D.N.J.)
<u>Berry v. Schulman</u>, No. 14-2006, 2015 WL 7888729 (4th Cir. Dec. 4, 2015)
<u>In re Colgate-Palmolive Softsoap Antibacterial Hand Soap</u>, No. 12–md–2320–PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015).

It is important for the Court to keep in mind Mr. Frank's clearly biased ideology when analyzing his meritless arguments, all of which are addressed in detail herein.

## ARGUMENT

## I.   THE COURT SHOULD ENTER THE PROPOSED ORDER FINALLY APPROVING THE SETTLEMENT

### A.   The Settlement is entitled to a presumption of fairness.

There is a strong judicial policy, especially in complex and class cases, favoring resolution of litigation before trial. *In re Gen. Motors Pick-Up Truck Fuel Tank Prod. Liab.Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). As one court has explained:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation.

*Weiss v. Mercedes-Benz*, 899 F.Supp. 1297, 1300-01 (D.N.J. 1995), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995). Thus, courts have long afforded a presumption of fairness to settlements which are the product of arm's length negotiations conducted by experienced counsel who are fully familiar with class action litigation. *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length ... (3) the proponents of the settlement are experienced in

11

similar litigation ... "); *see also Freeman v. Berge*, 2003 U.S. App. LEXIS 12809, *12 (7th Cir.

June 20, 2003) (trial court did not abuse its discretion in relying "on the opinion of class counsel"

in approving settlement); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)

("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.

Lawyers know their strengths and they know where the bones are buried"); 4 Alba Conte &

Herbert Newberg, *Newberg on Class Actions*, §11.41 at 90 (2002); *Manual for Complex Litig.,*

*Third*, §30.42 (1995); *see also Koerner v. Copenhaver*, No. 12-1091, 2014 WL 5544051, at *5

(C.D. Ill. Nov. 3, 2014) (explaining that opinion of counsel weighs in favor of settlement when

settlement is reached as part of arm's length negotiation).

Here, settlement discussions took place for almost 18 months before the Parties reached a

complete agreement. DeNittis Decl. ¶¶ 14-30. The settlement negotiations were extensive and

adversarial in nature—the Parties were able to reach the settlement only after working repeatedly

with a retired federal magistrate judge and this Court. DeNittis Decl. ¶¶ 14-30; *In re Initial Pub.*

*Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (noting that involvement of

retired judge and neutral mediator supports applying fairness presumption); *In re CIGNA Corp.*,

No. CIV.A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (assistance of retired

federal district court judge demonstrated that negotiations were conducted at arm's length); *In re*

*Priceline.com, Inc. Sec. Litig.*, No. 3:00CV1884AVC, 2007 WL 2115592, at *3 (D. Conn. July

20, 2007).

Next, Class Counsel thoroughly explored the issues in this Litigation. DeNittis Decl. ¶¶

6-10. As discussed above, Class Counsel conducted an investigation and analysis of Plaintiffs'

claims and engaged in targeted informal discovery with DAI. *Id.* Class Counsel's review of that

discovery and its own investigation enabled them to gain an understanding of the evidence

12

related to the central questions in the case, and prepared them for well-informed settlement negotiations. Finally, Class Counsel and DAI's counsel are experienced in complex and class action litigation. DeNittis Decl. ¶¶ 35-37. Accordingly, the Proposed Settlement is entitled to a "strong initial presumption of fairness." *In re PaineWebber P'shps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y 1997).

**B.**   **The Settlement satisfies the Seventh Circuit's five factor test for approval.**

When evaluating whether the proposed settlement is lawful, fair, reasonable, and adequate, the Court should consider: "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The "most important factor relevant to the fairness of a class action settlement" is the first one listed: "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* (citing *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). In evaluating the fairness of the settlement, the Court views the facts in the light most favorable to the settlement. *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, the Court must not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873, 875 (7th Cir. 1998); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1005 (E.D. Wis. 2010) (Adelman, J.) (same).

1. **The proposed Settlement is reasonable because it provides the Class with much of the relief sought while avoiding the substantial risks of continued litigation.**

In general, determining whether a class settlement is reasonable requires the Court to weigh the costs and risks of continuing to litigate against the settlement offer (and the potential for a greater recovery by the class if the case is litigated to conclusion). *See, e.g., E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Although Class Counsel continues to believe that Plaintiffs' claims, including the Released Claims, are meritorious, Plaintiffs and the Class face real risks if the Litigation continues. DeNittis Decl. ¶¶ 40-42. Among other things, DAI will argue that Plaintiffs cannot assert class claims under any statute for which they do not personally have standing. *See, e.g.,* Motion for Preliminary Approval, Doc. No. 46 p. 10 (citing cases). Next, absent a settlement, DAI will argue that many of the consumer protection statutes governing the claims of Plaintiffs do not allow a private plaintiff to seek injunctive relief. *Id.* at p. 11 (citing cases). Third, Plaintiffs will have to demonstrate that DAI's purported misrepresentations were material. *See, e.g., Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 174 (1984) ("a representation, omission or practice must be a material one for a deception to occur."). However, during their investigation, Class Counsel learned that proving materiality will not be easy: many consumers understand that bread may bake differently each time or simply do not care if the bread used to make their Footlong sandwich is 11.50 inches long instead of 12 inches long. DeNittis Decl. ¶ 40; *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 828-30 (N.D. Cal. 2013) (finding honey advertisement that did not disclose that the honey lacked pollen was not deceptive because it was not plausible "that the absence of pollen . . . materially affects consumer acceptance and pricing of the product."). These are just some of the risks that Plaintiffs faced if they continued to litigate.

Conversely, the Settlement provides Plaintiffs and the Class with the relief that they seek.

