# Exhibit 2

Coordinates: 38°54′19″N 77°2′20″W

# Center for Class Action Fairness

From Wikipedia, the free encyclopedia

**Center for Class Action Fairness**

| | |
|---|---|
| **Industry** | Law |
| **Founded** | June 2009 |
| **Founder** | Ted Frank |
| **Headquarters** | Washington, D.C., United States |
| **Website** | Website (http://centerforclassactionfairness.blogspot.com/) |

The **Center for Class Action Fairness** (**CCAF**) is a Washington, D.C.-based public-interest law firm, founded by Ted Frank in June 2009 to represent consumers dissatisfied with their counsel in class actions and class action settlements.[1][2] It is a 501(c)(3) organization.

According to *The American Lawyer*, as of March 2011, the CCAF had filed objections to 17 settlements, with eight objections pending in federal district courts, and had been successful on six of them. The CCAF has objected to settlements throughout the United States, particularly in cases where class action lawyers receive cash payments but the plaintiff class receives only discount coupons for further products and services from the defendant company. It has distanced itself from other firms that make money by holding up class action settlements until they themselves are paid off. The CCAF has raised objections to class action settlements involving the Grand Theft Auto "Hot Coffee" minigame, Honda Civic Hybrids, Apple backdating, A.G. Edwards, Bluetooth headsets, and the Cobell Indian Trust.

## Contents

- 1 Background
- 2 Cause
- 3 Notable cases
- 4 References
- 5 External links

## Background

Ted Frank was inspired to establish the Center from his success in objecting to the class action settlement in the Grand Theft Auto consumer fraud case where class members would have received under $30,000 while the attorneys were asking for $1 million.[1][3][4][5]

> "Operating largely on donations, the CCAF in a short period has gained a reputation as a formidable check on highly questionable practices that have gone unchallenged precisely

In June 2009, Frank founded the public-interest non-profit law firm *Center for Class Action Fairness* (CCAF) to represent consumers dissatisfied with their counsel in

> because they are the product of collusive parties and allied judges. The advent of a committed and aggressive watchdog like CCAF is, to those familiar with these scams, like sunlight and Lysol."
>
> — Karen Lee Torre of the *Connecticut Law Tribune* describing the Center for Class Action Fairness (CCAF).[6]

class actions and class action settlements.[1][2] The firm is described by Frank as "a "guerrilla" operation with a shoestring budget".[7] CCAF was initially a project of Donors Trust, a nonprofit donor-advised fund, which paid him as an independent contractor to manage the project, relying on donors from charitable foundations and independent individuals to fund it.[8][9] To date, the CCAF has accepted only about 40 percent of the requests it has received to object to a settlement and Frank has said that if it is a good settlement or close enough to the line, he wouldn't "risk creating bad precedent."[8] As of 2010, the CCAF has three staff attorneys, including Frank.[10]

The CCAF has distanced itself from other firms, sometimes called "professional objectors", that make money by holding up class action settlements until they themselves are paid off,[11] Whereas that practice has been criticized as doing to class action lawyers what class action lawyers are doing to companies, one commentator said that CCAF appears to be doing so as a matter of principle.[12] According to *The American Lawyer*, as of March 2011, the CCAF had filed objections to 17 settlements, with eight objections pending in federal district courts, and had been successful on six of them.[9]

## Cause

Founder Ted Frank has said that "the whole reason I started this is because there is a high probability of district courts rubber-stamping settlements. I think these are very bad settlements that the [9th U.S. Circuit Court of Appeals] will provide guidance for when judges should or shouldn't approve settlements." He has also said "the class action landscape has long included some "professional settlement objectors" who target large cases in hopes of extracting a percentage of the attorney fees as a reward. But that doesn't solve the problem. The niche isn't being filled unless you find somebody crazy like me who is willing to spend dozens of hours of his own time and hundreds of dollars of his own money to make a claim he can't benefit from."[13] Frank said in an objection in a case at the Court of the United States District Court Northern District of Ohio of the CCAF, "while the Center focuses on bringing objections to unfair class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection. The Center analyses complaints from consumers aggrieved by class actions settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members."[14]

