# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

IN RE: SUBWAY FOOTLONG )
SANDWICH MARKETING AND ) Case No. 2:13-md-02439-LA
SALES PRACTICES LITIGATION )

This document relates to all cases

# THEODORE H. FRANK'S
# OPPOSITION TO MOTION TO SEAL AND SUPPLEMENTAL OBJECTION
# TO PROPOSED SETTLEMENT

## INTRODUCTION

On December 15, 2015, Objector Theodore H. Frank filed an objection to the proposed settlement in this case detailing, *inter alia*, how the attorneys' fees provision is disproportionate in relation to the supposed class benefit. Dkt. 51 at 21-26. On January 5, 2016, the Plaintiffs submitted their memorandum in support of final approval, in which they cite economics John A. Gordon's expert opinion that the "conservative total value of the benefit to the Class from the injunctive relief in the proposed settlement is many millions of dollars over the four year period." Dkt. 54 at 33. On January 6, without conferring with objector's counsel or offering to share an unredacted version of the declaration, Defendant filed a motion to be permitted to file said declaration under seal, accompanied by a public redacted version that contains no substantive assessment at all. Dkt. 56, 56-1.

The parties' introduction of this declaration at this time flies in the face of due process and Rule 23. "The plain text of [Rule 23(h)] requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). In *Redman v. RadioShack Corp.*, the Seventh Circuit adopted in full the reasoning of *Mercury*. 768 F.3d 622, 637-38 (7th Cir. 2014). The settling parties' submission of the purported settlement valuation (upon which fees will be based) comes more than a month too late to be considered by would-be class objectors.

To compound the error, Defendant seeks to file the declaration under seal as it contains "highly confidential" sales and pricing information, without any provision for class members to access the unredacted version. Dkt. 56.[1] Moreover, the Defendant seeks to seal not only the sales and pricing

---

[1] Frank notes that the Defendant never sought his consent before filing its motion to seal. L. R. 79(d)(4) requires that the moving party certify that the parties have conferred before filing a motion to seal. Frank acknowledges that for certain purposes non-named class members are parties and for others they are not. *See Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). The Defendant took the questionable route of conferring only with the Plaintiffs, who are aligned with Defendant in its aim to obtain a smooth, quick, and uninterrupted approval of their settlement. Here, it was only Frank or

1

information itself but also any references to Gordon's valuation methodology. As explained below, the motion to seal is facially overbroad and fails to satisfy the heavy burden required by the First Amendment, federal common law, and Local Rule 79(d)(3).

I. **Frank objects to the settling parties' expert valuation being filed three weeks after the objection deadline, and its unavailability to class members.**

"An important determinant in whether objectors are able to make meaningful submissions regarding the fairness of a class settlement and a request for attorneys' fees is the schedule. … [A]bsent exceptional circumstances, class members and objectors should not be required to make their submissions until after the moving record is complete. Unless special circumstances dictate otherwise, objectors should have a reasonable period of time to make submissions after the settling parties have filed their supporting papers, and then the settling parties should have a reasonable period of time to respond to any objections." *Principles of the Law of Aggregate Litigation* § 3.03, cmt. a.

In *Redman* for example, the Seventh Circuit rebuked class counsel[2] for filing its fee motion after the objection deadline set for absent class members. 768 F.3d at 637. "From reading the proposed settlement the objectors knew that class counsel were likely to ask for $1 million in attorneys' fees, but they were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections. The objectors were also handicapped by not knowing the rationale that would be offered for the fee request…. There was no excuse for permitting so irregular, indeed unlawful, a procedure." *Id.* at 638.

§ 3.03 and *Redman*'s principle applies here. Class members must be granted sufficient opportunity to rebut valuations proffered in support of settlement approval and in support of counsel's fee request. Here, the settling parties stymied absent class members by filing the key

---

one of the other three objecting class members who was likely to object to the Defendant's motion. They should have been consulted.

[2] Lead counsel was Thomas Zimmerman, a fact worth noting only to show that he especially should be aware of *Redman*'s rule.

2

contested valuation (Gordon's declaration) well after the objection deadline, only one week before the fairness hearing, with the public version of that declaration essentially devoid of content.

