In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 16-1652

IN RE:
    SUBWAY FOOTLONG SANDWICH MARKETING AND
    SALES PRACTICES LITIGATION.

APPEAL OF:
    THEODORE FRANK,
            Objector.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
MDL No. 13-02439 — **Lynn Adelman**, *Judge*.

_____

ARGUED SEPTEMBER 8, 2016 — DECIDED AUGUST 25, 2017

_____

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In January 2013 an Australian teenager measured his Subway Footlong sandwich and discovered that it was only 11 inches long. He photographed the sandwich alongside a tape measure and posted the photo on his Facebook page. It went viral. Class-action litigation soon followed. Plaintiffs' lawyers across the United States sued

Subway for damages and injunctive relief under state consumer-protection laws, seeking class certification under Rule 23 of the Federal Rules of Civil Procedure. The suits were combined in a multidistrict litigation in the Eastern District of Wisconsin.

In their haste to file suit, however, the lawyers neglected to consider whether the claims had any merit. They did not. Early discovery established that Subway's unbaked bread sticks are uniform, and the baked rolls rarely fall short of 12 inches. The minor variations that do occur are wholly attributable to the natural variability in the baking process and cannot be prevented. That much is common sense, and modest initial discovery confirmed it. As important, no customer is shorted any food *even if* a sandwich roll fails to bake to a full 12 inches. Subway sandwiches are made to order in front of the customer; meat and cheese ingredients are standardized, and "sandwich artists" add toppings in whatever quantity the customer desires.

With no compensable injury, the plaintiffs' lawyers shifted their focus from a damages class under Rule 23(b)(3) to a class claim for injunctive relief under Rule 23(b)(2). The parties thereafter reached a settlement. For a period of four years, Subway agreed to implement certain measures to ensure, to the extent practicable, that all Footlong sandwiches are at least 12 inches long. The settlement acknowledged, however, that even with these measures in place, some sandwich rolls will inevitably fall short due to the natural variability in the baking process. The parties also agreed to cap the fees of class counsel at $525,000. The district court preliminarily approved the settlement.

No. 16-1652 3

Theodore Frank objected. A class member and professional objector to hollow class-action settlements, *see, e.g.*, *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016), Frank argued that the settlement enriched only the lawyers and provided no meaningful benefits to the class. The judge was not persuaded. He certified the proposed class and approved the settlement. Frank appealed.

We reverse. A class action that "seeks only worthless benefits for the class" and "yields [only] fees for class counsel" is "no better than a racket" and "should be dismissed out of hand." *Id.* at 724. That's an apt description of this case.

### I. Background

In January 2013 Matt Corby, an Australian teenager, purchased a Subway Footlong sandwich and, for reasons unknown, decided to measure it. The sandwich was only 11 inches long. He took a photo of the sandwich next to a tape measure and posted the photo on his Facebook page. Thus a minor social-media sensation was born. A few media outlets and some Subway customers were inspired to conduct their own sandwich-measuring experiments. *See, e.g.*, Kaylee Osowski, *Some Subway "Footlong" subs don't measure up*, N.Y. POST (Jan. 17, 2013), http://nypost.com/2013/01/17/some-subway-footlong-subs-dont-measure-up.

Subway immediately issued a press release announcing that it had "redoubled" its efforts "to ensure consistency and correct length in every sandwich." The franchisor assured its customers that its "commitment remains steadfast" to ensure that every Footlong sandwich sold at each of its restaurants "worldwide" is at least 12 inches long.

Within days of Corby's post, the American class-action bar rushed to court. Plaintiffs' lawyers sued Subway seeking damages and injunctive relief under the consumer-protection laws of various states.[1] Subway moved to transfer the cases to a single district court for a multidistrict litigation. The cases—nine in total—were eventually consolidated in the Eastern District of Wisconsin.

In the meantime, the parties agreed to conduct limited informal discovery in anticipation of mediation. The early discovery revealed that the claims were factually deficient. For starters, the vast majority of Subway Footlong sandwiches are, as the name implies, at least 12 inches long. The few that do not measure up generally fall short by only about a quarter-inch, and the shortfalls are the inevitable consequence of natural—and unpreventable—vagaries in the baking process. Additionally, all of Subway's raw dough sticks weigh exactly the same, so the rare sandwich roll that fails to bake to a full 12 inches actually contains no less bread than any other. What's more, Subway standardizes the amount of meat and cheese in each sandwich, and sandwich makers prepare each one to order right in front of the customer, adding toppings on request. So the length of the bread has no effect on the quantity of food each customer receives.

This early discovery, limited though it was, extinguished any hope of certifying a damages class under Rule 23(b)(3). The overwhelming majority of Subway's sandwiches lived

---

[1] Doctor's Associates, Inc., the franchisor for Subway restaurants, is the actual defendant in the suits. For ease of reference, we'll refer to the defendant as Subway.

up to their advertised length, so individual hearings would be needed to identify which purchasers actually received undersized sandwiches. But sandwich measuring by Subway customers had been a fleeting social-media meme; most people consumed their sandwiches without first measuring them. Proof of injury was nigh impossible because no customer whose sandwich roll actually failed to measure up received any less food because of the shortfall. In addition, the element of materiality—a requirement for a damages claim under most state consumer-protection statutes—was an insurmountable obstacle to class certification. Individualized hearings would be necessary to identify which customers, if any, deemed the minor variation in bread length material to the decision to purchase.