14

*Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) (approving injunctive relief only settlement where the settlement "will result in complete relabeling of the challenged products" and "continued litigation could not result in any greater injunctive relief."); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *8 (S.D.N.Y. June 27, 2012) (approving class action settlement when agreed to practice changes "address[ed] the very problems that Plaintiff and Class Counsel would have sought to address through injunctive relief after a trial."). The Settlement requires DAI to make practice changes that, in light of the practical realities of large scale dough production and the baking of bread by franchisees at over 25,000 locations, are designed to help ensure that Subway® sandwiches will be sold only with bread that is 12 inches long. In addition, the Settlement requires DAI to have a disclaimer about bread length on its website and for franchisees to put a disclaimer in each Subway® restaurant. The Settlement remedies the problem Plaintiffs identified. To the extent that Plaintiffs could obtain more extensive injunctive relief by litigating this case to conclusion, the additional incremental benefits of that relief are outweighed by the time, effort, and expense of litigating for it and the risks that DAI would successfully defeat Plaintiffs' claims in full.

In these circumstances, this most important factor weighs strongly in favor of settlement.

### 2. Continued litigation would be complex, expensive, and lengthy.

There is little doubt that continued litigation would be complex, lengthy, and expensive. If forced to litigate further, DAI would have filed a motion to dismiss, a motion for summary judgment, and would have opposed class certification. Due to the sheer size of the Subway® franchise system, discovery also would be a massive undertaking, and time consuming and expensive for both sides. *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2015 WL 7450759, at *9 (N.D. Ill. Nov. 23, 2015) (finding this factor weighed in favor of settlement where additional

15

discovery and motion practice would have been required); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (fact that case would be "hotly-contested" weighed in favor of settlement). Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal, as well as the substantial risks involved, a settlement at this time is beneficial to the Class.

### 3. There has been little opposition to the Settlement.

As required by the preliminary approval order, notice occurred when the Settlement Administrator issued a press release, approved by the Court, notifying the general public of the Settlement. In response, there have been only four objections to the Settlement. The fact that "99.99% of class members have not filed objections to the proposed settlement is "strong circumstantial evidence in favor of the settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000); *In re Southwest Airlines Voucher Litig.*, no. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013).

The three unrepresented objections primarily complain that the settlement does not include a monetary payment to them and other class members. Doc. No. 48-49, 53. However, the Settlement is for injunctive relief only and does not release any money damage claims. The three unrepresented objectors could, if they wanted to, file suit against DAI should they wish, thus suffering no prejudice whatsoever. Moreover, as Plaintiffs' Counsel has already determined, seeking money damages would likely make certification very difficult to obtain due to ascertainability and proof issues.[6] Thus, the continued pursuit of a money damages settlement would actually hamper the Class' ability to obtain any relief from DAI.

---

[6] One substantial issue in the case is that putative class members literally "ate the evidence" which would be required to show they actually purchased Footlongs from DAI which were undersized.

16

In addition, there is a represented objection filed by Ted Frank, a professional class action objector who objects to settlements if they do meet his specific, politically-motivated ideas about what a fair class action settlement looks like. Frank Decl., Doc. No. 51-1 ¶¶ 9-11. Mr. Frank's objection is targeted mostly at Class Counsel's fees and at whether a (b)(2) class can be certified, which are addressed below.

Finally, DAI provided proper notice of the Settlement Agreement to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), and no governmental entity has opposed the Settlement. "Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, no. CV-08-1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

### 4. The Settlement is fair in the opinion of competent counsel.

Courts hold that the opinion of competent counsel weighs in favor of settlement. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Plaintiffs and the Class are represented by Zimmerman Law Offices, P.C. and DeNittis Osefchen, P.C. Both firms have significant experience in both consumer protection and class action litigation, and have been appointed as lead or co-lead counsel in a number of cases. Class Counsel have a tremendous amount of experience with class actions, and their opinion that the Settlement is fair, reasonable, and adequate deserves great weight. *See, e.g., Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (opinion of class counsel, who

17

were skilled and experienced in securities litigation, weighed in favor of approval of settlement of securities class action).

### 5.      The stage of the proceedings supports final approval.

The pertinent question for this factor is whether the proceedings are sufficiently advanced so that the Class Counsel has sufficient information to ensure "effective representation." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Courts have repeatedly explained that it does not matter whether the discovery is labelled "formal" or "informal;" instead "the pertinent inquiry is what facts and information have been provided." *See id.*, *see also McBean v. City of New York*, 233 F.R.D. 377, 384-85 (S.D.N.Y. 2006); *In re Elan Secs. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005).

Here, Class Counsel had a strong understanding of the facts as they negotiated settlement. Before mediating, DAI answered interrogatory-like questions and provided Class Counsel with highly relevant documents. In addition, Class Counsel reviewed Subway® advertisements (which are easily located on the internet, among other places). They also hired an expert to sample sandwiches before filing suit, and then after filing suit interviewed former employees of the third-party bakeries that manufacture the dough used in the breads. This information gave Class Counsel a strong handle on the relevant facts of the case and allowed them to analyze how the law applies to those facts. In addition, throughout the lengthy mediation process, Class Counsel learned what DAI's likely defenses were going to be, which allowed Class Counsel to assess the strength of Plaintiffs' case. Class Counsel had more than enough information to assess whether the proposed settlement is fair, adequate, and reasonable.

In short, each of the pertinent factors favors settlement, and the Court should conclude that the settlement is fair, reasonable and adequate.

18

C.      **The notice was appropriate.**

Notice was provided by the Settlement Administrator issuing a press release, approved by the Court, notifying the general public of the Settlement. The press release contained a link to the Settlement Website. That publicly available website provided the Class with basic information about the Settlement and included a copy of the Long-Form Notice and the pertinent filings in this case. The press release notice was released over the PR Newswire and a number of large news agencies ran stories about the settlement. Under the circumstances, the notice program was proper.