Among CCAFs cases are those challenging an emerging trend known as *cy-près*. Created by American courts in the 1970s as a mechanism to distribute funds to stand-in organizations and causes in cases in which it would be impractical to distribute class action settlement funds directly to the entire class of plaintiffs, the practice has been criticized from time to time for redirecting funds that would otherwise go to the parties to the case. In one case, CCAF challenged a settlement that would have directed $2.5 million out of a total $16.5 million settlement Apple Inc. was to pay to shareholders for backdating employee stock option grants, to unrelated law school programs on corporate governance.[10] According to Frank, in March 2010, two attorneys from the Kabateck Brown Kellner firm published an op ed in the

*Los Angeles Daily Journal* attacking the litigation against impermissible cy pres awards as part of a "corporate" campaign.[15] Frank firmly stated on the Manhattan Institute run website Point of Law.com that the "Center for Class Action Fairness has never taken a dollar of for-profit corporate money."[15]

CCAF has objected to settlements throughout the United States, in cases where class action lawyers receive cash payments but the plaintiff class receives only discount coupons for further products and services from the defendant company. CCAF argues in those cases that few of the coupons are ever used, so the actual payment to plaintiffs is much lower than the stated amounts.[12] In 2010, CCAF successfully objected to a coupon settlement in a Central District of California class action alleging consumer fraud in the sale of Honda Civic Hybrids; the settlement would have provided $2.95 million in attorneys' fees, but only coupons to the class.[17][18][19] Frank and the CCAF's position against coupon settlements was expressed in his written objection to the case in which he stated that they often do not provide meaningful compensation to class members, they often fail to disgorge ill-gotten gains from the defendant, and they often require class members to do future business with the defendant in order to receive compensation.[20]

> "Even when a lawsuit is plainly meritless, it costs defendants a lot of money to have litigators dealing with the case. Without a loser pays rule, it's cheaper for the defendants to pay trial lawyers protection money to go away. Because no one has an incentive to object, the settlements get rubber-stamped, and the trial lawyers go on to file the next extortionate lawsuit. And we all pay higher prices as a result.
>
> In other cases, the lawsuit has merit, but the class lawyers would prefer to maximize their share of the settlement than do what is right for their putative clients: they structure the settlement in tricky ways that will minimize the total cost to the defendant while making it seem like their own outsized fees are justified. The defendant just wants the suit to go away as cheaply as possible, and doesn't care whether lawyers or consumers get the money. The class notice might be misleading: we successfully objected in one case where the notice implied that the class would get $9.5 million (thus making the $1.05 million attorney fee seem reasonable), when the class in fact got about $117,000.
>
> CCAF hopes to change this by giving consumers another option: object, with a lawyer standing behind them to explain to a court why the law doesn't permit such an extortionate settlement that fails to benefit consumers."
>
> —Frank on the purpose of the CCAF.[16]

# Notable cases

The CCAF recently lost its appeal in the Online-DVD Rental Antitrust Litigation case, initially filed in the Northern District of California and appealed to the United States Court of Appeals for the Ninth Circuit. The CCAF had objected to the amount of attorneys' fees awarded by the district court, but the district court judge overruled the objections and awarded the attorneys' fees requested. The appeal to the circuit court was met with disfavor and the award of attorneys' fees was affirmed. Theodore H. Frank et al. v. Netflix Inc. et al., case number 12-15705, in the U.S. Court of Appeals for the Ninth Circuit.