Modern Rule 23 enshrines in various provisions, the sacrosanct and plenary rights of class members to notice and the opportunity to object. *See* Fed. R. Civ. P. 23(c)(2); (d)(1)(B); (e)(1); (e)(5); (h)(1); (h)(2). It also espouses a preference against secrecy. *See* Fed. R. Civ. P. 23(e)(3) (requiring identification of any secret compacts in connection with a settlement). These protections emanate from class members' right to notice, a right rooted in the Due Process Clause of the Constitution. *See Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950) ("[t]he notice must be of such nature as reasonably to convey the required information*,* and it must afford a reasonable time for those interested to make their appearance."); *Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014) (lambasting "incomplete and misleading" notice). Thus, unsurprisingly, even before the creation of Rule 23(h) in 2003, such a clandestine procedure could not be countenanced. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) ("we disapprove the practice (a practice we had never heard of and can find no case law concerning) of encouraging or permitting the submission of fee applications in camera. In the unlikely event that some confidential information is contained in the applications, that information can be whited out. To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.").

The Third Circuit's *Cendant* decision elucidates the importance of transparency in class proceedings:

> The right of public access is particularly compelling here, because many members of the "public" are also plaintiffs in the class action. Accordingly, all the reasons we discussed in Littlejohn for the right of access to public records apply with even greater force here. See p. 10, supra. Protecting the access right in class actions "promotes [class members'] confidence" in the administration of the case. Littlejohn, 851 F.2d at 678. Additionally, the right of access diminishes the possibility that "injustice, incompetence, perjury, [or] fraud" will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation. Id. Finally, openness of class actions provides class members with "a more complete understanding of the

3

[class action process] and a better perception of its fairness." *In re Cendant Corp Litig.*, 260 F.3d 183, 193 (3d Cir. 2001).

"If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do." *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013). Regardless of whether there was a mal-intent, the settling parties' reliance on evidence hidden from class members in violation of Rule 23 is an independent ground to reject the motion for final approval, in addition to those already listed in Frank's objection.

## II. Defendant has not rebutted the presumption of public access to documents affecting the disposition of federal litigation.

"Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Alluding only to this presumption in passing, Defendant fails in their motion to rebut it, though it is their burden as movants to do so. Yet the presumption of a public right of access to judicial proceedings is sufficiently compelling that it trumps even what the "litigants strongly prefer." *Id.* "When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). Indeed, "[i]t is beyond dispute that most documents filed in court are presumptively open to the public." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). "The public's right of access to judicial records has been characterized as 'fundamental to a democratic state[.]'" *In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom.*).

This case is no exception. Here, the Defendant attempts to seal a "document[] that affect[s] the disposition of federal litigation." *Specht*, 622 F.3d at 701. Specifically, the Defendant wishes to seal the declaration of economist John A. Gordon. Gordon was retained by Plaintiffs' counsel "to determine the value to the Class of the injunctive relief…" Dkt. 56-1 ¶7. Not only does Gordon's declaration "affect the disposition" of this litigation, according to this Circuit it is the "most

4

important factor relevant to the fairness of a class action settlement": "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Perhaps Gordon's opinion would be ultimately irrelevant as focusing on costs to defendant, rather than benefit to class members. *See* Dkt. 51 at 25. Or perhaps more likely, the expert opinion is inadmissible or unpersuasive based upon untenable economic assumptions. *See Pearson v. NBTY*, 772 F.3d 778, 786 (7th Cir. 2014) (commending district court for refusing to rely on a faulty expert valuation of injunctive settlement relief); *Eubank*, 753 F.3d at 727 (valuation of an accountant paid by plaintiffs' firm is "hardly independent"). But the real problem is that the public, absent class members, and even the objecting class members who have appeared are completely left in the dark—literally—as to how the injunctive relief is worth "many millions of dollars" to class members, even though this is the "most important factor relevant to the fairness of a class action settlement." *Synfuel*, 463 F.3d at 653.

### III. Defendant cannot rebut the presumption because the sealed documents are not trade secrets or otherwise privileged information.

The presumption of public access that Defendant barely mentioned in their motion "can be rebutted." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013). But it can only be rebutted in a narrow set of special circumstances. "Ever since *Continental Illinois*, we have insisted that only genuine trade secrets, or information within the scope of a requirement such as Fed. R. Crim. P. 6(e)(2) ("matters occurring before the grand jury"), may be held in long-term confidence." *Union Oil*, 220 F.3d at 568. "In civil litigation **only** trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret on appeal." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (emphasis added).

Defendant presents this same pincite from *Baxter* for a proposition doesn't aid them, namely that "trade secrets or other categories of bona fide long-term confidentiality" may be sealed in appropriate circumstances. Dkt. 56 at 2 (citing *Baxter*, 297 F.3d at 547). For pricing and sales data to

5

fall within that rubric, one would need to read "other categories" so broadly in scope as to be irreconcilable with the actual rule of *Baxter*. Besides trade secrets, *Baxter* acknowledges only statutory and recognized privileges. *Id.* at 547 ("only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret on appeal."). Pricing and sales information bears no resemblance to the examples offered in *Baxter*, *i.e.*, those protected by the attorney-client privilege and the statutorily-protected identity of minor victims of sexual assault. In this context, it is of no moment that Defendant "considers this information to be highly confidential." Dkt. 56 at 3.