Rather than drop the suits as meritless, class counsel refocused their efforts on certifying an injunction class under Rule 23(b)(2) and eventually filed a consolidated class complaint seeking only injunctive relief. Following mediation, the parties agreed in principle to a settlement in which Subway committed to institute a number of practices designed to ensure, to the extent practicable, that its sandwich rolls measure at least 12 inches long and to keep those practices in place for four years.

More specifically, Subway agreed that (1) franchisees would "use a tool" for measuring sandwich rolls; (2) corporate quality-control inspectors would measure a sampling of baked bread during each regularly scheduled compliance inspection; (3) the inspectors would check bread ovens during each compliance inspection "to ensure that they are in proper working order and within operating specifications"; and (4) Subway's website and each franchised restau-

rant would post a notice explaining that the natural variability in the bread-baking process will sometimes result in sandwich rolls that are shorter than the advertised length. The settlement also explicitly acknowledged that "because of the inherent variability in food production and the bread baking process," Subway could not guarantee that each sandwich roll will "always be exactly 12 inches or greater in length after baking."

Having agreed in substance to the terms of a settlement, the parties spent the next year or so dickering over fees for class counsel and incentive awards for the named plaintiffs. They eventually agreed to cap attorney's fees at $525,000 and incentive awards at $1,000 for each named plaintiff. The district judge preliminarily approved the settlement and scheduled a fairness hearing. Class counsel filed a motion seeking $520,000 in attorney's fees and a $500 incentive award for each of ten named plaintiffs.

Frank objected to the settlement and class certification. He argued that the proposed injunction didn't benefit the class in any meaningful way and so the settlement was worthless. The judge was unmoved. He approved the settlement and certified a class of "all persons in the United States who purchased a 6-inch or Footlong sandwich at a Subway restaurant between January 1, 2003[,] and … October 2, 2015." The judge also accepted class counsel's request for $520,000 in fees as reasonable and approved the proposal for a $500 incentive award for each class representative. Final judgment was entered in accordance with these rulings. Frank appealed.

No. 16-1652 7

## II. Discussion

### A. Standing

The first issue on appeal concerns Frank's standing. The plaintiffs and Subway insist that he lacks standing to appeal because he doesn't have any interest in the amount of attorney's fees awarded as part of the settlement. Because the settlement provides only injunctive relief to the class—not monetary relief—any reduction in attorney's fees will return to Subway and not to class members like Frank. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) ("If the class cannot benefit from the reduction in the award of attorneys' fees, then the objector, as a member of the class, would not have standing to object, for he would have no stake in the outcome of the dispute.").

But Frank's appeal does not take aim at the judge's ruling on class counsel's motion for attorney's fees. He challenges the certification of the class and the approval of the settlement. True, a decision to reverse the judgment will unwind the award of attorney's fees, and neither Frank nor any other class member will benefit from reducing the fees of class counsel to zero. But as a class member who is bound by the settlement, Frank clearly has standing to appeal. *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). He properly objected at the fairness hearing and may "appeal the approval of a settlement … that will ultimately bind [him]." *Id.*

### B. Class Certification and Settlement Approval

Although the standard of review is deferential—the decision to certify a class and approve a class settlement is committed to the discretion of the district judge—our duty in this context is "far from pro forma." *Pearson*, 772 F.3d at

780. We have explained that a district judge in this situation is akin to "a fiduciary of the class" and "is subject therefore to the high duty of care that the law requires of fiduciaries." *Id.* (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). Indeed, and especially in the settlement context, the judge must give the requirements for class certification "undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The judge is called to "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) (quoting *Reynolds*, 288 F.3d at 279).

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and a class-action settlement may not be approved unless it is "fair, reasonable, and adequate," FED. R. CIV. P. 23(e)(2). Underpinning both requirements is a concern for the unnamed class members whose interests the named plaintiffs represent and the settlement is meant to serve. We have remarked on the tendency of class settlements to yield benefits for stakeholders *other than* the class: Class counsel "support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information." *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996). That is why "objectors play an essential role in judicial review of proposed settlements of class actions and why judges must be both vigilant and realistic in that review." *Pearson*, 772 F.3d at 787.

We put the point more bluntly in another appeal by Frank as the objector: A class settlement that results in fees

No. 16-1652 9

for class counsel but yields no meaningful relief for the class "is no better than a racket." *In re Walgreen*, 832 F.3d at 724. If the class settlement does not provide "effectual relief" to the class and its "principal effect" is to "induce the defendants to pay the class's lawyers enough to make them go away," then the class representatives have failed in their duty under Rule 23 to "fairly and adequately protect the interests of the class." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752–53 (7th Cir. 2011) (quoting FED. R. CIV. P. 23(a)(4)). And if the class representatives have agreed to a settlement that provides meaningless relief to the putative class, the district court should refuse to certify or, alternatively, decertify the class. "No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Walgreen*, 832 F.3d at 724.