When a Rule 23(b)(2) class is certified, no notice to the class is necessary. *See* Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2558 (2011); *see also, e.g., Lewis v. City of Chicago*, 702 F.3d 958, 962–63 (7th Cir. 2012) ("Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class."). Rule 23(e), however, says that the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Recognizing the tension between these two provisions, courts have employed a "functional interpretation of Rule 23(e)" and held that notice of settlement is not required under certain circumstances. *Green v. American Express Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001) (calling this the "functional interpretation of Rule 23(e)"); *Selby v. Principal Mutual Life Ins. Co.*, 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003); *Jermyn v. Best Buy Stores, L.P.*, 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012); *Foti v. NCO Fin. Sys., Inc.,* No. 04-Civ.-00707, 2008 U.S. Dist. LEXIS 16511, at *14 (S.D.N.Y. Feb. 19, 2008); *Miller v. Hygrade Food Prods. Corp.*, 01-3953, 2002 WL 1060698 (E.D. Pa. May 23, 2002) (observing that "the majority of courts have determined that the Rule does not contain an absolute notice requirement" and declining to require notice where "there is no evidence of collusion and only negligible evidence of prejudice"); *Lilly v. Conagra Foods, Inc.*, No. CV 12-

19

225-RGK (SHx) Doc. No. 113, 134 (C.D. Cal. 2014); *see also* 2 McLaughlin on Class Actions § 6:20 ("[a]lthough the plain language of Rule 23(e) appears to mandate that notice of a proposed dismissal, settlement or compromise be provided to class members in all class actions, many courts have adopted a 'functional interpretation of the Rule that permits courts to approve certain settlements without any notice to class members—even in classes certified under Rule 23(b)(3). This approach is sound."); Newberg on Class Actions §§ 11:66, 11:72 (5th ed.). Situations where notice is not necessary include: (1) when the terms of the settlement provide near complete relief to the plaintiffs, (2) when the settlement provides for only injunctive relief, and, therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class, (3) when there is no evidence of any collusion between the parties, and (4) when the cost of notice would risk eviscerating the settlement agreement. *Green*, 200 F.R.D. at 212.

Here, traditional forms of publication or individual notice are neither necessary nor feasible. First, DAI has no way of identifying each individual who has purchased a sandwich from a Subway® restaurant during the class period. Next, Class members are giving up only injunctive relief claims and cannot opt-out. Moreover, the proposed injunctive relief provides Class Members with most of the relief that they seek. The Settlement is not collusive in any way. Rather, it took almost 18 months and the assistance of the Court and a retired magistrate judge to negotiate. Conversely, requiring extensive, traditional publication notice would be expensive and out of line with the rest of the Settlement. A large portion of the entire population of the United States is likely to have eaten at a Subway® restaurant at least once since 2003. Thus, any class notice would be through multiple publication notices in major print publications and on social media websites. DAI has said that it would rather litigate than settle if forced to incur the kind of cost necessary for such a notice. Finally, there was considerable press in a variety of media

about the length of Subway® sandwiches around the time these lawsuits were filed in 2013, so the public and press are already aware of this case, and there was another round of press stories about the settlement once the notice was released on the PR Newswire in October, 2015. Considering these facts, the proposed notice is appropriate under the circumstances.

### D.   The proposed Settlement Class satisfies Rule 23(a)-(b)'s requirements.

In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class–*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1.   The Proposed Class satisfies Rule 23(a).

The proposed class satisfies Rule 23(a)(1)'s numerosity requirement. During the Class Period, Subway® restaurants sold millions of sandwiches. Joinder is therefore impractical and Rule 23(a)(1)'s numerosity requirement is met. *See, e.g., In re Gen. Motors Corp. Dex-Cool Products Liab. Litig.*, 241 F.R.D. 305, 311 (S.D. Ill. 2007) (class including hundreds of thousands, if not millions, of people satisfies Rule 23(a)(1)); *Bernal v. Keybank, N.A.*, No. 06-C-8, 2007 WL 2050405, at *1 (E.D. Wis. July 11, 2007) (class made of up thousands of individuals who received mass mailing satisfied Rule 23's numerosity requirement).

Next, the threshold for commonality under Rule 23(a)(2) is not high. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citation omitted). Here, there are multiple

Case 2:13-md-02439-LA   Filed 01/05/16   Page 21 of 41   Document 54

questions of law and fact, including whether Subway® television and internet advertisements misrepresented the length of Subway® sandwiches; whether the manufacturing processes used at each of the third-party dough manufacturers caused the sandwiches to be too short; and whether DAI's policies and procedures, which all franchisees are supposed to follow, resulted in the franchisees selling sandwiches that were too short. *See Radosti v. Envision EMI, LLC,* 717 F. Supp. 2d 37, 52 (D.D.C. 2010) (holding commonality requirement was satisfied where there was common factual questions including that consumers each paid for product after receiving "same or substantially similar representations" and common legal questions of whether the representations were misleading or material).

Third, Plaintiffs' claims are "typical" of other Class Members' claims because they were subjected to the same advertisements and bought sandwiches with bread that was supposed to be made using a uniform set of procedures. Fed. R. Civ. P. 23(a)(3). Thus, the Plaintiffs' claims arise from the same course of conduct as the other Class Members' claims. Additionally, Plaintiffs and all other Class Members' claims are premised on the same legal theories. Accordingly, the typicality requirement is satisfied. *See In re Host Am. Corp. Sec. Litig.,* Master File No. 05-CV-1250 (VLB), 2007 WL 3048865, at *5 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed the same acts, in the same manner against all class members).

Fourth, Rule 23(a)(4) requires Plaintiffs to demonstrate that: (1) there is no conflict of interest between Plaintiffs and the other Class Members; and (2) Class Counsel are qualified, experienced, and capable of conducting the Litigation. *See, e.g., In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *3 (S.D.N.Y. Sept. 27, 2006). Here, Plaintiffs do not have any claims antagonistic to or in conflict with those of the other Class Members: Plaintiffs

and the Class are pursuing the same legal theories relating to the same course of conduct by DAI. In addition, Plaintiffs have retained counsel to represent them and the Class who regularly engage in consumer class litigation and other complex litigation similar to the present Litigation. Moreover, Plaintiffs and Class Counsel have vigorously and competently represented the Class Members' interests in this matter.