Frank, at his own expense, traveled to New York and filed a successful objection to the proposed class action settlement in the Grand Theft Auto consumer fraud case where class members who had bought a Grand Theft Auto computer game with a hidden, sexually explicit easter egg would have received less than $30,000, while the plaintiffs' attorneys would have received $1 million in legal fees.[1][3][4][5][21] Spurred by complaints about excessive sexual content in the game, class action attorneys sued its

Case 2:13-md-02439-LA Filed 01/07/16 Page 4 of 8 Document 57-2

makers, Take Two Interactive Software. Although the software giant had received only $27,000 in claims from irate consumers, it agreed to a settlement in which the plaintiffs' lawyers themselves would collect $1 million.[1] The CCAF's case succeeded and the settlement was halted.[22]

In January 2010, the CCAF, representing its client Dan Greenberg, successfully filed an objection to the original settlement in the *Lonardo v. Travelers Indemnity* case in the U.S. District Court for the Northern District of Ohio, which reduced the $6.6 million attorneys' fee request by $2 million, with the class members receiving $4.8 million instead of $2.8 million.[8][23] In February 2010, CCAF successfully objected to a coupon settlement in a Central District of California class action alleging consumer fraud in the sale of Honda Civic Hybrids; the settlement would have provided $2.95 million in attorneys' fees, but only coupons to the class.[17][19][24] Frank was reported to have said "coupons are nearly worthless because so few of the intended beneficiaries will find it worthwhile to fill in all the necessary paperwork."[25] The CCAF has also been involved in the case surrounding the allegations of email spamming by Ameritrade in 2009.[7] The case brought Frank before Northern District of California Chief Judge Vaughn Walker, where he challenged the fairness of a TD Ameritrade settlement, which consists of coupons for antivirus software. Frank "argued that the court should not award, or should at least limit, the requested $1.87 million in attorney fees."[7] Judge Walker rejected the Ameritrade settlement in October 2009.[26]

> "In these desperate economic times, we're looking for ways to stimulate the economy. One cheap way to do so without increasing government debt is to stop making it profitable for trial lawyers to bring meritless cases that impose what is effectively a multibillion-dollar litigation tax on productive sectors of the economy. We can't litigate our way to prosperity."
>
> —Frank, on tort reform. August 2011.[27]

Later in 2010, Frank and the CCAF, citing American Law Institute guidelines on *cy-près*, objected to Apple's settlement of a securities class action over their backdating, arguing that giving money to third parties affiliated with the class counsel instead of to the class was a breach of fiduciary duty.[28][29] Frank stated that "the magnitude of the settlement compared to the original claims demonstrates that it is an extortionate nuisance settlement, being made because it would cost more to defend the suit than to pay the attorneys to go away."[28] In response to CCAF's objection, the parties amended the settlement by reallocating the $2.5 million originally proposed as *cy-près* to class members; the court awarded CCAF attorneys' fees for their role in winning $2.5 million for the class.[29][30]

In April 2011, Frank and the CCAF filed an objection to the $3.4 billion taxpayer funded Cobell Indian Trust settlement, which the federal government had agreed to in December 2009, which had established a $1.5 billion Trust Accounting and Administration Fund and a $1.9 billion Trust Land Consolidation Fund to buy fractionated land interests.[31] Under the agreed settlement, a maximum of $99.9 million had been allocated for the lawyers fees but they had demanded $223 million.[31] Acting on behalf of Kimberly Craven, a Sisseton-Wahpeton Ovate tribe member, Frank argued that the case was about pure greed, stating that it included "an outrageous fee request that has resulted in bipartisan criticism" and that the Class Counsel were "more interested in maximizing their personal recovery than the interests of the class."[31]

Case 2:13-md-02439-LA Filed 01/07/16 Page 5 of 8 Document 57-2

The CCAF filed a lengthy brief in Missouri in May 2011 challenging a settlement which gave lawyers who sued A.G. Edwards $21 million in fees for negotiating an agreement that provided a total of $6 million for some customers and three annual coupons valued at $8.22 apiece for the rest.[32] St. Louis Judge Angela T. Quigless of the Missouri Court of Appeals rejected the case, ruling that "in cases involving complex litigation or in the class action context, a one-third contingent fee award is not unreasonable."[32]