Failing to cite any recognized or statutory privilege, Defendant must rely on this Court's protection of trade secrets to justify the maintenance of evidence under seal. Not surprisingly, Defendant alluded to trade secrets but failed to define this term of art. The failure to define a term that is integral to the legal argument necessary to support Defendant's motion renders that motion fatally deficient.

In any event, under Wisconsin law, a trade secret "means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply: 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat. § 134.90(1)(c). Defendant has not offered evidence that satisfies this statutory definition, and their conclusory argument that the information is profitable to competitors raises the question of whether competitors haven't already discerned their pricing and sales data via their own market research. *See Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) ("that the information be sufficiently secret to impart economic value because of its relative secrecy, precludes trade secret protection for information generally known or understood within an industry even if not to the public at large."). Answering this

6

question was responsibility of Defendant if it wished to persuade this court that the sealed documents are to enjoy the protection accorded to trade secrets, but it has left it unanswered.

Instead, Defendant without legal authority declares its belief that revealing the information "would cause DAI and its thousands of franchisees commercial, competitive, and irreparable harm if this information is disclosed, as competitors and potential competitors could use it to DAI and its franchisees' detriment." Dkt. 56 at 3. This is a "bald assertion that confidentiality promotes their business interests," which failed to justify maintaining documents under seal in *Baxter*. 297 F.3d at 547. Moreover, Defendant's interest in maintaining competitive advantage is an inadequate basis for maintaining court filings under seal. "Many a litigant would prefer that the subject of the case—how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on—be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing." *Union Oil*, 220 F.3d at 567; *accord Company Doe v. Public Citizen,* 749 F.3d 246, 269 (4th Cir. 2014) ("A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest."). Even if the Court believes that Defendant's pricing and sales data constitutes a trade secret, there is no question that the sealing of Gordon's declaration extends well beyond those raw figures. Rather it extends every description of the valuation methodology used by Gordon.

"While sealing of one document in one case may not have a measurable effect on confidence in judicial integrity or on the effective operation of the courts, the effect of a consistent practice of sealing documents could prove damaging." *In re Continental Illinois*, 732 F.2d at 1314 (7th Cir. 1984). In this Circuit, the *de minimis* public interest in each case is sufficiently compelling that confidence in judicial integrity and the effective operation of the courts both ultimately depend upon the maintenance of the public access presumption. Defendant does cite several cases that are not binding here, especially not under the controlling decisions discussed above.

As for binding precedent, *Nixon v. Warner Comms.*, 435 U.S. 589 (1978) is cited for the proposition that "sources of business information that might harm a litigant's competitive standing"

7

may be shielded from public inspection." Dkt. 56 at 1-2. But the Supreme Court's dictum was that "[e]very court has supervisory power over its own records and files," and that "[i]t is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate." *Nixon*, 435 U.S. at 598-99. The Supreme Court only mentioned the "competitive standing" exception as an example of state laws in Michigan circa 1891 and New Jersey circa 1945. *Id.* at 589. The Seventh Circuit, however, has exercised its supervisory power over its own records and files to provide only the very narrow exceptions to the presumption of public access that have been discussed above.

In a similar vein, Defendant cites *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002) in support of the proposition that "the Seventh Circuit has made clear that sealing certain information may be warranted in order to protect trade secrets or other compelling interests in secrecy." The decision avails Defendant no more than *Baxter*; again the Seventh Circuit spoke only of sealing "trade secrets, the identity of informers, and the privacy of children" *Id.* at 928. And so per its usual course, the Seventh Circuit reversed a district court's decision to grant a motion to seal a settlement agreement approved by a federal judge. *Id.* at 929-30.

8

## CONCLUSION

The settling parties' reliance on a twelfth-hour sealed declaration to justify their agreement deprives class members and the public at large any opportunity to analyze the purported value of the injunctive relief, the key disputed issue. This severe error of judgment underscores Frank's arguments that the settlement cannot be approved, and that class counsel and the named representatives are not adequately representing class members.


Dated: January 7, 2016

Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
Competitive Enterprise Institute,
Center for Class Action Fairness
1899 L Street, NW, 12th Floor
Washington, DC 20036
Telephone: (610) 457-0856
Email: adam.schulman@cei.org

*Attorney for Objector Theodore H. Frank*

9

## CERTIFICATE OF SERVICE

The undersigned certifies that, on January 7, 2016 he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: January 7, 2016

By: /s/Adam Schulman
Adam Schulman