The plaintiffs and Subway defend this settlement by insisting that it actually provides meaningful benefits to the class because Subway has bound itself, for a period of four years, to a set of procedures designed to achieve better bread-length uniformity. A simple comparison of the state of affairs before and after the settlement exposes the cynicism in this argument.

Before the settlement, class members could be fairly certain that a Subway Footlong sandwich would be at least 12 inches long. They could rest assured that because all loaves are baked from the same quantity of dough, each sandwich contained the same amount of bread even if an occasional loaf failed to bake to the full 12 inches in length. And if a loaf happened to bake up slightly shorter than 12 inches, customers could be assured of receiving the same

quantity of meat and cheese as any other customer; no class member, regardless of bread length, was cheated on the amount of ham or turkey, provolone or pepper jack. As for other sandwich ingredients, class members could be as profligate or as temperate as they pleased: Subway's "sandwich artists" add toppings at the customer's request. In sum, before the settlement there was a small chance that Subway would sell a class member a sandwich that was slightly shorter than advertised, but that sandwich would provide no less food than any other.

*After* the settlement—despite the new measuring tools, protocols, and inspections—there's *still* the same small chance that Subway will sell a class member a sandwich that is slightly shorter than advertised. Indeed, the settlement explicitly acknowledges that "because of the inherent variability in food production and the bread baking process, [Subway] will never be able to guarantee that each loaf of bread will always be exactly 12 inches or greater in length after baking." It's safe to assume that Subway customers know this as a matter of common sense, but the settlement requires Subway to include a disclaimer on its website and in a poster prominently displayed at each restaurant: "Due to natural variations in the bread baking process, the size and shape of bread may vary." And after the settlement, just as before, the rare sandwich that falls short of the full 12 inches will still provide the customer the same amount of food as any other. The injunctive relief approved by the district judge is utterly worthless. The settlement enriches only class counsel and, to a lesser degree, the class representatives.

The plaintiffs and Subway observe that the class can return to court with a motion for contempt sanctions in the event of any violation of the injunction. They rely on *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), as support for this point, but that case doesn't help them. In *Eubank* the defendant window manufacturer had offered extended warranties to purchasers before the class litigation; under the proposed settlement, the manufacturer could not revoke the extended warranties. That, we said, "confer[red] a bit of extra value" on the class members. *Id.* at 725.

Here, the procedures required by the settlement do not benefit the class in any meaningful way. The settlement acknowledges as much when it says that uniformity in bread length is impossible due to the natural variability of the bread-baking process. Contempt as a remedy to enforce a worthless settlement is itself worthless. Zero plus zero equals zero.

Because the settlement yields fees for class counsel and "zero benefits for the class," the class should not have been certified and the settlement should not have been approved. *In re Walgreen*, 832 F.3d at 724. Because these consolidated class actions "seek[] only worthless benefits for the class," they should have been "dismissed out of hand." *Id.*

REVERSED AND REMANDED.

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

August 25, 2017

Before:

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| No. 16-1652 | IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION<br><br>APPEAL OF: THEODORE FRANK<br>Objector |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:13-md-02439-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman ||

The judgment of the District Court is **REVERSED** with costs, and **REMANDED** in accordance with the decision of this court entered on this date.

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

form name: **c7_FinalJudgment**(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

September 18, 2017

To:     Stephen C. Dries
        UNITED STATES DISTRICT COURT
        Eastern District of Wisconsin
        Milwaukee , WI 53202-0000

| No. 16-1652 | IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION<br><br>APPEAL OF: THEODORE H. FRANK<br> Objector |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:13-md-02439-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| AMOUNT OF BILL OF COSTS (do not include the $): | 450.00 |
|---|---|
| RECORD ON APPEAL STATUS: | No record to be returned |

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

| **Date:** | **Received by:** |
|---|---|
| 09/18/2017 | /s/ D. La Brie |

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**BILL OF COSTS**

September 18, 2017

Taxed in Favor of: **Appellant Theodore H. Frank**

| No. 16-1652 | IN RE: SUBWAY FOOTLONG SANDWICH MARKETING AND SALES PRACTICES LITIGATION<br><br>APPEAL OF: THEODORE H. FRANK<br> Objector |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:13-md-02439-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman ||

The mandate or agency closing letter issued in this cause on .

BILL OF COSTS issued in the amount of: $450.00.

|     |     | Cost of<br>Each Item | Total Cost<br>Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: _____ | _____ | \_\_\_450.00\_\_\_ |

4. _____      _____   _____
   _____

5. _____
   _____      _____   _____

TOTAL:      \_\_450.00\_\_

form name: **c7_BillOfCosts**(form ID: **140**)