Mr. Frank objects that the Plaintiffs are inadequate class representatives because each is receiving a $500 class incentive award. Frank Obj., Doc. No. 51 pp. 9-10. Although Mr. Frank goes on at length about the problems with incentive awards, he does admit that the Seventh Circuit does not bar such awards. *See id.* p. 10. Moreover, the incentive awards here are different from any of the cases that Mr. Frank discusses. First, each Plaintiff is seeking only a $500 incentive award, which is considered "below" average in consumer class actions, *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013), and is far below the incentive awards complained about in the cases that Mr. Frank cites. *See* Frank Obj. at p. 10. Second, the named Plaintiffs are not just releasing their injunctive relief claims, but are also giving up their individual damages claims. The incentive award is therefore meant to compensate Plaintiffs both for the releases of their monetary damage claims and their willingness to serve as class representatives—two things that the other class members have not done. *See Lambeth v. Advantage Fin. Servs., LLC*, No. 1:15-CV-33-BLW, 2015 WL 4624008, at *1 (D. Idaho Aug. 3, 2015) (approving a $1,000 incentive award in (b)(2) case when the plaintiff released his individual money damage claim). In short, Plaintiffs' ability to represent the Class was not imperiled by their receiving a modest amount of compensation for the time they spent representing the class and for releasing their individual damage claims.

23

## 2. The Class is certifiable under Rule 23(b)(2).

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirements of Rule 23(b) are two-fold. First, the plaintiff must show that the defendant's conduct has a pattern or practice that generally applies to the whole class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Second, the plaintiff must seek "the application of a common policy." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). It is not necessary that each member of the class have identical injuries. *Id.* Instead, the question is whether the defendant "acted uniformly with respect to the class" and whether "injunctive relief would be appropriate respecting the class as a whole." *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 673 (D. Kan. 2013).

This action meets the requirements of Rule 23(b)(2). Plaintiffs seek to certify a class of "all persons in the United States who purchased a Six Inch or Footlong sandwich at a Subway® restaurant any time between January 1, 2003 and [October 2, 2015]." Preliminary Approval Order, Doc. No. 47 at p. 3. Plaintiffs allege that Defendant has engaged in a pattern of practice and conduct that applies to the whole class. Plaintiffs' claims concern Defendant's marketing practices to the entire class regarding Footlong and Six Inch Subway® sandwiches. The Consolidated Amended Complaint concerns alleged conduct "generally to the class." Fed. R. Civ. P. 23(b)(2).

Further, the injunctive relief Plaintiffs seek also is "a common policy." *Adamson*, 855 F.2d at 676. DAI has agreed to make or keep in place a number of changes that will affect it and Subway® franchises nationwide. These include various requirements to help ensure that, as

24

much as is commercially reasonable, the bread used in sandwiches at all Subway® restaurants is at least six or twelve inches long (respectively). Moreover, the Settlement requires DAI to ensure that its franchisees post a uniform notice for customers that due to natural variations in the bread baking process, the size and shape of bread may vary. *See* Settlement Agreement ¶ 22. Thus, Rule 23(b)(2) is met. *See, e.g., Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 PAE, 2015 WL 728026, at *7 (S.D.N.Y. Feb. 19, 2015); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2013 WL 6499698, at *4 (S.D. Cal. Dec. 11, 2013) (Rule 23(b)(2) met where injunctive relief in settlement applies to the class as a whole).

### 3. Attorney Ted Frank's Objection misses the mark.

#### i. The proposed Settlement preserves class members' right to assert damage claims.

Frank objects to certification because, if monetary claims actually predominate, a Rule 23(b)(2) class is not certifiable. Frank Obj. pp. 11-19. In support, he cites *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) for the proposition that money damage claims may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." 131 S.Ct. at 2557. However, the current class complaint *does not seek monetary damages or to certify any claims for monetary relief on the part of the class*. Moreover, the proposed Settlement does not bar class members from seeking monetary damages in a subsequent action. Rather, if the Court approves the Settlement Agreement, class members may still bring either class-wide or individual damages claims in a subsequent action. *See* Settlement Agreement ¶ 48. Therefore, Mr. Frank and the other three unrepresented objectors face no prejudice whatsoever from this proposed Settlement because they are free to pursue money damages claims against DAI in a separate action should they wish to do so.

The case law is clear that under these circumstances, Rule 23(b)(2) certification is appropriate—even after *Dukes*. Earlier this month, the Fourth Circuit affirmed the district court's overruling of an objection by Adam Schulman (Frank's attorney of record in this case and an attorney at the Center For Class Action Fairness that Frank runs), finding that it was appropriate to certify a Rule 23(b)(2) class when the settlement agreement provided for injunctive relief that benefited the entire class, and class members retained their right to sue for individualized monetary damages. *Berry v. Schulman*, No. 14-2006, 2015 WL 7888729 at *6 (4th Cir. Dec. 4, 2015). The Fourth Circuit held that "this settlement appears to be structured precisely to comply with *Dukes* and with Rule 23(b)(2)." *Id.* The panel reasoned that "[t]here are, to be sure, individualized monetary damages claims at issue here . . . but those claims . . . are retained by the (b)(2) Class members." *Id.*

Similarly, in *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap*, No. 12–md–2320–PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015), the parties agreed to settle multi-district litigation involving several putative class actions. The plaintiffs contended that Colgate's marketing of its Softsoap Antibacterial was misleading or deceptive. *Id.* at *1. Colgate agreed to various marketing and manufacturing practice changes. *Id.* at *2. The settlement involved a release of certain claims for declaratory and injunctive relief by the class. *Id.* The settlement did not affect the class members' right to claim monetary damages. *Id.* In confronting an identical challenge to Rule 23(b)(2) certification by another attorney from the Center for Class Action Fairness that Mr. Frank heads, the district court stated:

> **"[This] argument ignores the Supreme Court's teaching that '[w]hen a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate. . . . Predominance . . . [is] self-evident.' *Dukes*, 131 S. Ct. at 2558. In this case, the Settlement Agreement provides only injunctive relief to unnamed class members. . . . The Settlement Agreement thus preserves**

26

> unnamed class members' right to bring a future individual or class action
> suit for damages against Colgate based on this same alleged misconduct. Put
> another way, except for the five named plaintiffs, monetary claims are
> irrelevant to this settlement.  Because the Settlement Agreement provides,
> and releases, only class-wide injunctive relief, it is unnecessary to engage in
> this 'predominance' inquiry."