In August 2011, the CCAF won a case at a federal appeals court in California in which they objected to class action settlements and attorneys' fees in litigation regarding Bluetooth headsets. The original case over the headsets had been filed when lawyers had noticed news articles about potential hearing loss and headsets and filed suits on behalf of millions of Motorola and Plantronics customers.[33] The prior settlement would have effectively paid consumers nothing but given the lawyers who negotiated the pact $850,000 in fees,[34] amended by Frank and his firm.[33] Frank regards the case as a milestone in his fight to prevent abuses.[35] Frank also unsuccessfully filed an objection to a settlement in an antitrust case against Sirius XM Radio, which provided nothing for the plaintiffs, but a 100 percent payout of $13 million for the attorneys.[35] Judge Harold Baer, Jr. ruled on 24 August that the settlement terms "demonstrate sufficient fairness, adequacy and reasonableness" and rejected Frank's claims.[36] Frank vowed to appeal, saying "you don't like to lose, but it's a good case to take to the appellate court."[36] In June 2010, the CCAF filed an objection on behalf of four class members to the *Dewey v. Volkswagen, Water Ingress Settlement* where attorneys were asking for over $23 million for recovering an $8 million reimbursement fund for a small subset of the class.[37][38] The case is still pending.

## References

1. Fisher, Daniel (21 September 2009). "A Lawyer Who Tries to Block Settlements". *Forbes*. p. 36. Retrieved 25 September 2009. **Cite error: Invalid <ref> tag; name "forbes" defined multiple times with different content (see the help page).**
2. Bronstad, Amanda (10 July 2009). "Judge Approves Bluetooth Settlement, but Balks at Attorney Fees Award". *National Law Journal*. Retrieved 25 September 2009.
3. Glater, Jonathan D. (25 June 2008). "Hidden Sex Scenes Draw Ho-Hum, Except From Lawyers". *New York Times*. Retrieved 25 September 2009.
4. Grossman, Andrew (22 December 2008). "Grand Theft Class Action: Game Over". Heritage Foundation. Retrieved 25 September 2009. **Cite error: Invalid <ref> tag; name "grossman" defined multiple times with different content (see the help page).**
5. Lat, David (10 August 2009). "The Class Action Avenger: Ted Frank's Cool New Job". *Above the Law*. Retrieved 25 September 2009. **Cite error: Invalid <ref> tag; name "atl" defined multiple times with different content (see the help page).**
6. "Challenging Cy Pres Scams". *Connecticut Law Tribune*. 22 November 2010. Retrieved 20 August 2011.
7. Moser, Kate (23 September 2009). "Class Action Avenger Discusses Coupon Crusades". *Legal Pad*. Cal Law. Retrieved 25 September 2009.
8. Zahorsky, Rachel (1 April 2010). "Unsettling Advocate". ABA Journal.
9. Beck, Susan (4 March 2011). "A Conversation With Class Action Objector". *The American Lawyer*. Retrieved 23 August 2011.
10. Torre, Karen Lee (22 November 2010). "Challenging Cy Pres Scams". Connecticut Law Tribune.
11. Kearney, Brendan (23 May 2010). "The Deal Breakers: A look at professional class action objectors in Md.". Baltimore Daily Record.
12. McLellan, Bill (23 June 2010). "Lawyers win big in class action suit". St. Louis Post-Dispatch.