*Id.*, at *8.  In other words, the district court found that it was not necessary to engage in a

predominance inquiry because there was an "indivisible injunction" (as is the case here) and

class members still had the right to sue for damages (as is also the case here).

Other courts agree that the *Dukes* predominance test does not apply if the putative class's

claims for monetary damages have been separated from its injunctive relief claims.  In other

words, it is permissible to certify a Rule 23(b)(2) class for injunctive relief, and carve out the

class's claims for damages.  *E.g.*, *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d

364, 371 (7th Cir. 2012) (suggesting a class's claims should be bifurcated into a Rule 23(b)(2)

class for injunctive relief and a Rule 23(b)(3) class for possible award of monetary damages); *In

re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. at  673-74 ("Under plaintiffs' dual

certification request, the (b)(2) class will not contain their request for damages.  For these

reasons, under Rule 23(b)(2), the Court certifies plaintiffs' claims for injunctive relief.").[7] *See

also Hawker v. Consovoy*, 198 F.R.D. 619, 632 (D.N.J. 2001)(where the court rejected an

objection to an injunctive settlement where the objection was based on the failure to provide

compensatory relief, noting that the current complaint did not seek compensatory damages and

thus the absence of compensatory damages could not make the injunctive settlement

unreasonable).

---

[7] Frank's principle cases of *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221 (2d Cir. 2012),
and *Kartman v. State Farm Mutual Automobile Insurance Co.*, 634 F.3d 883, 895 (7th Cir. 2011), are
easily distinguishable because in those cases plaintiffs sought to certify a class under Rule 23(b)(2)
covering the class's injunctive *and* monetary claims. Here, the class complaint seeks no money damages
and the proposed injunctive settlement does not seek to settle or bar or affect any money damage claims.

27

## ii.      Frank's other arguments against Rule 23(b)(2) certification are meritless.

In addition to his central argument that the Class cannot be certified under Rule 23(b)(2) because monetary claims predominate, Frank brings a handful of other claims in opposition to (b)(2) certification.  As explained below, these arguments are also meritless.

First, Frank argues that the settlement will not benefit class members because the Class is defined as those who bought a Footlong or Six Inch sandwich at a Subway® between 2003 and 2015, in the past, while the injunction applies to DAI's present and future conduct.  Frank Obj. at pp. 19-21.  However, Subway® is the largest restaurant chain in the United States and would not survive unless millions of its customers were repeat purchasers.  Plaintiffs themselves have made clear that they "are repeat purchasers of SUBWAY® 'Footlong' subs and exhibit strong brand loyalty,"  Am. Compl., Doc. No. 18 at ¶ 22, that they "intend to continue to purchase SUBWAY® 'Footlong' subs because the huge number of SUBWAY® restaurants often make it the most convenient place to eat, and because Plaintiffs believe the subs to be healthier and tastier than other fast food options."   *Id.*

Indeed, several of the Plaintiffs have attested that they continued to purchase "Six Inch" sandwiches and "Footlong" sandwiches even after they filed suit against Subway, and that they plan to continue purchasing and eating "Six Inch" sandwiches and "Footlong" sandwiches in the future, regardless of the outcome of this lawsuit, because they are loyal Subway customers who enjoys eating Subway sandwiches.  *See* Declarations of Plaintiffs (attached as Group <u>Exhibit 4</u>).  This fact undercuts Frank's entire argument, as even Frank himself recognizes that an injunction is appropriate when a plaintiff has an "ongoing relationship" with the defendant.  Frank Obj. at p. 20.  The Class will therefore benefit from this injunction.

28

Second, Frank also claims that the Class Representatives lack standing because they are now aware that the bread used in Footlong and Six Inch sandwiches may vary in size. Frank Obj. at pp. 21-22. Other courts have rejected this very argument. *E.g.*, *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194 (D.D.C. 2013) (rejecting standing challenge because "even the named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction"); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap*, 2015 WL 7282543, at *4 (rejecting standing challenge because "although the named plaintiffs may know about Colgate's alleged misrepresentations, they are likely to suffer future harm absent the proposed injunctive relief").

Third, Frank alleges that injunctive relief is not available in this case because "the underlying law allows only for a damages remedy." Frank Obj. at p. 24. The Fourth Circuit rejected the same argument by Adam Schulman (Mr. Frank's attorney) recently when it held that "in the settlement context, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Berry*, 2015 WL 7888729, at *6; *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 317 (3d Cir. 2011) (the court "may approve a mutually agreed-upon stipulation enjoining conduct . . . regardless of whether the plaintiffs could have received identical relief in a contested suit.").[8] Further, some of the state consumer protection laws on which Plaintiffs rely allow for injunctive relief.[9] *E.g.*, *Fairchild Heights Residents Ass'n, Inc. v.*

---

[8] Frank cites *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 11-16 (1st Cir. 2008), and *In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), for the proposition that an injunction is not available if the defendant has already changed its behavior to resolve the harm. These cases involved contested actions and are distinguishable for that reason.

[9] Frank claims that this relief "would vary depending on geographical location," Frank Obj. at p. 24, but this makes no sense. As a practical matter, DAI—a nationwide franchisor—would not vary its practices regarding the length of Footlong and Six Inch sandwiches by state. Thus, this argument by Frank seems yet another example of an inapplicable argument copied from some brief in some other case which has been "repurposed" here.

*Fairchild Heights, Inc.*, 310 Conn. 797 (2014) (finding plaintiff may seek an injunction under the Connecticut Unfair Trade Practice Act even in the absence of irreparable harm). See *Illinois Consumer Fraud and Deceptive Business Practices Act*, 815 ILCS 501/1 *et seq*.; See *New Jersey Consumer Fraud Act*, N.J.S.A. 56:8, *et seq*.

      **4.**        **The Objector's additional arguments regarding the fairness of the proposed settlement are without merit.**

Like the Objector's other arguments, the Objector's additional arguments regarding the fairness of the proposed Settlement are wholly without merit. Indeed, the Objector's brief appears to be composed of "cut and paste" arguments from one or several "canned" briefs; arguments which simply ignore the facts and claims pleaded in the case at bar and the actual details of the Settlement, and are thus inapplicable in the case at bar.