Case 2:13-md-02439-LA Filed 01/07/16 Page 6 of 8 Document 57-2

13. Zahorsky, Rachel (1 April 2010). "Unsettling Advocate". ABA Journal. Retrieved 21 August 2010.
14. Frank, Ted. "Paul Lonardo v. The Travelers Idemnity Company and the Standard Fire Insurance Company". Court of the United States District Court Northern District of Ohio. Retrieved 11 September 2011.
15. Frank, Ted (17 March 2011). "Kabateck Brown Kellner discovers the flaw of cy pres". Point of Law.com. Retrieved 11 September 2011.
16. "Welcome". Center for Class Action Fairness. Retrieved 25 August 2011.
17. Bronstad, Amanda (24 February 2010). "Civic Hybrid class settlement doesn't pass muster". *National Law Journal*.
18. Rizo, Chris (23 February 2010). "Group puts the brakes on Honda class action settlement". *Legal Newsline*.
19. *True v. American Honda Motor Co.*, __ F. Supp. 2d __, No. 07-CV-0287 (C.D. Cal. 2010).
20. Frank, Ted (10 January 2010), *True v. American Honda Motor Co.*, United States District Court Central District of California Eastern Division - Riverside
21. "Hardly a 'class' act Legally Speaking". Rockwall Herald-Banner (Texas). 6 May 2011. Retrieved 20 August 2011.
22. Grossman, Andrew (22 December 2008). "Grand Theft Class Action: Game Over". The Heritage Foundation. Retrieved 24 August 2011.
23. 706 F. Supp. 2d 766 (N.D. Ohio 2010)
24. Rizo, Chris (24 February 2010). "Group puts the brakes on Honda class action settlement". The Southeast Texas Record. Retrieved 21 August 2010.
25. "Editorial: Lawyering unto perdition". *Washington Times*. 28 December 2010. Retrieved 20 August 2011.
26. TD Ameritrade Accountholder Litigation, No. 07-CV-2852, 2009 U.S. Dist. LEXIS 126407 (N.D. Cal. 23 October 2009).
27. Frank, Ted (17 August 2011). "Manhattan Moment: Win or lose, trial lawyers get millions in Vioxx fees". *The Washington Examiner*. Retrieved 21 August 2011.
28. Carney, John (21 October 2010). "Is Apple's $20.5 Million Backdating Settlement Illegal?". CNBC. Retrieved 21 August 2010.
29. Frankel, Alison (30 November 2010). "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal". Retrieved 21 August 2011.
30. "IN RE APPLE INC. SECURITIES LITIGATION" (PDF). Court House News. Retrieved 21 August 2011.
31. Bommarito, Kate (20 April 2011). "Objection Filed Against Cobell Indian Trust Class Action Settlement Agreement". Plains Daily. Retrieved 20 August 2011.
32. Fisher, Daniel (1 June 2011). "Appeals Court Approves $21 Million Fee In A.G. Edwards Case". *Forbes*. Retrieved 23 August 2011.
33. "Headset Settlement That Paid Lawyers, Not Clients, Is Rejected". *Forbes*. 19 August 2011. Retrieved 20 August 2011.
34. "Appeal challenges Bluetooth settlement as self-dealing". *The National Law Journal*. 27 April 2010. Retrieved 20 August 2011.
35. Freddoso, David (23 August 2011). "Days numbered for trial lawyers getting outrageous paydays". *The Washington Examiner*. Retrieved 24 August 2011.
36. Raymond, Nate. "Judge Approves Sirius XM Settlement, Rejects Ted Frank's Claims that Deal Is a Dud for Class Members". *The American Litigation Daily*. Retrieved 25 August 2011.
37. Dewey v. Volkswagen AG, No. 07-CV-2249 (D.N.J.)
38. "Dewey v. Volkswagen, Water Ingress". Center for Class Action Fairness. 14 June 2010. Retrieved 11 September 2011.

# External links

- Website (http://centerforclassactionfairness.blogspot.com/)
- Pointoflaw.com (http://pointoflaw.com/) - web magazine sponsored by the Manhattan Institute on the U.S. litigation system.
- Overlawyered.com (http://www.overlawyered.com/) - blog on the U.S. litigation system.

Case 2:13-md-02439-LA Filed 01/07/16 Page 7 of 8 Document 57-2

Retrieved from "https://en.wikipedia.org/w/index.php?title=Center_for_Class_Action_Fairness&oldid=697873565"

Categories: Law firms based in Washington, D.C. | Organizations established in 2009 | Class action lawsuits

- This page was last modified on 2 January 2016, at 14:13.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.