      **i.**        **The Objector's arguments simply ignore the fact that the current complaint in the case at bar does not seek any monetary relief whatsoever and seeks only injunctive relief.**

Over and over, the Objector seeks to insinuate that there is something suspicious or "wrong" with the proposed Settlement because it does not provide for monetary relief to the Settlement Class. It is clear that this argument is utterly inapplicable to the case at bar. As the Court is aware, the current class complaint in this matter <u>does not</u> seek any monetary damages whatsoever. Instead, it seeks exclusively injunctive relief and the certification of a class for injunctive relief only under Rule 23(b)(2). Moreover, the proposed Settlement <u>does not</u> release any claims for monetary damages that any Class Member may have. Thus, any Class Member who participates in the proposed injunctive settlement is free to file his or her own action and seek any monetary damages to which they belief they are entitled.

Under these circumstances, the fact that the Settlement provides no monetary relief—what the Objector calls a "cash component"—is simply the logical outcome of the claims pleaded in

Case 2:13-md-02439-LA   Filed 01/05/16   Page 30 of 41   Document 54

this matter and the relief sought in the Complaint. Put simply, one cannot reasonably expect to recover money damages in order to settle a complaint which does not seek money damages. This is especially true where—as here—the terms of the Settlement fully preserves each Class Member's right to pursue money damages if they so choose. Any "objection" which fails to recognize this is an inapplicable nullity. *See e.g., Hawker v. Consovoy*, 198 F.R.D. 619, 632 (D.N.J. 2001) (the court rejected an objection to an injunctive settlement which preserved the right of injunctive class members to pursue claims for money damages, where the objection was based on the failure to provide compensatory relief, noting that the current complaint did not seek compensatory damages and thus the absence of compensatory damages could not make the injunctive settlement unreasonable).

> ii.   **The fact that the proposed Settlement provides for an award of statutory attorney's fees, subject to court approval, does not render the Settlement unfair.**

The Objector also seeks to argue that the Settlement is somehow unfair because it provides for an award of statutory attorney's fees, subject to court approval, to be paid by the Defendant. Indeed, the Objector goes so far as to argue, without any evidentiary foundation and contrary to the established facts—facts to which, *inter alia*, the Court is already privy—that Plaintiffs' counsel somehow "took" money from the Class in order to obtain attorney's fees for themselves. For the following reasons, the Objector's argument on this point ignores the facts of this case and borders on the absurd.

First, the Objector ignores the fact that, as noted above, the current complaint in this matter seeks injunctive relief exclusively. Therefore, the Settlement Class simply cannot recover monetary damages in the current action.[10] Thus, the idea that proposed class counsel "took"

---

[10] Moreover, as outlined above, the Settlement does not release any claims for money damages and Class Members remain free to pursue such claims.

31

money from the Class in order to pay attorney's fees is, at best, inapplicable to the facts of this case and the Settlement. If Plaintiffs' counsel had agreed to work for free, the proposed Rule 23(b)(2) Class for injunctive relief still would <u>not</u> be entitled to recover money on the claims pleaded in the Complaint.

Second, the Objector also ignores the fact that the various state law consumer protection statues under which the Plaintiffs are proceeding provide for fee-shifting and actually <u>require</u>—not merely permit—an award of statutory attorney's fees to Plaintiffs' counsel in the event that Plaintiffs prevail on their claims for injunctive relief; an award would be based on attorney lodestar in a contested fee petition. Contrary to the Objector's position that obtaining injunctive relief only is not worthy of a fee aware, many federal courts have held that cases seeking injunctive relief only require that a lodestar multiplier be added to the raw attorney lodestar in order to adequately compensate counsel. *See e.g., Coles v. City of Oakland*, 2007 U.S. Dist. LEXIS 100533, 48, 2007 WL 39304 (N.D. Cal. Jan. 4, 2007)(**"The Court will therefore consider contingent risk as a factor in enhancing the total lodestar for Plaintiffs' counsel's work on the merits of Plaintiffs' injunctive relief"**); *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1084, 2014 U.S. Dist. LEXIS 44479, 33-34 (D. Idaho 2014)(awarding multiplier to fee request because, *inter alia*, limited fee potential of claims seeking injunctive and declaratory relief); *White v. Experian Info. Solutions, Inc*., 2011 U.S. Dist. LEXIS 79044, 16 (C.D. Cal. July 15, 2011) (applying a 1.9 multiplier to lodestar where class counsel had obtained an injunctive settlement). Indeed, CAFA itself recognizes that a lodestar plus multiplier approach is appropriate in awarding fees in class actions seeking injunctive or declaratory relief. *See* 28 USCS § 1712(b)(2):

> **"Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for**

**obtaining equitable relief, including an injunction, if applicable.
Nothing in this subsection shall be construed to prohibit application of
a lodestar with a multiplier method of determining attorney's fees."
(emphasis added)**

Thus, the fact that the proposed injunctive settlement provides for an award of counsel
fees, is not "suspicious," but rather perfectly ordinary and appropriate. Indeed, as outlined above,
fees in cases seeking injunctive relief exclusively---such as the case at bar—typically result in
higher lodestar fees being awarded than in cases seeking monetary relief. Despite this, Plaintiffs'
counsel are not even seeking a lodestar multiplier in this case (though the case law cited above
provide they could be entitled to one). Nor are Plaintiffs' counsel even seeking their full raw
lodestar. Rather, Plaintiffs' counsel have voluntarily agreed to accept an award of statutory
attorney's fees that is only *half* of their current attorney lodestar. In other words, Plaintiffs'
counsel seek only half of what they could have received if they had not reached agreement as to
counsel fees and had instead submitted a contested fee petition to the Court as a prevailing party
once the injunctive settlement was approved. This fact clearly underscores the reasonableness of
both the fee request and the Settlement.

Third, while the fee award in this statutory fee-shifting case should be based primarily on
attorney lodestar, it is worth noting that the Objector has drastically underestimated the value of
the proposed injunctive settlement. The Objector offers no evidential support for his contention
as to valuation. In contrast to the Objector's unsupported assertions, Plaintiffs have submitted
herewith  actual evidence of valuation in the form of a report by chain restaurant earnings and
economics expert John A. Gordon, whose expert opinion is that the conservative total value of
the benefit to the Class from the injunctive relief in the proposed settlement is many millions of
dollars over the four year period.  Declaration of John A. Gordon ¶9 .  Mr. Gordon's Declaration

33

has been submitted to the Court for in camera review since it contains a calculation based on highly confidential and proprietary sales data provided by Defendant in this case.

Fourth, the Objector ignores the fact that the proposed award of attorney's fees in this matter, if approved by the Court, will be paid separately by the Defendant. Thus, any money awarded as attorney's fees or litigation expenses by the Court in this matter will not reduce the relief to the Class one iota. Under these circumstances, the fact that the parties have agreed to an amount of proposed statutory attorney's fees and costs is perfectly reasonable. In fact, this practice is encouraged by the case law. *See Snell v. Allianz Life Ins. Co. of N. Am.*, 2000 WL 1336640 at *19 (D. Minn. Sept. 8, 2000):

> **"acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the Class"**

*See also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. Minn. 1995), approving requested award of attorney's fees as part of class action settlement, noting that the vast majority of the fee was to be paid by the defendant, separate from any class recovery, stating:

> **"The award of attorneys' fees likewise does not constitute an abuse of discretion. The vast majority of the fee will be paid by Mellon and will not come out of any class recovery."**

Fifth, the Objector ignores the fact that approval of the proposed settlement for injunctive relief is not contingent on approval of the amount of attorney's fees and costs which the Defendant has agreed to pay. Rather, as in all class actions, the amount of attorney's fees and litigation costs awarded are subject to approval by the Court. Thus, if the Court decides to award less in attorney's fees and costs than the amount agreed to by the parties, it may do so and this will not affect the reasonableness of the injunctive relief won for the Class.

34

Finally, the Objector either ignores, or does not know, that the parties reached agreement on the substantive injunctive relief for the Class *more than a year prior to* the time when agreement was reached as to the proposed amount of any award of attorney's fees and costs. Specifically, as the Court is aware, the parties reached agreement as to the substantive relief for the Class in February, 2014. The memorandum of understanding that memorializes that agreement provides only that the Court will determine the amount of any award of attorney's fees and costs, without specifying any amount. It was only in late 2015 that the parties reached agreement as to the amount of the proposed award of attorney's fees and costs. In light of this, the Objector's accusation that Plaintiffs' counsel somehow "traded" away greater relief for the Class in exchange for more attorney's fees is clearly without merit and based on nothing more than ignorance of the procedural history of this matter.

5.     **The Objector's remaining scattershot arguments as to the fairness of the Settlement are equally without merit.**

Perhaps sensing the weakness of its own earlier arguments, the Objector's brief concludes by throwing virtually every conceivable argument at the wall, in the hope that something may stick. Nothing does.

The Objector's argument that the injunctive relief is not adequately described in the Class Notice is without merit. Notice has been provided to the Class in the form and manner previously approved by the Court. It describes the injunctive relief obtained in as much detail as is required. To the extent that the Objector seems to be arguing that each Class Member must be sent his or her own copy of the signed settlement agreement, that argument is contrary to law and impracticable.  As the Court is aware, the vast majority of the members of the class for injunctive relief cannot be identified by name. The notices previously published pursuant to the Court-approved plan of notice publication advised each Class Member as to the website where each

35

Class Member can download a free copy of, *inter alia*, the Complaint and the Settlement Agreement.

The Objector's argument that the injunctive relief obtained in the Settlement is "duplicative" of what Defendant would or may have done anyway is also contrary to the facts and law. Taken to its logical conclusion, the Objector's argument would spell the end of Rule 23(b)(2) class actions for injunctive relief. Whatever Defendant may or may not have done voluntarily in the absence of this lawsuit and/or Settlement does not moot this case for injunctive relief. *See e.g., United States v. Gregg*, 32 F. Supp. 2d 151, 159, 1998 U.S. Dist. LEXIS 20742, 24 (D.N.J. 1998) (**"Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of the power to hear and determine the case, i.e., does not make the case moot."**); *American Fed. of Gov't Emps., AFL-CIO v. Brown*, 866 F. Supp. 16, 19 (D.D.C. 1994) (**"mere profession that defendants have no intention to revive challenged practices is not alone sufficient to moot a case"**). *See also Jones v. Conagra Foods, Inc*., 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) (noting that voluntarily agreeing to remove a "100% Natural" label is not the same as agreeing to injunctive relief, a primary aim of suit). Any actions Defendant may have voluntarily taken could later be voluntarily changed or terminated by Defendant at any time. The proposed settlement, in contrast, requires that concrete action <u>must</u> be taken by Defendant in a manner which is enforceable through the Court.  Moreover, the declaration of David Cousins confirms that DAI made these practices changes "substantially as a result" of this litigation, and that absent an injunction, DAI would not be obligated to keep any of the agreed to practice changes in place. Declaration of D. Cousins ¶ 3 (attached as <u>Exhibit 1</u>).

The Objector's argument that Plaintiffs' counsel have made only "generalized arguments" about the requested award of fees and costs is also without merit. Objector's

36

argument on this point ignores the very thorough fee petition and supporting documents submitted in this matter. Contrary to the Objector's argument, each law firm who represented any Plaintiff in this matter has submitted a certification outlining, *inter alia*, exactly how many hours were spent by each attorney in that firm and a summary report showing how those hours were spent. It is telling that, not only does the Objector ignore this fact, the Objector also fails to argue that any one of these attorney's hours was excessive or questionable or otherwise non-compensable. Rather, like the rest of Objector's arguments, this argument by Objector ignores the facts of this case and the fee petition in question. Indeed, in a case where fees are to be based on a lodestar, the Objector has not provided one specific example of how or why the Objector contends that the lodestar of Plaintiffs' counsel is not exactly what they have certified it is, or how or why Plaintiffs' counsel should not be awarded a fee that is, in fact, only *half* of their actual lodestar.

Finally, the Objector's contention that cases such as *High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir 2008), prohibit the fee request in this case is without merit and is based on playing fast and loose with the case law. The very first sentence of *High Sulfur* makes it clear that it was <u>permissible</u> for the Plaintiffs' counsel to agree to an allocation amongst themselves of the fees awarded by the Court. *Id.* at 223-224. The problem cited by the Fifth Circuit in *High Sulfur* was that lead counsel had *ex parte* communication with the district court, wherein the district court was convinced to approve lead counsel's proposed allocation and to seal the allocations to each counsel to prevent other plaintiff's counsel from knowing what amount any other attorney received. *Id.* at 223-224. Nothing remotely comparable to what occurred in *High Sulphur* has occurred in this case.

Indeed, other professional objectors frequently make the same argument as Objector makes in the case at bar and it is routinely rejected, based on the recognition that *High Sulfur* was based on a highly unusual set of facts. *See e.g., In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 495 n.89 (E.D. Pa. 2008):

> **"We will briefly mention Attorney Riepen's notice of new authority which cites to *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 2008 WL 287347 (5th Cir. 2008). This new case has no bearing here. The Fifth Circuit held that the district court erred by considering a proposed fee allocation at an ex parte hearing where '[n]o sworn testimony was taken, no depositions were offered, and no affidavits were filed.' 517 F.3d 220, Id. at *5. Thereafter, the district court placed under seal an exhibit listing the allocation and placed a gag order on all involved. No statements of the attorneys' time and expenses were placed in the record. We will not repeat the extensive procedures put in place here to consider all petitions for attorneys' fees but in no way is the situation here like that in High Sulfur."** (emphasis added)

Contrary to Objector's argument, even in the Fifth Circuit, plaintiffs' counsel <u>are</u> permitted to privately agree as to the manner in which they allocate fees awarded by the courts amongst themselves. *See e.g., Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 U.S. Dist. LEXIS 6391, at *60 (E.D. La. Jan. 18, 2012):

> **"In this case, the court does not have to apportion the fees among plaintiffs' counsel because counsel have agreed to divide the fees pursuant to a fee-sharing agreement, a procedure that the Fifth Circuit has approved."**

Thus, there is nothing wrong with Plaintiffs' counsel in this matter agreeing to allow lead counsel to apportion the fees awarded by the Court among the various Plaintiffs' counsel. .Indeed, even without such an agreement, numerous courts have directed lead counsel to apportion the attorneys' fees awards as they deem appropriate, based on their assessments of class counsel's relative contributions to the case. *See, e.g., In re Indigo Sec. Litig.*, 995 F. Supp. 233, 235 (D. Mass. 1998); *Wells v. Dartmouth Bancorp, Inc.*, 813 F. Supp. 126, 132 (D.N.H.

38

1993); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, No. MDL NO. 1261, Civ. A. 98-5055, Civ. A. 99-1000, Civ. A. 99-1341, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004) (stating that specific allocations would be decided by liaison counsel, a procedure to which all class counsel had previously agreed).

       **6.**      **While not required, Interim Co-Lead Counsel proposes the following division of fees and costs from any Court award.**

While there is ample authority permitting Interim Co-Lead Counsel to allocate attorneys' fees and expenses amongst all counsel, Interim Co-Lead Counsel submits to the Court the below proposed attorney fee and cost allocation for consideration and approval. The actual dollar amount of the attorney fees may vary in the event Class Counsel incurs additional expenses.

| Firm Name | Expenses | Percentage of Attorney's Fees | Dollar Amount of Attorney's Fees |
|---|---|---|---|
| Zimmerman Law Offices, P.C. | $18,628 | 35.0% | $168,313.25 |
| DeNittis Osefchen, P.C. | $6,200 | 35.0% | $168,313.25 |
| Hirsh Law Firm | $2,908 | 2.5% | $12,022.38 |
| Ademi & O'Reill, LLP | $2,392 | 4.0% | $19,235.80 |
| Arguss Law Firm, LLC | $1,500 | 4.0% | $19,235.80 |
| The Evans Law Firm | $2,000 | 2.5% | $12,022.38 |
| Law Office of Todd M. Friedman, P.C. | $1,000 | 6.0% | $28,853.70 |
| Marks & Klein, LLP | $1,477 | 2.5% | $12,022.38 |
| Edelman, Combs, Latturner & Goodwin | $1,500 | 6.0% | $28,853.70 |
| Faruqui & Faruqui | $1,500 | 2.5% | $12,022.38 |

| | | | |
|---|---|---|---|
| **TOTALS** | $39,105 | 100% | $480,895.00 |

| | |
|---|---|
| **Total Fees/Costs/Incentive Awards** | $525,000 |
| Less: Incentive Awards | $5,000 |
| Less: Expenses | $39,105 |
| **Net Amount for Attorney's Fees** | $480,895 |

39

Mr. Frank's objection should therefore be overruled.


## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order overruling the objections, granting Plaintiffs' Motion for Final Approval, and for any other relief deemed just under the circumstances.


Respectfully submitted,

All Plaintiffs, individually, and on behalf of all others similarly situated,


By: _____ s/Stephen P. DeNittis_____
        Stephen P. DeNittis (Admitted Pro Hac Vice)
        DeNittis Osefchen, P.C.
        5 Greentree Centre, Suite 410
        Route 73 South & Lincoln Drive
        Marlton, New Jersey 08053
        (856) 797-9951 telephone




By: ___ s/Thomas A. Zimmerman, Jr._____
        Thomas A. Zimmerman, Jr. (IL #6231944)
        ZIMMERMAN LAW OFFICES, P.C.
        77 West Washington Street, Suite 1220
        Chicago, Illinois 60602
        (312) 440-0020 telephone
        (312) 440-4180 facsimile
        www.attorneyzim.com




        Interim Co-Lead Counsel for the Plaintiffs and Class

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system this 5th day of January, 2016.  Parties may access this filing through the Court's CM/ECF System.

s/ Stephen P. DeNittis_____
Stephen P. DeNittis

41